Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Southern Division

| | |
|---|---|
| MELISSA MILLER, | Case No.: 8:21-CV-00692 |
| **Plaintiff,** | Honorable Josephine Staton |
| **v.** | **PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES,** | |
| **Defendant.** | **Hearing date:** Oct. 28, 2022 **Time:** 10:30 a.m. **Location:** Courtroom 8A |

| **PLAINTIFF'S UNDISPUTED MATERIAL FACTS:** | **SUPPORTING EVIDENCE:** |
|---|---|
| 1. Westlake purchases vehicle-sale contracts from dealerships. | Westlake 30(b)(6) Dep. at 44:11–20 (Marchiando Decl. Ex. 1) |
| 2. A dealership presents a particular loan to five or six companies like Westlake, who then "fight over" who will purchase it. | Westlake 30(b)(6) Dep. at 44:21–45:5 (Marchiando Decl. Ex. 1) |

1

| | |
|---|---|
| 3. Someone used Plaintiff's name to apply for financing to purchase a 2015 Ford Fusion from Evolution Auto Sales in July 2019. | bates nos. WFS000036–45 (Marchiando Decl. Ex. 2) bates nos. WFS000046–50 (Marchiando Decl. Ex. 3) bates no. WFS000058 (Marchiando Decl. Ex. 4) |
| 4. Those individuals presented a photocopy of Plaintiff's drivers license, but the address on the license did not match the address on the application. | bates nos. WFS000046–50 (Marchiando Decl. Ex. 3) bates no. WFS000058 (Marchiando Decl. Exs. 4) |
| 5. Westlake did nothing to verify that the address, 6187 Atlantic Avenue, Apartment 210, Long Beach, 90805, was indeed an apartment complex. | Westlake 30(b)(6) Dep. at 93:10–95:10 (Marchiando Decl. Ex. 1) |
| 6. Westlake's Rule 30(b)(6) witness testified cost was the reason this was not done. | Westlake 30(b)(6) Dep. at 95:14–17 (Marchiando Decl. Ex. 1) |
| 7. The application was signed electronically in the name of "Melissa Hamilton," Plaintiff's maiden name. | Miller Dep. at 11:6–10 (Marchiando Decl. Ex. 5) bates no. WFS000049 (Marchiando Decl. Ex. 3) |
| 8. Plaintiff did not sign the contract or authorize anyone to sign on her behalf. | Miller Decl. ¶¶ 4–6 (Marchiando Decl. Ex. 6) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| 9. The application to the dealership also included, among other things, a list of individuals as references, which Westlake did not verify because the credit score Westlake obtained about Plaintiff was sufficiently high to waive the ordinary requirement of ten references. | bates no. WFS000117–18 (Marchiando Decl. Ex. 7) Westlake 30(b)(6) Dep. at 129:4–131:4 (Marchiando Decl. Ex. 1) |
| 10. Westlake also noted that the applicant had two outstanding vehicle loans, and its underwriting criteria required that the applicant "[p]rovide proof that all open auto loans have been paid off, traded-in, or are being paid by someone else." | bates no. WFS000053–57, at 54 (Marchiando Decl. Ex. 8) |
| 11. Westlake does not know whether that requirement was met or disregarded as to this transaction, yet Westlake purchased the contract anyway. | Westlake 30(b)(6) Dep. at 139:4–145:16, 146:3–11, 148:14–25 (Marchiando Decl. Ex. 1) |

