THE MOLINO FIRM, APLC
Anthony A. Molino, Esq., [SBN 156661] molino@molinolawfirm.com
Steven R. Berardino, Esq., [SBN 075820] sberardino@molinolawfirm.com
John C. Holmes, Esq. [SBN 120578] jholmes@molinolawfirm.com
Taylor M. McGrew, Esq. [SBN 343886] tmcgrew@molinolawfirm.com
4751 Wilshire Boulevard, Suite 207
Los Angeles, California 90010-3838
Telephone (323) 692-4010 Facsimile (323) 692-4015

Attorneys for Defendants WESTLAKE SERVICES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA MILLER | Case No. 8:21-cv-00692-JLS-KES |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| WESTLAKE SERVICES, LLC | |
| Defendant. | [Filed Concurrently with Response to Plaintiff's Separate Statement of Undisputed Material Facts; Request for Judicial Notice; Evidence in Support of Opposition; Objection to Expert Witness Report of Evan Hendricks; Declarations of Tracy Bergiman, Steven Berardino, and John Ulzheimer] |
| | Date: October 28, 2022 Time: 10:30 a.m. Location: Courtroom 8A Judge: Honorable Josephine Staton |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the Defendant Westlake Services, dba

Westlake Financial Services will and hereby does oppose Plaintiff Melissa Miller's

Motion for Partial Summary Judgment. Said opposition is made on the grounds that triable issues of fact exist as to each cause of action set forth in the complaint.

This opposition is made pursuant to the terms of FRCP 56 and will be based upon the following: (1) Memorandum of Points and Authorities; (2) Declaration of Tracy Bergiman; (3) Declaration of John Ulzheimer; (4) Declaration of Steven Berardino;(5) Exhibits; (6) Request for Judicial Notice;(7) Objection to the Expert Report of Evan Hendricks as well as all other documents and records already on file in this matter and upon such further and documentary evidence as may be presented at or before the hearing of these motions.

Dated: October 7, 2022                 THE MOLINO FIRM, PLC


                                        By:    s/Steven R. Berardino
                                               Steven R. Berardino, Esq.
                                               Attorney for Defendant
                                               WESTLAKE   SERVICES, LLC

1

# TABLE OF CONTENTS

**PAGES**

I.    INTRODUCTION………………………………………………………… 2

II.   THE EVIDENCE ……………………………………………………... 8

    A. THE PURCHASE OF THE SUBJECT VEHICLE AND WESTLAKE'S INTERACTION WITH MILLER THEREAFTER……………………………………………….. 8

    B. MILLER FILES DISPUTES WITH ALL THREE CRA'S AND WESTLAKE INVESTIGATES HER CLAIMS…………………… 11

    C. A BRIEF OVERVIEW REGARDING UNDERWRITING…… 11

    D. THE WESTLAKE INVESTIGATION……………………… 13

    E. MILLER FILES MULTIPLE LAWSUITS TO RECOVER THE SAME DAMAGES…………………………………………… 15

III.  LEGAL DISCUSSION……………………………………….. 16

    A. CONSIDERATIONS REGARDING SUMMARY DISPOSITION………………………………………….. 16

    B. IT CANNOT BE SAID AS A MATTER OF LAW THAT WESTLAKE DID NOT CONDUCT A REASONABLE INVESTIGATION………………………………………. 18

    C. IT CANNOT BE SAID AS A MATTER OF LAW THAT WESTLAKE SENT FALSE INFORMATION TO THE CRA'S REGARDING MILLER……………………………………… 21

    D. WESTLAKE DID NOT VIOLATE CALIFORNIA CIVIL CODE SECTION 1785.24…………………………………… 22

IV.   CONCLUSION……………………………………………….. 22

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                          <u>PAGES</u>

*Chiang v. Verizon New England, Inc.*
595 F.3d 26, 28 (1st Cir. 2010)…………………………………………… 17

*Johnson v. MBNA Am. Bank, NA*
357 F.3d 426, 431 (4th Cir. 2004)…………………………………………… 18

*Grigoryan v. Experian Info.n Sols., Inc*
84 F. Supp. 3d 1044, 1063 (2014)…………………………………………… 22