| | |
|---|---|
| 12. Westlake obtained a credit report from Experian purporting to be about Plaintiff. | Westlake 30(b)(6) Dep. at 61:7–25 (Marchiando Decl. Ex. 1) |
| 13. That report contained as the same address as the application: 6817 Atlantic Avenue, Long Beach, which Westlake understood to be the applicant's home address. | Westlake 30(b)(6) Dep. at 62:14–23, 63:21–64:11 (Marchiando Decl. Ex. 1) |
| 14. That report also contained several entries under a heading "Fraud Shield Summary," including that Plaintiff's Social Security Number had been used 12 times in the three months preceding the credit application at issue, and several relating to the applicant's address, such as "current address conflict," "current address not on file," "inquiry address: alert," and "on-file address: non-residential." | Westlake 30(b)(6) Dep. at 65:20–66:18, 67:14–68:5, 68:16–69:4, 70:17–24 (Marchiando Decl. Ex. 1) |
| 15. Westlake has no idea what any of these entries mean. | Westlake 30(b)(6) Dep. at 67:19–21, 68:2–5, 69:23–24 (Marchiando Decl. Ex. 1) |

| | |
|---|---|
| 16. Plaintiff did not purchase the vehicle at issue, did not direct anyone to do so, and did not provide her personal information to anyone so that they could purchase a vehicle. | Miller Decl. ¶¶ 4–7<br><br>    (Marchiando Decl. Ex. 6) |
| 17. Plaintiff has never owned a Ford Fusion, the vehicle at issue, and did not electronically sign the credit application. | Miller Dep. at 68:4–6, Miller Dep. at 55:21–57:9<br><br>    (Marchiando Decl. Ex. 5) |
| 18. Westlake produced checking account statements apparently part of the application process, and Plaintiff denied ownership of that account or having even heard of the bank. | Miller Dep. at 66:8–67:7<br><br>    (Marchiando Decl. Ex. 5) |
| 19. Plaintiff denied ever living in Long Beach, the city the fraudsters listed on the credit application, or at the specific address—on Atlantic Avenue—the fraudsters used, and none of her email addresses match the one on the application. | Miller Dep. at 57:17–20, 68:7–15<br>    (Marchiando Decl. Ex. 5)<br>bates no. WFS000046–50, at 46<br>    (Marchiando Decl. Ex. 3) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| 20. Plaintiff testified that she never received any correspondence—no welcome letter, no delinquency notices—from Westlake, and had never heard of Westlake before this lawsuit. | Miller Dep. at 56:14–16, 72:20–73:8 (Marchiando Decl. Ex. 5) |
| 21. Plaintiff never made any payments on the account. | Miller Dep. at 69:9–11 (Marchiando Decl. Ex. 5) |
| 22. Plaintiff learned her identity had been stolen in the Fall of 2019. | Miller Dep. at 26:2–8 (Marchiando Decl. Ex. 5) |
| 23. Upon reviewing her credit reports, she learned of the Westlake account being attributed to her. | Miller Dep. at 32:2–14 (Marchiando Decl. Ex. 5) |
| 24. Westlake reported to the credit bureaus that the account belonged to Plaintiff and had a delinquent payment history, which Westlake knows will negatively impact a consumer's credit score. | Westlake 30(b)(6) Dep. at 165:11–166:16, 167:3–11 (Marchiando Decl. Ex. 1) |
| 25. Westlake later reported the account as a charge-off. | Westlake 30(b)(6) Dep. at 239:9–19 (Marchiando Decl. Ex. 1) |

PLT.'S STMT OF UNCONTESTED FACTS

| 26. | Plaintiff spoke to Westlake on the phone at least twice, explaining the account did not belong to her and was the result of identity theft. | Miller Dep. at 21:14–22:9<br>    (Marchiando Decl. Ex. 5)<br>12/4/19 call tr. at 2:2–12<br>    (Marchiando Decl. Ex. 9)<br>12/13/19 call tr. at 2:3–12<br>    (Marchiando Decl. Ex. 10)[1] |
|-----|-----|-----|
| 27. | Plaintiff filed three reports with the Huntington Beach Police Department, one with the Federal Trade Commission, and sent an identity theft affidavit to Westlake by mail. | Miller Dep. at 41:21–42:13, 96:4–13, 82:18–24<br>    (Marchiando Decl. Ex. 5) |
| 28. | A detective from the Huntington Beach Police Department called Westlake and explained that Plaintiff was the victim of identity theft and that Westlake should mark the account as fraudulent. | 1/16/2020 call tr.<br>    (Marchiando Decl. Ex. 11) |
| 29. | Westlake produced multiple letters Plaintiff sent to the Big-3 credit reporting agencies ("CRAs"), Equifax, Experian, | WFS000129–33<br>    (Marchiando Decl. Ex. 12)<br>WFS000134–39<br>    (Marchiando Decl. Ex. 13) |