*Hinkle v Midland Credit Managers*
827F.3d.1295 (11th Cir. 2016)…………………………………………… 5, 17

*Lavespere v. Niagara Mach. & Tool Works, Inc.*
910 F.2d 167 (5th Cir. 1990)…………………………………………… 17

*Westra v. Credit Control of Pinellas*
409 F.3d 825, 827 (7th Cir. 2005)…………………………………………… 20

*Woods v. LVNV Funding, LLC*
27 F.4th 544 (7th Cir. 2022)…………………………………………… 20

<u>Statutes</u>

15 U.S.C. 1681i(a)(2)…………………………………………………... 19

15 U.S.C. § 1681s–2(a), and (2)…………………………………………… 18

15 U.S.C. § 1681s–2(b)…………………………………………… 18

15 U.S.C. § 1681s–2(b)(1)…………………………………………… 19

15 U.S.C. §1681s-2(b)(1)(C)…………………………………………… 21

California Civil Code section 1785.25(a)…………………………………… 22

Fed. R. Civ. P. 56(c)(4)…………………………………………… 18

ii

TABLE OF CONTENTS

## MEMORANDUM OF POINTS AND AUTHORTITIES

### I. INTRODUCTION

This is a lawsuit under the Fair Credit Reporting Act (FCRA) and California Consumer Credit Reporting Agencies Act (CCRAA) brought by Plaintiff Melissa Miller ("MILLER") against Defendant Westlake Services, LLC dba Westlake Financial Services ("WESTLAKE") relating to an alleged identity theft for a vehicle purchased in MILLER's name, the contract for which WESTLAKE purchased from the auto dealer. In separate additional actions in this Court, MILLER has claimed that there were two other, more expensive vehicles that purchased in her name around the same timeframe. (*See* Def.'s Req. for J. Notice ("RFJN") Exs. A-C). Those sales contracts were purchased by State Farm Bank ("STATE FARM") and Nissan Motor Acceptance Corp. ("NMAC"). (RFJN Ex. B and C). MILLER has sued and settled with these other finance companies as well as with all three of the major credit reporting agencies ("CRA's") (*See* RFJN Exs. A-F). The other three lawsuits all set forth the exact itemization of damages that are sought in this action. (RFJN Exs. A-C). Nonetheless MILLER refuses to disclose the sums recovered in these five (5) settlements. Although the question of damages is tangential to the present motion, MILLER repeatedly raises her alleged harm in her motion, purportedly caused solely by WESTLAKE. However, if she has already been made whole, then she lacks standing. Having opened that door, it

2

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

is appropriate for the Court to query if MILLER has already been made whole, or is simply seeking a windfall against WESTLAKE, the last defendant standing.

MILLER's motion is predicated on the unproven premise she was a victim of identity theft, which has not been judicially established in any of her four related lawsuits. Per MILLER'S own testimony, the agency to which she reported the alleged theft, the Huntington Beach Police Department, has yet to complete its inquiry. She further claims that she filed a complaint with the Federal Trade Commission ("FTC"), but WESTLAKE has not been provided with that document and the outcome of that complaint is also unknown. She presently does not seek summary judgment as to the issue of identity theft, yet suggests, without supporting authority, that WESTLAKE has the burden of proving her status as a victim. (Decl. of Steve Berardino ("Berardino Decl.") Ex. P).

There are triable issues of fact regarding her status as a victim and the reasonableness of WESTLAKE's investigation. MILLER skips the essential step of establishing that she is a victim while acknowledging that WESTLAKE is the true victim of identity theft and moves prematurely for partial summary judgment as to her two causes of action under FCRA and CCRAA. Further, MILLER overreaches as to the scope of the two statutes. She questions at length the underwriting process by WESTLAKE in which it decided to purchase the sales contract, but this process is not at issue for credit reporting claims, which are all

3

MILLER asserts here. By necessity, the underwriting process occurred before MILLER claims to have learned of the identity theft, let alone any credit reporting or disputes thereof.

MILLER relies on the lengthy report of expert, Evan Hendricks, which is not sworn under penalty of perjury and is therefore inadmissible. By contrast, WESTLAKE submits a sworn declaration from expert John Ulzheimer which includes opinions that WESTLAKE conducted itself in a sensible matter in requiring supporting documentation such as a police report and an affidavit of identity theft – documentation that MILLER repeatedly refused to provide.