---

[1] Westlake produced audio recordings of these calls, which Plaintiff had professionally transcribed and which transcripts were served on Westlake in discovery. Plaintiff includes those transcripts as Exhibits here for ease of use. Should Westlake object to the use of the transcripts, with the Court's permission, Plaintiff will provide the recordings to the Court in electronic format for its analysis of Plaintiff's Motion.

| | |
|---|---|
| and TransUnion, which they then forwarded to Westlake, setting out Plaintiff's disputes. | WFS000140–45<br>     (Marchiando Decl. Ex. 14)<br>WFS000154–61<br>     (Marchiando Decl. Ex. 15)<br>WFS000181–85<br>     (Marchiando Decl. Ex. 16)<br>WFS000186–91<br>     (Marchiando Decl. Ex. 17)<br>WFS000192–97<br>     (Marchiando Decl. Ex. 18)<br>WFS000198–205<br>     (Marchiando Decl. Ex. 19)<br>WFS000206–13<br>     (Marchiando Decl. Ex. 20)<br>WFS000220–24<br>     (Marchiando Decl. Ex. 21)<br>WFS0000225–30<br>     (Marchiando Decl. Ex. 22)<br>WFS000231–36<br>     (Marchiando Decl. Ex. 23)<br>WFS000237–44<br>     (Marchiando Decl. Ex. 24)<br>WFS000245–52<br>     (Marchiando Decl. Ex. 25) |
| 30. Each letter states that Plaintiff did not open the account | WFS000129–33<br>     (Marchiando Decl. Ex. 12) |

| | |
|---|---|
| Westlake was attributing to her, and later letters informed Westlake of the three reports she filed with the Huntington Beach Police Department, the report identification numbers, and the identification number of the report she filed with the F.T.C. | WFS000134–39 (Marchiando Decl. Ex. 13) |
| | WFS000140–45 (Marchiando Decl. Ex. 14) |
| | WFS000154–61 (Marchiando Decl. Ex. 15) |
| | WFS000181–85 (Marchiando Decl. Ex. 16) |
| | WFS000186–91 (Marchiando Decl. Ex. 17) |
| | WFS000192–97 (Marchiando Decl. Ex. 18) |
| | WFS000198–205 (Marchiando Decl. Ex. 19) |
| | WFS000206–13 (Marchiando Decl. Ex. 20) |
| | WFS000220–24 (Marchiando Decl. Ex. 21) |
| | WFS0000225–30 (Marchiando Decl. Ex. 22) |
| | WFS000231–36 (Marchiando Decl. Ex. 23) |
| | WFS000237–44 (Marchiando Decl. Ex. 24) |
| | WFS000245–52 (Marchiando Decl. Ex. 25) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| 31. The letters further contain copies of Plaintiff's Social Security Card, drivers license, and a letter confirming her mailing address, as well as statements of additional identifying information. | WFS000129–33<br><br>    (Marchiando Decl. Ex. 12)<br>WFS000134–39<br><br>    (Marchiando Decl. Ex. 13)<br>WFS000140–45<br><br>    (Marchiando Decl. Ex. 14)<br>WFS000154–61<br><br>    (Marchiando Decl. Ex. 15)<br>WFS000181–85<br><br>    (Marchiando Decl. Ex. 16)<br>WFS000186–91<br><br>    (Marchiando Decl. Ex. 17)<br>WFS000192–97<br><br>    (Marchiando Decl. Ex. 18)<br>WFS000198–205<br><br>    (Marchiando Decl. Ex. 19)<br>WFS000206–13<br><br>    (Marchiando Decl. Ex. 20)<br>WFS000220–24<br><br>    (Marchiando Decl. Ex. 21)<br>WFS0000225–30<br><br>    (Marchiando Decl. Ex. 22)<br>WFS000231–36<br><br>    (Marchiando Decl. Ex. 23)<br>WFS000237–44<br><br>    (Marchiando Decl. Ex. 24) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| | WFS000245–52 |
| | (Marchiando Decl. Ex. 25) |
| 32. In a later letter, Plaintiff included not only the numbers of the Huntington Beach police and F.T.C. reports, but also the cover page of the police reports, and the name and phone number of the Huntington Beach police officer to whom Westlake could speak about the reports. | Westlake 30(b)(6) Dep. at 264:20–267:3 (Marchiando Decl. Ex. 1) |
| 33. That Westlake is able to produce the dispute letters Plaintiff sent to the CRAs confirms that the CRAs forwarded Plaintiff's disputes to Westlake. | WFS000129–33 (Marchiando Decl. Ex. 12) WFS000134–39 (Marchiando Decl. Ex. 13) WFS000140–45 (Marchiando Decl. Ex. 14) WFS000154–61 (Marchiando Decl. Ex. 15) WFS000181–85 (Marchiando Decl. Ex. 16) WFS000186–91 (Marchiando Decl. Ex. 17) WFS000192–97 (Marchiando Decl. Ex. 18) |