MILLER expends considerable time faulting WESTLAKE for reporting of allegedly inaccurate information; however, the accuracy of the reporting, as well as WESTLAKE's reasonable investigation thereof, turns on her alleged status as a victim.

Throughout, MILLER conflates what she may believe is a persuasive argument at trial with an entitlement to summary disposition. Not satisfied with seeking a finding that WESTLAKE fumbled the investigation as a matter of law, she further seeks a finding that WESTLAKE's conduct was "willful" without citing any authority that has taken that issue from the trier of fact.

The crux of the motion is whether WESTLAKE's investigation was inadequate as a matter of law. That answer is no, as the adequacy of such

4

investigation is a fact question usually reserved to the trier of fact. *Hinkle v Midland Credit Managers* 827F.3d.1295 (11th Cir. 2016). MILLER cites no authority that has granted summary judgment as to the adequacy of a furnisher's investigation. Further, WESTLAKE undertook a reasonable review of MILLER'S dispute. Although MILLER suggests that WESTLAKE relied solely on its own records, WESTLAKE matched its records to those provided by the CRA's during the dispute process.

Nor was WESTLAKE the only entity that concluded that the various accounts were attributable to MILLER. STATE FARM, NMAC and all three CRA's all initially found that the accounts belonged to her and maintained that position prior to litigation.

One key finding during WESTLAKE's investigation concerned the sole payment made on the account. WESTLAKE's account notes reflect a call from an individual that identified himself as Andrew Chavez who called WESTLAKE two (2) weeks after the purchase of the car and made a payment in the amount of $253.51. (Decl. of Tracy Bergiman ("Bergiman Decl.") Ex. HH). As a matter of practice, the phone number that the call originated from was automatically recorded in the account notes. *Id.* The call was made from (714) 847-2551, which MILLER admits is her work number. (Berardino Decl. Ex. Q). According to both WESTLAKE's account notes and a recording of the call, Chavez indicated that he

5

was MILLER's boyfriend. (Berardino Decl. Ex. Q)(Bergiman Decl. Ex. HH).

WESTLAKE's file further revealed that the references form identified Jessica Miller as a reference. (Bergiman Decl. Ex. II). MILLER confirmed that she has a sister by the name. (Berardino Decl. Ex. R). Additionally, MILLER testified that her employer's listed address and phone number on the credit application was correct. (Berardino Decl. Ex. T). MILLER further testified that her job title, monthly income, hours worked per week, and supervisor were all correct. (Berardino Decl. Ex. U). All of these facts could lead a reasonable investigator to conclude that MILLER was the debtor.

Perhaps most importantly, MILLER repeatedly refused to assist WESTLAKE in its investigation. On December 4, 2019, WESTLAKE received a call from MILLER which was recorded. (Bergiman Decl. Ex. LL). She admitted in deposition that it was her voice. (Berardino Decl. Ex. S). In that call she claimed to have been a victim of identity theft and was told that she would have to sign an affidavit of identity theft which was sent to her. (Bergiman Decl. Ex. LL). She did not do so. (Bergiman Decl. ¶18). On December 13, 2019, MILLER called WESTLAKE again. (Bergiman Decl. Ex. MM). She admitted to having filed a police report and retained an attorney. *Id*. However, she refused to provide this essential documentation to WESTLAKE. *Id*. She further stated WESTLAKE would be hearing from her attorneys at Morgan & Morgan within a couple of

6

weeks. *Id.* In fact, WESTLAKE did not here from MILLER's purported counsel until the filing of this lawsuit. (Bergiman Decl. ¶26).