PLT.'S STMT OF UNCONTESTED FACTS

| | WFS000198–205 |
|---|---|
| | (Marchiando Decl. Ex. 19) |
| | WFS000206–13 |
| | (Marchiando Decl. Ex. 20) |
| | WFS000220–24 |
| | (Marchiando Decl. Ex. 21) |
| | WFS0000225–30 |
| | (Marchiando Decl. Ex. 22) |
| | WFS000231–36 |
| | (Marchiando Decl. Ex. 23) |
| | WFS000237–44 |
| | (Marchiando Decl. Ex. 24) |
| | WFS000245–52 |
| | (Marchiando Decl. Ex. 25) |
| 34. Westlake receives those disputes in communications called ACDVs, which are transmitted to Westlake through an electronic system called e-OSCAR. | Westlake 30(b)(6) Dep. at 229:25–231:13<br><br>(Marchiando Decl. Ex. 1) |
| 35. Westlake's dispute investigators use a computer system called Sonnet to view ACDVs and process disputes. | Mata Dep. at 40:14–23<br><br>(Marchiando Decl. Ex. 27) |

| | |
|---|---|
| 36. Westlake keeps detailed notes on accounts, and those notes contain, among other things, all communications between Westlake and its consumer accountholders. | Westlake 30(b)(6) Dep. at 167:18–168:13, 170:17–21<br><br>    (Marchiando Decl. Ex. 1) |
| 37. In the notes connected to the account Westlake attributes to Plaintiff, for example, there are notations for the calls in which Plaintiff informed Westlake that she claimed the account resulted from identity theft, and from the Huntington Beach Police Department. | bates no. WFS000010–20, at WFS000013, 15 (highlights)<br><br>    (Marchiando Decl. Ex. 26) |
| 38. Jose Mata, one of the individuals who investigated Plaintiff's disputes, stated that he simply compares the identifying information in the ACDV—name, date of birth, Social Security Number, address, and account status—with the information in those same categories in Westlake's records. | Mata Dep. at 77:2–16, 79:11–23, 89:24–90:20<br><br>    (Marchiando Decl. Ex. 27) |