Next, on January 16, 2020, an unnamed caller, purportedly from the Huntington Beach Police Department, called Westlake and stated the purpose of his call was that he was "…trying to find information on that car." (Bergiman Decl. Ex. NN). The purpose of the call was muddled; at one point, he noted the jurisdiction was probably not in Huntington Beach and that Westlake "probably are gonna want to reach out to whoever – wherever that car got purchased and file a report in that jurisdiction, depending on what you guys handle. Like I said, I'm – I'm gonna guess it's probably not in Huntington Beach." (Bergiman Decl. NN). The Huntington Beach detective did not call with Plaintiff on the line. (Bergiman Decl. NN). WESTLAKE, while giving weight to completed police reports does not place much weight on calls from individuals claiming to be the police because it receives hundreds, if not thousands, of call from people claiming to be someone they are not. (Bergiman Decl. Ex. OO). 16. Additionally, Westlake called the cell number provided by the purported Huntington Beach Police Department detective and is not a number associated with the Huntington Beach Police Department. (Bergiman Decl. ¶16).

///

///

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## II. THE EVIDENCE

## A.

## THE PURCHASE OF THE SUBJECT VEHICLE AND WESTLAKE'S

## INTERACTION WITH MILLER THEREAFTER

MILLER alleges that on or about July 1, 2019, someone pretending to be her purchased a 2015 Ford Fusion at Evolution Auto Sales in San Bernardino. (Bergiman Decl. Ex. EE). It has not been conclusively established if MILLER or someone else made the purchase. Either way, the purchaser provided the dealer the name of Melissa Hamilton, MILLER's maiden name and produced her actual driver's license. (Bergiman Decl. Ex. EE).

Although one might expect documents of this nature to be typical in identity fraud cases, others are more puzzling. As part of the deal it purchased from the dealer, WESTLAKE obtained a Verification of Income Form purportedly from MILLER, dated July 2, 2019. (Bergiman Decl. Ex. FF). The form stated that MILLER was employed at Ocean View School District and her supervisor was Michelle Eifert. (Bergiman Decl. Ex. FF). MILLER has testified that the information was correct, including her rate of pay. (Berardino Decl. Ex. T). In a similar manner the personal reference form listed a Jessica Hamilton as her sister. (Bergiman Decl. Ex. II). MILLER admits that she has a sister by that name. (Berardino Decl. Ex. R). Additionally, MILLER was inconsistent at deposition as

8

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

to how many email addresses were in fact attributable to her. (Berardino Decl. Ex. I).

WESTLAKE purchased the contract and in the regular course of its business set up an account file. (Bergiman Decl. ¶11). The first entry of importance in the account notes occurred approximately two weeks later on August 15th, 2019. (Bergiman Decl. Ex. II). As is customary, that call was time stamped, the incoming number was noted, and the call was recorded. (Bergiman Decl. Ex. HH and II). The individual on the call identified himself as Andrew Chavez, indicated that he was MILLER's boyfriend and made the sole payment on the account in the amount of $253.51. *Id*. The call was made from (714) 847-2551, which is MILLER acknowledged is her work number. Berardino Decl. Ex. Q). Her name is listed in the notes as being on the credit card payment. (Bergiman Decl. Ex. HH). As discussed below, this entry is critical in evaluating the reasonableness of WESTLAKE's investigation into MILLER's claim of identity theft.

MILLER testified that she requested her credit reports from all three credit bureaus. (Berardino Decl. Ex. K). On December 4, 2019, WESTLAKE received a call from (714) 244-0050 and the caller identified herself as MILLER. (Bergiman Decl. Ex. LL). MILLER reviewed the recording of the call at deposition and stated that she was the caller. (Berardino Decl. Ex. S). MILLER stated that she did not purchase the Fusion. (Bergiman Decl. Ex. LL). This would have been the first that

9

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WESTLAKE heard of alleged identity theft on the account. (Bergiman Decl. ¶25). WESTLAKE asked MILLER to fill out and return an Affidavit of Identity Theft, which is standard in the industry. (Bergiman Decl. Ex. LL); (Ulzheimer Decl. Ex. G, pgs. 18-19).

It is not disputed that MILLER received the affidavit but there is no evidence that she returned it. (Bergiman Decl. ¶18). During this conversation, MILLER was told by WESTLAKE that it needed a government identification. (Bergiman Decl. Ex. LL). WESTLAKE further advised MILLER that it "cannot do anything without the affidavit". *Id*. WESTLAKE never received the affidavit. (Bergiman Decl. ¶18). This was the first but not last time that MILLER's failure to cooperate would adversely impact that investigation.