| | |
|---|---|
| 39. The ACDVs Westlake received relative to Plaintiff's disputes included as attachments the dispute letters Plaintiff sent the CRAs. | WFS000121–24 & WFS000129–33 (Marchiando Decl. Exs. 28; 12) WFS000125–28 & WFS000134–39 (Marchiando Decl. Exs. 29; 13) WFS000146–49 & WFS000140–45 (Marchiando Decl. Exs. 30; 14) WFS000150–53 & WFS000134–39 (Marchiando Decl. Exs. 31; 13) WFS000170–73 & WFS000154–61 (Marchiando Decl. Exs. 32; 15) WFS000206–13 & WFS000245–52 (Marchiando Decl. Exs. 33; 25) WFS000174–77 & WFS000206–13 (Marchiando Decl. Exs. 34; 20) WFS000178–80 (Marchiando Decl. Ex. 35) Westlake 30(b)(6) Dep. at 248:15–249:18 (Marchiando Decl. Ex. 1) |
| 40. Westlake's dispute investigators review dispute letters to determine if it is an identity theft affidavit. If it is not, the investigators pay no attention to the substance of the letter or whether any of the | Mata Dep. at 86:21–87:19, 99:7–22 (Marchiando Decl. Ex. 27) |

| | |
|---|---|
| information in it would be useful in their investigations. | |
| 41. Westlake's Rule 30(b)(6) witness confirmed that Mr. Mata's handling of Plaintiff's disputes from all three CRAs would have followed this formula. | Westlake 30(b)(6) Dep. at 263:19–264:16<br><br>(Marchiando Decl. Ex. 1) |
| 42. Several of Plaintiff's disputes were coded "103: claims true identity fraud/account fraudulently opened." | bates no. WFS000150–53<br>(Marchiando Decl. Ex. 31)<br>WFS000170–73<br>(Marchiando Decl. Ex. 32)<br>WFS000174–77<br>(Marchiando Decl. Ex. 34)<br>WFS000178–80<br>(Marchiando Decl. Ex. 35) |
| 43. Jose Mata testified that for disputes like Plaintiff's he simply compares personal information in the dispute with Westlake's records, and disregards the substance of dispute letters if they are not identity-theft affidavits. | Mata Dep. at 107:14–17, 108:10–109:16<br>(Marchiando Dec. Ex. 27) |
| 44. Karen Campos, another of Westlake's dispute | Campos Dep. at 77:8–16<br>(Marchiando Decl. Ex. 36) |

| | |
|---|---|
| investigators who handled Plaintiff's disputes, testified similarly to Mr. Mata. | |
| 45. If Westlake concludes that a consumer's dispute of identity theft has the "correct information" that it might prove valid, Westlake's dispute investigators escalate that dispute to Westlake's legal department. | Westlake 30(b)(6) Dep. II at 70:8–71:5     (Marchiando Decl. Ex. 37) Westlake 30(b)(6) Dep. at 278:20–279:20     (Marchiando Decl. Ex. 1) Cruz Dep. at 24:4–23     (Marchiando Decl. Ex. 38) |
| 46. The "correct information" in this context is an identity-theft affidavit or a police report. | Westlake 30(b)(6) Dep. at 280:11–15     (Marchiando Decl. Ex. 1)  Cruz Dep. at 73:17–74:1     (Marchiando Decl. Ex. 38) |