MILLER's failure to cooperate continued on December 13, 2019, MILLER spoke with WESTLAKE again. (Bergiman Decl. Ex. MM). The entry by the customer service representative indicates MILLER would not let her speak. *Id*. MILLER indicated that she had a lawyer and that the lawyer would call within two weeks. *Id*. WESTLAKE did not hear from MILLER's purported counsel until the filing of this present lawsuit. (Bergiman Decl. ¶26). MILLER indicated that her attorney was at Morgan & Morgan. (Bergiman Decl. Ex. MM). She was again asked for the police report. Id. Her response was that WESTLAKE would have to get it from her attorney. *Id*. Since WESTLAKE did not hear from counsel until the

10

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

filing of this lawsuit, its reporting to the CRAs was accurate to the best of its knowledge based upon the investigation it was able to complete. (Bergiman Decl. ¶27).

## B.

## MILLER FILES DISPUTES WITH ALL THREE CRA'S AND WESTLAKE INVESTIGATES HER CLAIMS.

In January and February of 2020, MILLER sent credit reporting disputes to all three CRA's as well as to WESTLAKE, STATE FARM and NMAC (collectively "HOLDERS"). (Berardino Decl. Ex. J). Also in February, all three HOLDERS verified that the accounts belonged to MILLER. (RFJN Exs. B and C). For reasons that MILLER could not clarify, she sent a near duplicate dispute after her initial disputes were rejected.   On February 1th and March 16th of 2020, WESTLAKE received disputes from the CRA's regarding the MILLER's account via Automated Consumer Dispute Verification ("ACDV")'s. (Bergiman Decl. Ex. PP). MILLER subsequently filed three separate lawsuits against all the holders and a fourth against all three CRA's. (RFJN Exs. A-C). She collected from all.

## C.

## A BRIEF OVERVIEW REGARDING UNDERWRITING

Although WESTLAKE's underwriting process prior to purchasing the deal is beyond the scope of Plaintiff's credit reporting claims, a brief review with be

11

offered because MILLER spends substantial time on the issue. When WESTLAKE is offered an automotive sales contract, it involves a dealer with which WESTLAKE has an ongoing contractual relationship. (Bergiman Decl. ¶3). The dealer sends personal identifying documents to WESTLAKE such as those identified during the purchase of the subject vehicle. (Bergiman Decl. ¶4). This documentation is verified through its proprietary algorithm. (Bergiman Decl. ¶5). There is also a customer welcome call to verify that electronic signature and to other purchaser identification information. (Bergiman Decl. ¶6). WESTLAKE also employs a fraud shield alert. (Bergiman Decl. ¶7). All fraud alerts must be cleared by the underwriters before a before a sales contract can be purchased. (Bergiman Decl. ¶8). This process occurs hundreds of times a day. (Bergiman Decl. ¶8). All of the procedures were followed in the present case. (Bergiman Decl. ¶9).

Additionally, the credit report from Experian contained alerts including "Inquiry Address. ALERT" meaning that there is an alert on the consumers' address and "Inquiry Address" which references the address a consumer uses in submitting a credit request. (Bergiman Decl. Ex. JJ and KK). Westlake undertook a diligent search of the Atlantic Avenue address by way of conducting a Lexis Nexis search, verifying that Melissa Hamilton's name was associated with the Atlantic Avenue address. Westlake was provided with a lease agreement by the dealer for a property in Long Beach, CA signed and entered into by Melissa Hamilton.

12

(Bergiman Decl. Ex. SS and TT). Additionally, Westlake attempted to call four of Melissa Hamilton's references twice and ended up speaking with two of Melissa Hamilton's listed references, Jessica Hamilton and Brian Banks. (Bergiman Decl. Ex. UU). With regard to Westlake's policy on open vehicles on credit, Westlake allows at least one open vehicle loan. (Bergiman Decl. Ex. VV).

D.