| 47. Nothing the consumer may say in his or her dispute letter makes any difference. | Mata Dep. at 86:21–87:14     (Marchiando Decl. Ex. 27) Cruz Dep. at 73:17–74:1     (Marchiando Decl. Ex. 38) Campos Dep. at 51:17–24     (Marchiando Decl. Ex. 36) |
| 48. Once that escalation occurs, the FCRA dispute-investigation department plays no role. | Westlake 30(b)(6) Dep. II at 70:8–71:5     (Marchiando Decl. Ex. 37) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| | Westlake Rule 30(b)(6) Dep. at 278:20–279:20 |
| | (Marchiando Decl. Ex. 1) |
| 49. Even though the investigator escalates the identity-theft dispute as potentially valid, he or she still responds back to the CRAs that Westlake has verified as accurate the reporting of the account as belonging to the disputing consumer. | Westlake 30(b)(6) Dep. at 280:11–281:10 (Marchiando Decl. Ex. 1) Campos Dep. at 80:25–81:12 (Marchiando Decl. Ex. 36) |
| 50. Once the dispute is escalated, Westlake's legal department then sends the consumer a letter, explaining that Westlake's desire to further investigate the claim of identity theft, and asking the consumer to provide certain, additional information. | Westlake 30(b)(6) Dep. at 278:20–279:20, 251:12–252:9 (Marchiando Decl. Ex. 1) |
| 51. Westlake produced a dispute-escalation letter addressed to Plaintiff, but could not verify the letter was ever sent. | Westlake 30(b)(6) Dep. at 252:6–253:25 (Marchiando Decl. Ex. 1) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| 52. The dispute-escalation letter is dated April 13, 2020. | Westlake 30(b)(6) Dep. at 254:19–255:14<br><br>(Marchiando Decl. Ex. 1) |
| 53. Westlake sends all escalated disputes to the legal department once a month. | Westlake 30(b)(6) Dep. at 255:15–18<br>(Marchiando Decl. Ex. 1) |
| 54. The escalated disputes then go into a letter-sending queue, Westlake's computer system generates the letters, and a third party prints and mails them. | Westlake 30(b)(6) Dep. at 255:19–256:5<br>(Marchiando Decl. Ex. 1) |
| 55. By the time Westlake created the escalated-dispute letter for Plaintiff, (1) Plaintiff has spoken to Westlake twice on the telephone, both of which calls Westlake recorded, and told Westlake the account was the result of identity theft; (2) the Huntington Beach Police Department has called Westlake, which again was recorded, and told Westlake to mark the account as fraudulent; (3) Plaintiff has disputed at least twice through the CRAs | Westlake 30(b)(6) Dep. at 256:12–257:9<br>(Marchiando Decl. Ex. 1) |