## THE WESTLAKE INVESTIGATION

Tracy Bergiman, WESTLAKE's compliance manager and credit reporting supervisor, testified that the procedure WESTLAKE employs upon receiving a dispute from a CRA is to upload all relevant documents including the account notes to WESTLAKE's system. (Bergiman Decl. ¶14). WESTLAKE does not close these indirect disputes without a complete review of the account documents. (Bergiman Decl. ¶15). Here, WESTLAKE verified that Plaintiff's Driver's License and Social Security number matched and that the sole payment on the account was from Plaintiff's place of business. (Bergiman Decl. Ex. RR). As stated by investigators Mr. Mata, Ms Campos, Ms. Cruz, and Mr. Bergiman, Westlake's legal department handles the investigation of identity theft disputes after escalation. (Berardino Decl. Exs. V and W). As part of its investigation, on April 13, 2020, WESTLAKE's legal department sent another request to MILLER for additional supporting documentation, including an Identity Theft Affidavit.

13

(Bergiman Decl. Ex. QQ). It was never received. (Bergiman Decl. ¶18). Contrary to what the moving papers suggest, WESTLAKE does not rely on its own records alone but matches those records to those of the CRAs. (Bergiman Decl. ¶16). WESTLAKE made it clear to MILLER that it could do nothing with those provided by the CRA's during transmittal of the dispute. (Bergiman Decl. ¶28).

WESTLAKE verified that MILLER's Drivers License and Social Security number matched, and that the sole payment on the account was from MILLER's place of business. (Bergiman Decl. Ex. HH, II). If MILLER had provided requested document requested including her driver's license, a complete police report, proof of residency and the affidavit of identity theft the case would have potentially been closed long ago. (Bergiman Decl. ¶33).

The credit dispute analysts in this claim here Jose Mata and Karen Campos would be looking for a completed police report and affidavit of identity theft, neither of which MILLER provided. (Berardino Decl. Ex. W)(Bergiman Decl. ¶18). Mr. Mata and Ms. Campos testified by way of deposition that they looked at the substance of the consumer letter. (Berardino Decl. Exs. L and M). Additionally, Ms. Cruz testified by way of deposition that she reviews the account notes. (Berardino Decl. Ex. N).

In terms of the post dispute investigation, Bergiman again emphasized the importance obtaining an affidavit of identity theft from the consumer and that

14

MILLER was advised of that immediately of its importance. (Bergiman Decl. Ex. LL and MM). The importance of documents such as completed police reports and affidavits is underscored by expert Ulzheimer. Decl. of Ulzheimer ("Ulzheimer Decl.") Ex. G); In Ulzheimer's expert report, he states that over half of the credit disputes by consumers are a bogus attempt by consumers to remove accurate but unfavorable credit entries. (Decl. of Ulzheimer; Ex. G., pg. 18). For the same reason, WESTLAKE, while giving weight to completed police reports does not place much weight on calls from individuals claiming to be the police because it receives hundreds, if not thousands, of calls from claiming to be someone they are not. (Bergiman Decl. Ex. OO). The cell number left by the purported officer is not a number associated with the Huntington Beach Police Department (Bergiman Decl. ¶19). Notably, MILLER testified that the Huntington Beach Police Department file is still open and they are "still investigating," raising the question as to whether MILLER is in fact an actual victim of identity theft to date. (Berardino Decl. Ex. O).

E.

## MILLER FILES MULTIPLE LAWSUITS TO RECOVER THE SAME DAMAGES

MILLER has filed three (3) additional lawsuits in this Court involving related allegations of identity theft: one suit against STATE FARM, another

15

against NMAC, and a third against all three CRA's. (See RFJN Exhibits A, B, and C).  This bears on MILLER's damages claim. Although one might argue that that an assessment of damages is not directly implicated by the present motion, MILLER repeatedly raises her damages in her motion. *Id*. Although WESTLAKE cannot know for certain why MILLER filed four separate lawsuits, she has received four (4) or five (5) settlements from five (5) other defendants. (See RFJN Exhibits D-F). Her syllabus claimed damages are identical in all four (4) cases. (See RFJN Exhibits A-C). Unless, MILLER reveals what she has recovered, she cannot establish standing.

III.

### LEGAL DISCUSSION

### A.

### CONSIDERATIONS REGARDING SUMMARY DISPOSITION

Summary adjudication of governed by Rule 56 of the Federal Rules of Civil Procedure. The Fifth Circuit has held:

> A Party moving for summary judgment bears burden of establishing that there are no genuine issues of material fact, and may either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.