| | |
|---|---|
| stating that the account was the result of identity theft; and (4) Westlake repeatedly verified the disputed account as accurately attributed to Plaintiff and continued to report it as such to the CRAs. | |
| 56. Westlake's dispute investigators cannot review prior disputes when conducting a current investigation. | Mata Dep. at 75:11–21, 76:4–9 (Marchiando Decl. Ex. 27) Cruz Dep. at 49:6–10 (Marchiando Decl. Ex. 38) |
| 57. Westlake's dispute investigators do not call or email the disputing consumer or, where applicable, the police or F.T.C. | Cruz Dep. at 71:7–23, 75:17–25, 76:2–10 (Marchiando Decl. Ex. 38) |
| 58. Dispute investigators do not review the account notes as a matter of practice, so they do not consider information they contain in conducting investigations of disputes. | Mata Dep. at 92:1–23 (Marchiando Decl. Ex. 27) |
| 59. Dispute investigators do not obtain separate reports about the disputing consumer, like a skip-trace or LexisNexis report, | Mata Dep. at 97:15–24 (Marchiando Decl. Ex. 27) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| or other means to verify information. | |
| 60. Dispute investigators do not use the internet to do any research relating to the dispute, such as the consumer or his or her address. | Mata Dep. at 112:12–17 (Marchiando Decl. Ex. 27) |
| 61. Dispute investigators do not research the dealer from whom the contract originated. | Mata Dep. at 112:18–20 (Marchiando Decl. Ex. 27) |
| 62. Dispute investigators do not contact anyone else at Westlake about the dispute. | Mata Dep. at 112:21–23 (Marchiando Decl. Ex. 27) Cruz Dep. at 90:5–8 (Marchiando Decl. Ex. 38) |
| 63. Westlake's dispute investigators followed Westlake's procedures for processing Plaintiff's disputes, and no mistakes were made regarding the investigation of Plaintiff's disputes. | Westlake 30(b)(6) Dep. II at 26:16–27:9 (Marchiando Decl. Ex. 37) |
| 64. The Consumer Data Industry Association's ("CDIA") Credit Reporting Resource Guide advises that Compliance Condition Codes "[a]llows the | bates no. WFS000391 (Marchiando Decl. Ex. 39) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| reporting of a condition that is required for legal compliance." | |
| 65. The Guide goes on to note that "[t]his condition may refer to accounts closed at consumer's request, accounts in dispute under the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA) or the Fair Credit Billing Act (FCBA)." | bates no. WFS000391<br><br>(Marchiando Decl. Ex. 39) |
| 66. The Guide identifies and describes multiple compliance condition codes. | bates nos. WFS000458–59 (italics in original)<br><br>(Marchiando Decl. Ex. 39) |
| 67. Westlake never uses compliance condition codes when communicating dispute results to the CRAs. | Mata Dep. at 74:3–75:1<br><br>(Marchiando Decl. Ex. 27) |
| 68. Westlake does not know that compliance condition codes are. | Westlake 30(b)(6) Dep. II at 13:20–14:10<br><br>(Marchiando Decl. Ex. 37) |
| 69. Westlake used no compliance condition codes in responding to the CRAs for Plaintiff's disputes. | bates nos. WFS000121–24<br><br>(Marchiando Decl. Ex. 28)<br>WFS000125–28<br><br>(Marchiando Decl. Ex. 29) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| | WFS000146–49 |
| | (Marchiando Decl. Ex. 30) |
| | WFS000150–53 |
| | (Marchiando Decl. Ex. 31) |
| | WFS000170–73 |
| | (Marchiando Decl. Ex. 32) |
| | WFS000174–77 |
| | (Marchiando Decl. Ex. 34) |
| | WFS000178–80 |
| | (Marchiando Decl. Ex. 35) |
| 70. Westlake's dispute investigators undergo online training provided by the CDIA every two years, and the training lasts four hours. | Westlake 30(b)(6) Dep. II at 27:12–19; 64:25–65:2<br><br>(Marchiando Decl. Ex. 37) |
| 71. There is no other training regarding the FCRA or dispute investigation given to these individuals | Westlake 30(b)(6) Dep. II at 39:18–22<br><br>(Marchiando Decl. Ex. 37) |
| 72. Trainees are tested at the end of the CDIA training, and receive a pass/fail grade. | Westlake 30(b)(6) Dep. II at 40:15–41:16<br><br>(Marchiando Decl. Ex. 37) |
| 73. If an individual fails, they continue to work at Westlake as a dispute investigator and may retake the training, and | Westlake 30(b)(6) Dep. II at 43:1–44:8<br><br>(Marchiando Decl. Ex. 37) |