16

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990), re'g denied 920 F.2d 259, cert. denied 510 U.S. 859.

MILLER seeks partial summary judgment on two matters that are inherently factual. First, she seeks a finding that WESTLAKE's investigation was inadequate as a matter of law. In support of this, she cites numerous cases most of which are simply affirmations by appellate courts of a factual determinations at trial. *See, e.g.*, *Hinkle v Midland Credit Mgmt. Inc.*, 827 F.3d. 1295 (11th Cir. 2016). A careful reading of *Hinkle*, however, is instructive. This case involved a matter of first impression in the Eleventh Circuit and stands for the proposition that the "reasonableness" standard in reviewing furnisher investigations equates in most cases to questions of fact. The court held that

> what constitutes a "reasonable investigation" will vary depending on the circumstances of the case and whether the investigation is being conducted by CRA under §1681i(a), or a furnisher of information under §1681s-2(b).

*Id.* at 1302. (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 28 (1st Cir. 2010)). The court further held that:

> Whether a furnisher's investigation is reasonable will depend in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and on the quality of documentation available to the furnisher.

17

*Id.* (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)).

The court further noted that:

> Verification might be accomplished by uncovering documentary evidence that is sufficient to prove that the information is true. See Johnson, 357 F.3d at 431. Or it might be accomplished by relying on personal knowledge sufficient to establish the truth of the information.

*Id.* at 1304 (citing Fed. R. Civ. P. 56(c)(4).

Much the same can be said about MILLER's effort to obtain a judicial finding that the conduct of WESTLAKE was 'willful". Because MILLER cannot establish that the investigation was inadequate as a matter of law, she cannot establish "willful" misconduct, especially given the heightened burden and enhanced remedies. MILLER fails to cite any authority to permit a court to remove this issue from the trier of fact, and thus this motion should be denied.

B.

IT CANNOT BE SAID AS A MATTER OF LAW THAT WESTLAKE DID NOT

CONDUCT A REASONABLE INVESTIGATION

The FCRA sets forth two general requirement for furnishers: (1) the duty to provide accurate information, 15 U.S.C. § 1681s–2(a), and (2) the duty to investigate the accuracy of reported information upon receiving notice of a dispute is received, *id.* § 1681s–2(b).

18

Westlake's obligations once it receives a Notice of Dispute from the CRAs are set forth in 15 U.S.C. § 1681s–2(b)(1) as follows:

a.   "After receiving notice pursuant to section 1681i(a)(2) [from a CRA] of this title of a dispute regarding the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

   (A)   investigate with respect to the disputed information.
   (B)   review all relevant information provided by the consumer reporting

   (C)   agency pursuant to section 1681i(a)(2) of this title.
   (D)   report the results of the investigation to the consumer reporting agency.
   (E)   if the investigation finds that the information is incomplete or
   (F)   inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

b.   if an item of information disputed by a consumer is found to be

   (A)   inaccurate or incomplete or cannot be verified after any reinvestigation
   (B)   under paragraph (1), for purposes of reporting to a consumer reporting
   (C)   agency only, as appropriate, based on the results of the reinvestigation
   (D)   promptly—
       (i) modify that item of information.
       (ii) delete that item of information; or
       (iii)   permanently block the reporting of that item of information."

19

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MILLER suggests WESTLAKE's investigation is inadequate because WESTLAKE relied solely on its own documents and matched those to the CRA's documents. (ECF 53, at 16:27). However, courts reviewing furnishers investigations have endorsed this very approach. *See, e.g., Woods v. LVNV Funding, LLC*, 27 F.4th 544 (7th Cir. 2022). Woods, a consumer, claimed to be a victim of identity theft. His dispute included a police report. The furnisher's investigation consisted matching personal information such as names etc. with the CRA records. In rejecting Plaintiff's claim that the investigation was inadequate the court found:

That the furnisher investigation "consisted primarily of matching his name and address to the information in its files, could not have been reasonable as a matter of law." *Id*. at 550.  Although the police report attached to the verification described consumer's claim that "someone had obtained a credit card [in] his name. . ." *id*, the court emphasized that the "reasonableness of a furnisher's investigation 'is a factual question normally reserved for trial' unless the defendant's procedures were unreasonable 'beyond question.'" *Id*. (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Accordingly, not only was the process employed by WESTLAKE judicially endorsed, it is also not appropriate for summary judgment in MILLER's favor. WESTLAKE was able to confirm that all of the employment details in MILLER's employment verification form were correct, down to details such as her job title,