| | |
|---|---|
| Westlake does not have a limit on the number of times an individual can fail and continue to work. | |
| 74. Jose Mata testified that his best estimate of his pace investigating disputes is 10 per hour. | Mata Dep. at 50:19–51:10 (Marchiando Decl. Ex. 27) |
| 75. Westlake's corporate representative testified about Mr. Mata's workload as "between that time and now, he's handled probably 25,000 disputes, if not more, and he is not going to recall what specifically he did on this one account back in 2020." | Westlake 30(b)(6) Dep. at 247:11–248:2 (Marchiando Decl. Ex. 1) |
| 76. Westlake does not know of any court decisions that are considered in drafting its dispute-investigation procedures. | Westlake 30(b)(6) Dep. II at 36:15–19 (Marchiando Decl. Ex. 37) |
| 77. All Westlake considers in creating its dispute-investigation procedures is the | Westlake 30(b)(6) Dep. II at 36:1–9 (Marchiando Decl. Ex. 37) |

| | |
|---|---|
| Credit Reporting Resource Guide and the FCRA. | |
| 78. Westlake has never heard of the decision *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), and does not know if that decision played any role in creating its FCRA-compliance procedures. | Westlake 30(b)(6) Dep. II at 79:3–17 (Marchiando Decl. Ex. 37) |
| 79. Westlake provided information about the account to the credit bureaus. | Westlake Rule 30(b)(6) Dep. at 165:15–166:16, 256:25–257:9 (Marchiando Decl. Ex. 1) |
| 80. Westlake received Plaintiff's disputes from the credit reporting Agencies ("CRAs"), in the form of ACDVs. | Westlake 30(b)(6) Dep. at 41:15–42:5, 231:11–13, 263:19–264:5 (Marchiando Decl. Ex. 1) |
| 81. For each dispute, Westlake verified the account as belonging to Plaintiff. | Westlake 30(b)(6) Dep. at 269:13–16, 271:7–11 (Marchiando Decl. Ex. 1) WFS000121–24 (Marchiando Decl. Ex. 28) WFS000125–28 (Marchiando Decl. Ex. 29) WFS000146–49 (Marchiando Decl. Ex. 30) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| | WFS000150–53<br><br>    (Marchiando Decl. Ex. 31)<br><br>WFS000170–73<br><br>    (Marchiando Decl. Ex. 32)<br><br>WFS000174–77<br><br>    (Marchiando Decl. Ex. 34)<br><br>WFS000178–80<br><br>    (Marchiando Decl. Ex. 35) |
| 82. Westlake's Rule 30(b)(6) witness agreed that "the idea behind identity theft is information is used to open an account that doesn't belong . . . to the fraudster." | Westlake Rule 30(b)(6) Dep. at 260:21–25<br><br>    (Marchiando Decl. Ex. 1) |
| 83. Plaintiff testified about damages attributable to Westlake, noting she "felt hopeless with them," and that Westlake harassed her in trying to have her pay on the delinquent account. | Miller Dep. at 53:23–54:12, 54:21–24<br>    (Marchiando Decl. Ex. 5) |
| 84. Plaintiff also explained the emotional distress this conduct caused. | Miller Dep. at 54:13–16<br>    (Marchiando Decl. Ex. 5) |
| 85. Westlake also repeatedly called Plaintiff, including at work, | Miller Dep. at 130:13–131:14<br>    (Marchiando Decl. Ex. 5) |

| | |
|---|---|
| despite her instructions to stop, causing annoyance in addition to the emotional distress. | |
| 86. The derogatory reporting embarrassed Plaintiff because she has always had "amazing credit," yet Westlake continued its inaccurate reporting in the face of her multiple, detailed disputes. | Miller Dep. at 131:20–132:11 (Marchiando Decl. Ex. 5) |
| 87. Aspects of Plaintiff's damages include lost credit capacity, reduced credit limits, time lost due to disputing with Westlake, and anxiety when applying for credit. | Miller Dep. at 133:3–134:10, 139:2–16, 139:18–140:5, 140:15–25 (Marchiando Decl. Ex. 5) |
| 88. Westlake instructed the CRAs to cease the reporting of the account two weeks after Plaintiff filed this lawsuit. | bates no. WFS000214 (Marchiando Decl. Ex. 40) |
| 89. Plaintiff's expert, Evan Hendricks, discusses specific details about Westlake's investigation process, the information Westlake had since the inception of the account, | Hendricks Expert Report at 1–3 (Marchiando Decl. Ex. 41) |

PLT.'S STMT OF UNCONTESTED FACTS

| | |
|---|---|
| and the information it later learned and Plaintiff presented in her disputes, and how that impacted Westlake's investigations of Plaintiff's disputes. | |
| 90. Mr. Hendricks opines about Westlake's process of escalating identity theft disputes and where it falls within industry practices. | Hendricks Expert Report at 3 (Marchiando Decl. Ex. 41) |

July 15, 2022

Respectfully submitted,

**MELISSA MILLER,**

By: _/s/ Craig C. Marchiando_
Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel.: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

Octavio Gomez (*pro hac vice*)
**THE CONSUMER LAWYERS**
412 E. Madison #903
Tampa, FL 33602
Phone: 813-299-8537
Mobile: 813 299 8537
Fax:    844-951-3933
Email: Tav@TheConsumerLawyers.com

*Counsel for Plaintiff*