20

supervisor and rate of pay. WESTLAKE was able to confirm that her sister, or someone by the same name, was listed as a reference. MILLER, in her lengthy filing, ignores entries made during WESTLAKE's investigation that the sole payment on this account was made from her place of work, evidently using her credit card. Given the still open police report and MILLER's failure to cooperate, the results of the investigation were reasonable based upon what WESTLAKE knew at the time, and thus her motion should be denied.

## C.

## IT CANNOT BE SAID AS A MATTER OF LAW THAT WESTLAKE SENT FALSE INFORMATION TO THE CRAs REGARDING MILLER

MILLER further claims that WESTLAKE violated §1681s-2(b)(1)(C), which she claims was "more malevolent" than a typical negligent violation. (ECF 53, at 19:9). The subject section, however, simply requires the furnisher to report CRAs its results of its investigation, and there is no evidence WESTLAKE failed to do so. The actual grievance appears to be that WESTLAKE failed to accept MILLER's self-characterization as a victim without her providing the requested documentation sufficient for WESTLAKE to investigate.

MILLER also laments that WESTLAKE failed to provided compliance codes, (ECF 53 at 21:16-21), which she similarly alleged against STATE FARM and NMAC (*See* RFJN Exs. B and C). However, she provides no authority that this is

21

legally required or shown how it may have impeded the investigation and her inadmissible expert report cannot help her escape denial of this motion.

## D.

## WESTLAKE DID NOT VIOLATE CALIFFORNIA CIVIL CODE SECTION 1785.24

MILLER further claims that WESTLAKE violated the CCRAA, specifically California Civil Code section 1785.25(a). In many respects, the CCRAA mirrors the FCRA, with the exception that a private right of action arises before a formal dispute is lodged by the consumer. This, however, can only be true "if the [furnisher] knows or should know the information is incomplete or inaccurate." CAL. CIV. CODE § 1785.25(a). Thus, the same analysis applies to both statutes, including the reluctance of courts to grant summary judgment. *See*, *e.g. Grigoryan v. Experian Info.n Sols., Inc.*, 84 F. Supp. 3d 1044, 1063 (2014). Like with her FCRA claim, MILLER fails to establish that WESTLAKE violated the CCRAA as a matter of law, as it cannot be stated that WESTLAKE's reporting was knowingly inaccurate.

## IV.

## CONCLUSION

MILLER fails to demonstrate that she is entitled to partial summary judgment. Serious factual disputes remain about her claim to be a victim, her failure to cooperate with WESTLAKE in its investigation, and whether she has

22

already been fully compensated for any alleged damages in her three related lawsuits. Her motion should be denied.

Dated: October 7, 2022                          THE MOLINO FIRM, PLC


                                    By:   s/Steven R. Berardino
                                          Steven R. Berardino, Esq.
                                          Attorney for Defendant
                                          WESTLAKE  SERVICES, LLC

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

### *Melissa Miller v. Westlake Services, LLC.*
Case Number 8:21-cv-00692-JLS-KES

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.

On October 7, 2022, I served a true copy of the within **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on interested parties:

[ ] By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[ ] By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following;

[ ] By emailing it via Federal Rule of Civil Procedure 5(b)(2)(D), per stipulation of parties to all parties/persons appearing on the Service List.

[X] By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct under the law of the United States of America.  Executed this 7th day of October 2022 in Los Angeles, California.

Beverly Langworthy

24

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## SERVICE LIST

Craig C. Marchiando, Esq.                    craig@clalegal.com
Leonard Bennett, Esq.                        lenbennett@clalegal.com
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601


Octavio Gomez, Esq.                          tav@theconsumerlawyers.com
The Consumer Lawyers PLLC
3210 W. Cypress Street
Tampa, Florida 33607


Matthew M. Loker                             matt@loker.law
Loker Law APC
1303 East Grand Ave, Suite 101
Arroyo Grande, California 93420

25

OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT