THE MOLINO FIRM, Professional Law Corporation
Anthony A. Molino, Esq., [SBN 156661] molino@molinolawfirm.com
Steven R. Berardino, Esq., [SBN 075820] sberardino@molinolawfirm.com
John C. Holmes, Esq. [SBN 120578] jholmes@molinolawfirm.com
Taylor M. McGrew, Esq. [SBN 343886] tmcgrew@molinolawfirm.com
4751 Wilshire Boulevard, Suite 207
Los Angeles, California 90010-3838
Telephone (323) 692-4010 Facsimile (323) 692-4015

Attorneys for Defendant, WESTLAKE SERVICES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA MILLER<br><br>     Plaintiff,<br><br> vs.<br><br>WESTLAKE SERVICES, LLC<br><br>     Defendant. | Case No. 8:21-cv-00692-JLS-KES<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT**<br><br>[Filed Concurrently with Opposition to Motion for Partial Summary Judgment; Request for Judicial Notice; Evidence in Support of Opposition; Objection to Expert Witness Report of Evan Hendricks; Declarations of Tracy Bergiman, Steven Berardino, and John Ulzheimer]<br><br>Date: Oct. 28, 2022<br>Time: 10:30 a.m.<br>Location: Courtroom 8A<br>Judge: Honorable Josephine Staton |

///

///

///

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

**Defendant's Response to Plaintiff's Separate Statement of Undisputed**

**Material Fact**

| Plaintiff's Undisputed Material Facts and Supporting Documents | Defendant's Response and Supporting Documents |
|---|---|
| 1. Westlake purchases vehicle-sale contracts from dealerships<br><br>Westlake 30(b)(6) Dep. at 44:11–20; (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 2. A dealership presents a particular loan to five or six companies like Westlake, who then "fight over" who will purchase it.<br><br>Westlake 30(b)(6) Dep. at 44:21–45:5 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 3. Someone used Plaintiff's name to apply for financing to purchase a 2015 Ford Fusion from Evolution Auto Sales in July 2019.<br><br>bates nos. WFS000036–45 (Marchiando Decl. Ex. 2)<br>bates nos. WFS000046–50 (Marchiando Decl. Ex. 3)<br>bates no. WFS000058 (Marchiando Decl. Ex. 4) | **Disputed.**<br><br>Although it is undisputed that "someone" applied for financing, it is disputed to the extent it was "someone other than Plaintiff." Even Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing. The Huntington Beach Police Department file is still open and they are "still investigating" per Plaintiff. Miller Dep. at 45:1-5. (Berardino Decl. Ex. O)<br><br>On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | were accurate. Miller Dep. at 61:6-24. (Berardino Decl. Ex. T) |
| 4. Those individuals presented a photocopy of Plaintiff's drivers license, but the address on the license did not match the address on the application.<br><br>bates nos. WFS000046–50 (Marchiando Decl. Ex. 3) bates no. WFS000058 (Marchiando Decl. Exs. 4) | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>**Disputed.**<br><br>It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing. Miller Dep. at 45:1-5. (Berardino Decl. Ex. O)<br><br>On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate. Miller Dep. at 61:6-24. (Berardino Decl. Ex. T) |
| 5. Westlake did nothing to verify that the address, 6187 Atlantic Avenue, Apartment 210, Long Beach, 90805, was indeed an apartment complex. | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a |

3

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Westlake 30(b)(6) Dep. at 93:10–95:10 (Marchiando Decl. Ex. 1) | reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>Notwithstanding, **Dispute.**<br><br>Westlake undertook a diligent search of the address by way of conducting a Lexis Nexis search, verifying that Melissa Hamilton's name was associated with the Atlantic Avenue address. Westlake further found the Atlantic address to be a shopping center and requested proof of address. Thereafter the dealer updated the address and provided the lease entered into by Melissa Hamilton as proof. (Bergiman Decl. Ex. SS and TT). |
| 6. Westlake's Rule 30(b)(6) witness testified cost was the reason this was not done.<br><br>Westlake 30(b)(6) Dep. at 95:14–17 (Marchiando Decl. Ex. 1) | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>Notwithstanding, **Disputed.**<br><br>Plaintiffs' proferred evidence does not support their alleged fact. Westlake's 30(b)(6) witness responded "yes" when asked if it would be kind of expensive to go out to every place and look. Westlake 30(b)(6) Dep. at 95:14–17 (Marchiando Decl. Ex. 1)<br><br>Westlake undertook a diligent search of the address by way of conducting a |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | Lexis Nexis search, verifying that Melissa Hamilton's name was associated with the Atlantic Avenue address. Westlake further found the Atlantic address to be a shopping center and requested proof of address. Thereafter the dealer updated the address and provided the lease entered into by Melissa Hamilton as proof. (Bergiman Decl. Ex. SS and TT). |
| 7. The application was signed electronically in the name of "Melissa Hamilton," Plaintiff's maiden name.<br><br>Miller Dep. at 11:6–10<br>(Marchiando Decl. Ex. 5) bates no. WFS000049<br>(Marchiando Decl. Ex. 3) | **Undisputed.** |
| 8. Plaintiff did not sign the contract or authorize anyone to sign on her behalf.<br><br>Miller Decl. ¶¶ 4–6<br>(Marchiando Decl. Ex. 6) | **Disputed.**<br><br>It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing. Miller Dep. at 45:1-5. (Berardino Decl. Ex. O)<br><br>On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate. Miller Dep. at 61:6-24. |

5

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (Berardino Decl. Ex. T) |
| 9. The application to the dealership also included, among other things, a list of individuals as references, which Westlake did not verify because the credit score Westlake obtained about Plaintiff was sufficiently high to waive the ordinary requirement of ten references.<br><br>bates no. WFS000117–18 (Marchiando Decl. Ex. 7)<br>Westlake 30(b)(6) Dep. at 129:4–131:4 (Marchiando Decl. Ex. 1) | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>Objection; Compound Question; Plaintiff asserts a fact that includes multiple separate facts within a single purported "fact" - FRE403, 611(a)<br><br>Notwithstanding, **Dispute.**<br><br>Westlake called two of Melissa Hamilton's listed references and verified. Westlake called Jessica Hamilton and Brian Banks, both of whom were reached and spoken to. (Bergiman Decl. Ex. UU). |
| 10. Westlake also noted that the applicant had two outstanding vehicle loans, and its underwriting criteria required that the applicant "[p]rovide proof that all open auto loans have been paid off, traded-in, or are being paid by someone else."<br><br>bates no. WFS000053–57, at 54 (Marchiando Decl. Ex. 8) | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>Objection; Compound Question; Plaintiff asserts a fact that includes multiple separate facts within a single purported "fact" – FRE403, 611(a)<br><br>Notwithstanding, **Dispute.**<br><br>With regard to Westlake's policy on open vehicles on credit, Westlake allows at least one open vehicle loan. |

6

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (Bergiman Decl. Ex. VV). |
| 11. Westlake does not know whether that requirement was met or disregarded as to this transaction, yet Westlake purchased the contract anyway.<br><br>Westlake 30(b)(6) Dep. at 139:4–145:16, 146:3–11, 148:14–25<br><br>(Marchiando Decl. Ex. 1) | Objection as to relevance; Information as to the underwriting process is irrelevant to whether the investigation conducted by Westlake was allegedly unreasonable. "The court noted that 'a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA'" *Kim v. BMW Fin Servs NA, LLC*, 142 F.Supp.3d 935 (C.D. Cal. 2015).<br><br>Notwithstanding, **Dispute.**<br><br>With regard to Westlake's policy on open vehicles on credit, Westlake allows at least one open vehicle loan. (Bergiman Decl. Ex. VV). |
| 12. Westlake obtained a credit report from Experian purporting to be about Plaintiff.<br><br>Westlake 30(b)(6) Dep. at 61:7–25 (Marchiando Decl. Ex. 1) | **Undisputed**. |
| 13. That report contained as the same address as the application: 6817 Atlantic Avenue, Long Beach, which Westlake understood to be the applicant's home address.<br><br>Westlake 30(b)(6) Dep. at 62:14–23, 63:21–64:11<br>(Marchiando Decl. Ex. 1) | **Disputed.**<br><br>Westlake undertook a diligent search of the address by way of conducting a Lexis Nexis search, verifying that Melissa Hamilton's name was associated with the Atlantic Avenue address. Westlake further found the Atlantic address to be a shopping center and requested proof of address. Thereafter the dealer updated the address and provided the lease entered into by Melissa Hamilton as proof. Therefore, funding was delayed until the address was updated by the dealer and the lease agreement was provided. (Bergiman Decl. Ex. SS and TT). |
| 14. That report also contained several | **Disputed.** |

7

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| entries under a heading "Fraud Shield Summary," including that Plaintiff's Social Security Number had been used 12 times in the three months preceding the credit application at issue, and several relating to the applicant's address, such as "current address conflict," <br><br> "current address not on file," <br> "inquiry address: alert," and <br> "on-file address: non-residential." <br><br> Westlake 30(b)(6) Dep. at 65:20–66:18, 67:14–68:5, 68:16–69:4, 70:17–24 <br> (Marchiando Decl. Ex. 1) | The credit report from Experian contained the following entries: <br> "SSN used 12 times since 4-1-19" <br> "(01) Inquiry/On-file current address conflict" <br> "(03) Inquiry current address not Onfile" <br> "(09) More than 3 inquiries in the last 30 days" <br> "(10) Inquiry address: ALERT" <br> "(17) On-file address: Non-residential" <br><br> (Bergiman Decl. Ex. KK) |
| 15. Westlake has no idea what any of these entries mean. <br><br> Westlake 30(b)(6) Dep. at 67:19–21, 68:2–5, 69:23–24 <br> (Marchiando Decl. Ex. 1) | **Disputed.** <br><br> Westlakes' PMK Tracy Bergiman testified as to what these terms mean. <br><br> Specifically, in reference to "Inquiry Address: ALERT," Mr. Bergiman testified that it means "[t]here is an alert on the address." Westlake 30(b)(6) Dep. at 68:18-23. (Bergiman Decl. Ex. KK) <br><br> And that "Inquiry Address" "references when a customer…submits a credit request, the address that is used in relationship to that credit request." Westlake 30(b)(6) Dep. at 68:24-25; 69:1-4." (Bergiman Decl. Ex. KK) |
| 16. Plaintiff did not purchase the vehicle at issue, did not direct anyone to do so, and did not provide her personal information to anyone so that they could purchase a vehicle. <br><br> *Miller Decl.* ¶¶ *4–7* (Marchiando Decl. Ex. 6) | Objection; Compound Question; Plaintiff asserts a fact that includes multiple separate facts within a single purported "fact" – FRE403, 611(a) <br><br> **Dispute.** <br> Plaintiffs' proffered evidence does not support their contention. <br><br> Plaintiff's Declaration states the following, verbatim: |

8

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | "4. I never applied for credit with Evolution Auto Sales to purchase a vehicle."<br><br>"5. I did not sign a credit application or contract with Evolution Auto Sales, and did not provide my identifying information to anyone so that they could complete or sign those documents."<br><br>"6. I did not authorize anyone to sign any documents with Evolution Auto Sales on my behalf"<br><br>"7. I did not provide anyone with my drivers license so they could apply for credit with Evolution Auto Sales."<br>(Berardino Decl. Ex. H)<br><br>On Plaintiff's credit application with Westlake, her employers' listed address and phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. T)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant" was accurate, her monthly income of $2,240.58 was accurate, her hours worked per week was accurate, and her supervisor was accurate. Miller Dep. at 61:6-24 (Berardino Decl. Ex. U)<br><br>Additionally, the Huntington Beach Police Department file is still open and they are "still investigating." Miller Dep. at 45:1-5. (Berardino Decl. Ex. O) |
| 17. Plaintiff has never owned a Ford Fusion, the vehicle at issue, and did not electronically sign the credit application.<br><br>Miller Dep. at 68:4–6, Miller Dep. at 55:21–57:9 (Marchiando Decl. Ex. 5) | Notwithstanding, **Disputed.**<br><br>It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing.<br>Miller Dep. at 45:1-5.<br>(Berardino Decl. Ex. O) |

9

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate.<br>Miller Dep. at 61:6-24. |
| 18. Westlake produced checking account statements apparently part of the application process, and Plaintiff denied ownership of that account or having even heard of the bank.<br><br>Miller Dep. at 66:8–67:7 (Marchiando Decl. Ex. 5) | **Undisputed** that Plaintiff denied these things, but **disputed** as to their truth. . |
| 19. Plaintiff denied ever living in Long Beach, the city the fraudsters listed on the credit application, or at the specific address—on Atlantic Avenue—the fraudsters used, and none of her email addresses match the one on the application.<br><br>Miller Dep. at 57:17–20, 68:7–15 (Marchiando Decl. Ex. 5) bates no. WFS000046–50, at 46 (Marchiando Decl. Ex. 3) | **Disputed.**<br><br>Plantiffs' proferred evidence supports the following facts:<br>1) Plaintiff has never lived at the address of "6187 Atlantic Avenue, Apartment 210." Miller Dep. at 57:17–20<br>2) The email listed on the application was mellymellz.4ever@gmail.com. Bates No. WFS000046<br>   a. Miller Dep. at 57:17–20, 68:7–15; (Marchiando Decl. Ex. 5) bates no. WFS000046–50, at 46 (Marchiando Decl. Ex. 3)<br><br>Plaintiff stated her only email address at the time was missham59@gmail.com, but later stated she also had a work email address of mhamilton@ovsd.org. Miller Dep. at 68:8-15.<br>(Berardino Decl. Ex. I)<br><br>Given her ability to recall additional |

10

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | emails after being asked if she had only one email, it is unclear as to the full extent of Plaintiff's email accounts around July of 2019.<br><br>It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing.<br>Miller Dep. at 45:1-5.<br>(Berardino Decl. Ex. O)<br><br>On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate.<br>Miller Dep. at 61:6-24. |
| 20. Plaintiff testified that she never received any correspondence—no welcome letter, no delinquency notices—from Westlake, and had never heard of Westlake before this lawsuit.<br><br>Miller Dep. at 56:14–16, 72:20–73:8 (Marchiando Decl. Ex. 5) | **Disputed.**<br><br>Plaintiff has heard of Westlake prior to the filing of this lawsuit, evidenced by two separate phone calls that Plaintiff had with Westlake.<br>(Bergiman Decl. Ex. LL and MM). |
| 21. Plaintiff never made any payments on the account.<br><br>Miller Dep. at 69:9–11 (Marchiando Decl. Ex. 5) | **Disputed.** This "fact" is only supported by self-serving testimony.<br><br>While it is Plaintiff's testimony that she never personally made payments to Westlake, Westlake was in receipt of a payment that was attributable to Plaintiff and Plaintiff's.<br>(Bergiman Decl. Ex. GG and HH) |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing. Miller Dep. at 45:1-5. (Berardino Decl. Ex. O)

On Plaintiff's credit application with Westlake, her employer's listed address phone number are correct. Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)

Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate. Miller Dep. at 61:6-24. |
| 22. Plaintiff learned her identity had been stolen in the Fall of 2019.

Miller Dep. at 26:2–8 (Marchiando Decl. Ex. 5) | Objection; Assumes a fact not in evidence, i.e., that Plaintiff's identity was stolen.

**Disputed.** This "fact" is only supported by self-serving testimony.

It has not been established that any individual(s) other than Plaintiff presented a photocopy of her driver's license. Further, it is inconclusive whether Plaintiff was a victim of identity theft, as Plaintiff herself stated that per the Huntington Beach Police Department investigator, the investigation was still ongoing. Miller Dep. at 45:1-5. (Berardino Decl. Ex. O)

On Plaintiff's credit application with Westlake, her employer's listed address |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | phone number are correct.  Miller Dep. at 59:1-3 and 7-10; 60:23-25; (Berardino Decl. Ex. U)<br><br>Additionally, on the Westlake employment verification form, her job title of "instructional assistant," her monthly income of $2,240.58, her hours worked per week, and her supervisor were accurate.<br>Miller Dep. at 61:6-24. |
| 23. Upon reviewing her credit reports, she learned of the Westlake account being attributed to her.<br><br>Miller Dep. at 32:2–14 (Marchiando Decl. Ex. 5) | **Disputed.**<br><br>Plaintiffs' proferred evidence supports the following fact:<br><br>Plaintiff testified that she investigated the claims by Synchrony Bank, by requesting her credit reports from all three credit bureaus.<br>Miller Dep. at 31:23-25; 32:2–14. (Berardino Decl. Ex. K) |
| 24. Westlake reported to the credit bureaus that the account belonged to Plaintiff and had a delinquent payment history, which Westlake knows will negatively impact a consumer's credit score.<br><br>Westlake 30(b)(6) Dep. at 165:11–166:16, 167:3–11 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 25. Westlake later reported the account as a charge-off.<br><br>Westlake 30(b)(6) Dep. at 239:9–19 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 26. Plaintiff spoke to Westlake on the phone at least twice, explaining the account did not belong to her and was the result of identity theft.<br><br>Miller Dep. at 21:14–22:9 (Marchiando Decl. Ex. 5) 12/4/19 call tr. at 2:2–12 (Marchiando Decl. Ex. 9)<br>12/13/19 call tr. at 2:3–12 (Marchiando Decl. Ex. 10)1 | **Dispute.**<br><br>Defendant Westlake was not under any duty to rely on Plaintiff's verbal representations that her identity was stolen, as in fact, even after the filing of this present lawsuit, the Plaintiff's identity theft investigation was still ongoing and nonconclusive.<br>Miller Dep. at 45:1-5; |

13

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (Berardino Decl. Ex. O) |
| 27. Plaintiff filed three reports with the Huntington Beach Police Department, one with the Federal Trade Commission, and sent an identity theft affidavit to Westlake by mail.<br><br>Miller Dep. at 41:21–42:13, 96:4–13, 82:18–24 (Marchiando Decl. Ex. 5) | **Disputed.**<br><br>Plaintiff did not mail, and/or Westlake did not receive, any of the alleged police reports filed with the Huntington Beach Police Department or the report filed with the FTC.  While Plaintiff claims they mailed the identity affidavit back to Westlake, Westlake did not receive such affidavit or reports.<br>(Bergiman Decl. ¶18 & Ex. LL and MM).<br><br>In lieu of sending Westlake the required Identity Theft Affidavit or police report, and despite Plaintiff being informed by Westlake multiple times that these documents are needed in order for Westlake to do something on their end, Plaintiff sent Westlake a letter, including various snapshots of presumably evidence of a partial police report, but do not constitute the documents required for Westlake to escalate her claim.<br>(Bergiman Decl. ¶18 & Ex. LL and MM).<br><br>Westlake informed Plaintiff multiple times of the documents needed and informed Plaintiff that nothing on Westlakes' end can be done without the required documents, to which Plainitiff acknowledged.<br>(12/4/19 call tr. at 2:13- 3:8) (12/13/19 call tr. at 7:5-9).<br>(Bergiman Decl. ¶¶18, 28 & Ex. LL and MM).<br><br>Westlake customer service representative requested documentation from Plaintiff again, to which Plaintiff stated, "No, my lawyer is taking care of it. That's why I have him."<br>(12/13/19 call tr. at 3:25- 4:3)<br>(Bergiman Decl. Ex. MM)<br><br>Plaintiff explicitly refused to provide the |

14

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

required documentation to Westlake:

> W: Ma'am, if you don't send us that information, unfortunately, we can't stop. That is why I am not –
>
> Miller: I am not sending it to you.

(Bergiman Decl. Ex. MM)

> W: But at the same time, you're not giving us the - - the information to help you.
>
> Miller: I don't need to.

(Bergiman Decl. Ex. MM)

Plaintiff claimed in Westlake requesting documentation from Plaintiff, Westlake was purportedly attributing fault to or blaming Plaintiff.

"And you guys have already asked me to do this. You guys already asked me to send all this information in."
(Bergiman Decl. Ex. MM)

"When I called you guys to let you guys know, you told me I had to do a police report and all these things, like it was my fault. And it is not my fault…"
(Bergiman Decl. Ex. MM)

"…the last person I talked to basically blamed this on me, too…"
(Bergiman Decl. Ex. MM)

| | |
|---|---|
| 28. A detective from the Huntington Beach Police Department called Westlake and explained that Plaintiff was the victim of identity theft and that Westlake should mark the account as fraudulent.<br><br>1/16/2020 call tr. (Marchiando Decl. Ex. 11) | **Disputed.**<br><br>Plaintiffs' proffered evidence depicts much more than Plaintiff stated as fact. The unnamed detective called and stated the purpose of his call was that he was "…trying to find information on that car."<br>(Bergiman Decl. Ex. NN)<br><br>The purpose of the alleged detectives' call was muddled, at one point he noted the jurisdiction was probably not in Huntington Beach and that Westlake "probably are gonna want to reach out to |

15

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | whoever – wherever that car got purchased and file a report in that jurisdiction, depending on what you guys handle. Like I said, I'm – I'm gonna guess it's probably not in Huntington Beach." (Bergiman Decl. Ex. NN) |
| | The Huntington Beach detective did not call with Plaintiff on the line, so Westlake was limited in the discussion they could have with the detective. (Bergiman Decl. Ex. NN) |
| | The caller ID of the purported Huntington Beach Police Department detective is not a number associated with the Huntington Beach Police Department. (Bergiman Decl. ¶19) |
| | Finally, Westlake receives "hundreds if not thousands of people calling in saying that they are somebody who they are not. And if [Westlake] followed every lead, that's all [they'd] be doing all day, is following leads." (Bergiman Decl. Ex. OO) |
| 29. Westlake produced multiple letters Plaintiff sent to the Big-3 credit reporting agencies ("CRAs"), Equifax, Experian, and TransUnion, which they then forwarded to Westlake, setting out Plaintiff's disputes.<br><br>WFS000129–33 (Marchiando Decl. Ex. 12) WFS000134–39 (Marchiando Decl. Ex. 13) WFS000140–45 (Marchiando Decl. Ex. 14) WFS000154–61 (Marchiando Decl. Ex. 15) WFS000181–85 (Marchiando Decl. Ex. 16) WFS000186–91 (Marchiando Decl. Ex. 17) WFS000192–97 (Marchiando Decl. Ex. 18) WFS000198–205 (Marchiando Decl. Ex. 19) | **Undisputed.** |

16

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| WFS000206–13 (Marchiando Decl. Ex. 20) WFS000220–24 (Marchiando Decl. Ex. 21) WFS0000225–30 (Marchiando Decl. Ex. 22) WFS000231–36 (Marchiando Decl. Ex. 23) WFS000237–44 (Marchiando Decl. Ex. 24) WFS000245–52 (Marchiando Decl. Ex. 25) | |
| 30. Each letter states that Plaintiff did not open the account Westlake was attributing to her, and later letters informed Westlake of the three reports she filed with the Huntington Beach Police Department, the report identification numbers, and the identification number of the report she filed with the F.T.C.<br><br><br>WFS000129–33 (Marchiando Decl. Ex. 12) WFS000134–39 (Marchiando Decl. Ex. 13) WFS000140–45 (Marchiando Decl. Ex. 14) WFS000154–61 (Marchiando Decl. Ex. 15) WFS000181–85 (Marchiando Decl. Ex. 16) WFS000186–91 (Marchiando Decl. Ex. 17) WFS000192–97 (Marchiando Decl. Ex. 18) WFS000198–205  (Marchiando Decl. Ex. 19) WFS000206–13 (Marchiando Decl. Ex. 20) WFS000220–24 (Marchiando Decl. Ex. 21) WFS0000225–30 (Marchiando Decl. Ex. 22) WFS000231–36 (Marchiando Decl. Ex. 23) | **Undisputed.** |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| WFS000237–44<br><br>(Marchiando Decl. Ex. 24)<br>WFS000245–52 (Marchiando Decl. Ex. 25) | |
| 31. The letters further contain copies of Plaintiff's Social Security Card, drivers license, and a letter confirming her mailing address, as well as statements of additional identifying information.<br><br>WFS000129–33 (Marchiando Decl. Ex. 12) WFS000134–39 (Marchiando Decl. Ex. 13) WFS000140–45 (Marchiando Decl. Ex. 14) WFS000154–61 (Marchiando Decl. Ex. 15) WFS000181–85 (Marchiando Decl. Ex. 16) WFS000186–91 (Marchiando Decl. Ex. 17) WFS000192–97 (Marchiando Decl. Ex. 18) WFS000198–205 (Marchiando Decl. Ex. 19) WFS000206–13 (Marchiando Decl. Ex. 20) WFS000220–24 (Marchiando Decl. Ex. 21) WFS0000225–30 (Marchiando Decl. Ex. 22) WFS000231–36 (Marchiando Decl. Ex. 23) WFS000237–44 (Marchiando Decl. Ex. 24) WFS000245–52 (Marchiando Decl. Ex. 25) | **Undisputed.** |
| 32. In a later letter, Plaintiff included not only the numbers of the Huntington Beach police and F.T.C. reports, but also the cover page of the police reports, and the name and phone number of the Huntington Beach police officer to whom Westlake could speak about the reports.<br><br>Westlake 30(b)(6) Dep. at 264:20– | **Undisputed.** |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| 267:3 (Marchiando Decl. Ex. 1) | |
| 33. That Westlake is able to produce the dispute letters Plaintiff sent to the CRAs confirms that the CRAs forwarded Plaintiff's disputes to Westlake.<br><br>WFS000129–33 (Marchiando Decl. Ex. 12) WFS000134–39 (Marchiando Decl. Ex. 13) WFS000140–45 (Marchiando Decl. Ex. 14) WFS000154–61 (Marchiando Decl. Ex. 15) WFS000181–85 (Marchiando Decl. Ex. 16) WFS000186–91 (Marchiando Decl. Ex. 17) WFS000192–97 (Marchiando Decl. Ex. 18) WFS000198–205 (Marchiando Decl. Ex. 19) WFS000206–13 (Marchiando Decl. Ex. 20) WFS000220–24 (Marchiando Decl. Ex. 21) WFS0000225–30 (Marchiando Decl. Ex. 22) WFS000231–36 (Marchiando Decl. Ex. 23) WFS000237–44 (Marchiando Decl. Ex. 24) WFS000245–52 (Marchiando Decl. Ex. 25) | **Disputed in part.**<br><br>Westlake concedes to receiving such documentation from the CRAs, but disputes Plaintiff's serration that Westlake's possession of documents indicates their source. |
| 34. Westlake receives those disputes in communications called ACDVs, which are transmitted to Westlake through an electronic system called e-OSCAR.<br><br>Westlake 30(b)(6) Dep. at 229:25–231:13 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 35. Westlake's dispute investigators use a computer system called Sonnet to view ACDVs and process disputes.<br><br>Mata Dep. at 40:14–23 (Marchiando | Objection as to the vague and ambiguous phrases "Westlake's dispute investigators" and "process disputes" which Plaintiffs' proffered evidence does not clarify. |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Decl. Ex. 27) | **Disputed** as to the title of Westlake's employees. Some individuals who view the ACDVs via Sonnet are titled "Credit Dispute Analysts," Mata Dep. at 17:8-9. (Bergiman Decl. para 20)<br><br>Westlake's legal department investigates identity theft disputes. **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16; **Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7; **Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5 **Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23; (Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 36. Westlake keeps detailed notes on accounts, and those notes contain, among other things, all communications between Westlake and its consumer accountholders.<br><br>Westlake 30(b)(6) Dep. at 167:18–168:13, 170:17–21 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 37. In the notes connected to the account Westlake attributes to Plaintiff, for example, there are notations for the calls in which Plaintiff informed Westlake that she claimed the account resulted from identity theft, and from the Huntington Beach Police Department.<br><br>bates no. WFS000010–20, at WFS000013, 15 (highlights) (Marchiando Decl. Ex. 26) | **Undisputed.** |
| 38. Jose Mata, one of the individuals who investigated Plaintiff's disputes, stated that he simply compares the | **Disputed.**<br><br>Jose Mata, one of Westlake's credit |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| identifying information in the ACDV—name, date of birth, Social Security Number, address, and account status—with the information in those same categories in Westlake's records.<br><br>Mata Dep. at 77:2–16, 79:11–23, 89:24–90:20 (Marchiando Decl. Ex. 27) | dispute analysts, conducts the outlines tasks in reference to account specific disputes, payment history, payment amount, etc.<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 39. The ACDVs Westlake received relative to Plaintiff's disputes included as attachments the dispute letters Plaintiff sent the CRAs.<br><br><br>WFS000121–24 & WFS000129–33 (Marchiando Decl. Exs. 28; 12)<br>WFS000125–28 & WFS000134–39 (Marchiando Decl. Exs. 29; 13)<br>WFS000146–49 & WFS000140–45 (Marchiando Decl. Exs. 30; 14)<br>WFS000150–53 & WFS000134–39 (Marchiando Decl. Exs. 31; 13)<br>WFS000170–73 & WFS000154–61 (Marchiando Decl. Exs. 32; 15)<br>WFS000206–13 & WFS000245–52 (Marchiando Decl. Exs. 33; 25)<br>WFS000174–77 & WFS000206–13 (Marchiando Decl. Exs. 34; 20)<br>WFS000178–80 (Marchiando Decl. Ex. 35) Westlake 30(b)(6) Dep. at 248:15–249:18 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 40. Westlake's dispute investigators review dispute letters to determine if it | **Disputed.**<br>Identity theft affidavits are not the only |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| is an identity theft affidavit. If it is not, the investigators pay no attention to the substance of the letter or whether any of the information in it would be useful in their investigations.<br><br>Mata Dep. at 86:21–87:19, 99:7–22 (Marchiando Decl. Ex. 27) | documents that trigger the escalation to the legal department for further investigation. To say that all individuals at Westlake responsible for investigating disputes, including the legal department, simply "pay no attention" to the substance of the letter by citing the deposition transcript of one employee would be a gross misstatement of the facts.<br>**Mata Dep.** 78:20-22<br>**Campos Dep.** 37:16-25; 38:21-25; 61:4-8; 61:24-25; 77:23-25; 85:6-7;<br>**Cruz. Dep:** 73:10-23; 75:13-16; 54:1-5<br>**Westlake 30(b)(6) Dep.** 271:21-25; 272:1-6; 280:11-20; 211:13-21; 246:15-17;<br>(Berardino Decl. para 20, Ex. W).<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 41. Westlake's Rule 30(b)(6) witness confirmed that Mr. Mata's handling of Plaintiff's disputes from all three CRAs would have followed this formula.<br><br>Westlake 30(b)(6) Dep. at 263:19–264:16 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 42. Several of Plaintiff's disputes were coded "103: claims true identity fraud/account fraudulently opened."<br>bates no. WFS000150–53<br>(Marchiando Decl. Ex. 31) | **Undisputed.** |

22

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| WFS000170–73 (Marchiando Decl. Ex. 32) WFS000174–77 (Marchiando Decl. Ex. 34) WFS000178–80 (Marchiando Decl. Ex. 35) | |
| 43. Jose Mata testified that for disputes like Plaintiff's he simply compares personal information in the dispute with Westlake's records, and disregards the substance of dispute letters if they are not identity-theft affidavits.<br><br>Mata Dep. at 107:14–17, 108:10–109:16 (Marchiando Dec. Ex. 27) | **Dispute.**<br><br>Jose Mata, one of Westlake's credit dispute analysts, conducts the outlines tasks in reference to account specific disputes, payment history, payment amount, etc.<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 44. Karen Campos, another of Westlake's dispute investigators who handled Plaintiff's disputes, testified similarly to Mr. Mata.<br><br>Campos Dep. at 77:8–16 (Marchiando Decl. Ex. 36) | Objection as to the vague and ambiguous phrasing of "Testified similarly to Mr. Mata" which Plaintiffs' proffered evidence does not clarify.<br><br>**Disputed.**<br><br>It is unclear on exactly what topic Plaintiff is claiming that Ms. Campos testified similarly to Mata. Both Ms. Campos and Mr. Mata have collective deposition transcript page count of 306 pages.<br><br>Although Mr. Mata did look at the substance of the consumer letter, Ms. Campos did state that she would scan the consumer letter and look for helpful |

23

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | information. It is unclear as to how Plaintiff is contending these individuals testified similarly, when in reviewing Plaintiffs' own proffered evidence for this contention, Ms. Campos and Mr. Mata did not testify similarly. **Mata Dep.** at 107:14–17, 108:10–109:16 **Campos Dep.** at 77:8–16 (Berardino Decl. Exs. L and M)<br><br>Additionally, Karen Campos, one of Westlake's credit dispute analysts, conducts the outlines tasks in reference to account specific disputes, payment history, payment amount, etc.<br><br>Westlake's legal department investigates identity theft disputes. **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16; **Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7; **Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5 **Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23; (Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 45. If Westlake concludes that a consumer's dispute of identity theft has the "correct information" that it might prove valid, Westlake's dispute investigators escalate that dispute to Westlake's legal department.<br><br>Westlake 30(b)(6) Dep. II at 70:8–71:5 (Marchiando Decl. Ex. 37) Westlake 30(b)(6) Dep. at 278:20–279:20 (Marchiando Decl. Ex. 1) Cruz Dep. at 24:4–23 (Marchiando Decl. Ex. 38) | **Disputed.** Westlake, upon the receipt of certain concrete and verifiable documentary proof will escalate disputes to the legal department for identity theft investigation.<br><br>Westlake's legal department investigates identity theft disputes. **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16; **Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7; **Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5 **Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18- |

24

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | 23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW).<br><br>Additionally, it is not unreasonable to require concrete documentation from a consumer. "According to the credit industry's trade association, over half of the disputes received by the credit bureaus are bogus attempts to have accurate information removed under false pretenses. This >50% statistic has remained constant for decades. Even during my time at Equifax, in the early 1990s, the percentage of disputes we received from credit repair organizations, relative to the whole, was over half. This is one of the reasons lenders/furnishers request a variety of information from those alleging they've been the victims of fraud. The more information a consumer is willing to provide, the more comfort it provides to lenders that their claims are authentic rather than aggressive attempts at avoiding their financial obligations." (Ulzheimer Decl. Ex. G). |
| 46. The "correct information" in this context is an identity-theft affidavit or a police report.<br><br>Westlake 30(b)(6) Dep. at 280:11–15 (Marchiando Decl. Ex. 1) Cruz Dep. at 73:17–74:1 (Marchiando Decl. Ex. 38) | **Undisputed.**<br>Additionally, Westlake, upon the receipt of certain concrete and verifiable documentary proof will escalate disputes to the legal department for identity theft investigation.<br><br>**Mata Dep.** 78:20-22<br>**Campos Dep.** 37:16-25; 38:21-25; 61:4-8; 61:24-25; 77:23-25; 85:6-7;<br>**Cruz. Dep:** 73:10-23; 75:13-16; 54:1-5<br>**Westlake 30(b)(6) Dep.** 271:21-25; 272:1-6; 280:11-20; 211:13-21; 246:15-17; (Berardino Decl. Ex. W)<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7; |

25

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | **Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW).<br><br>Additionally, "According to the credit industry's trade association, over half of the disputes received by the credit bureaus are bogus attempts to have accurate information removed under false pretenses. This >50% statistic has remained constant for decades. Even during my time at Equifax, in the early 1990s, the percentage of disputes we received from credit repair organizations, relative to the whole, was over half. This is one of the reasons lenders/furnishers request a variety of information from those alleging they've been the victims of fraud. The more information a consumer is willing to provide, the more comfort it provides to lenders that their claims are authentic rather than aggressive attempts at avoiding their financial obligations." (Ulzheimer Decl. Ex. G). |
| 47. Nothing the consumer may say in his or her dispute letter makes any difference.<br><br>Mata Dep. at 86:21–87:14 (Marchiando Decl. Ex. 27) Cruz Dep. at 73:17–74:1 (Marchiando Decl. Ex. 38) Campos Dep. at 51:17–24 (Marchiando Decl. Ex. 36) | **Disputed.**<br><br>If a consumer letter includes attached concrete and verifiable documentary proof, Westlake, will escalate disputes to the legal department for identity theft investigation.<br><br>**Mata Dep.** 78:20-22<br>**Campos Dep.** 37:16-25; 38:21-25; 61:4-8; 61:24-25; 77:23-25; 85:6-7;<br>**Cruz. Dep:** 73:10-23; 75:13-16; 54:1-5<br>**Westlake 30(b)(6) Dep.** 271:21-25; 272:1-6; 280:11-20; 211:13-21; 246:15-17; (Berardino Decl. Ex. W)<br><br>Westlake's legal department investigates identity theft disputes. |

26

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW).<br><br>Additionally, it is not unreasonable to require concrete documentation from a consumer. "According to the credit industry's trade association, over half of the disputes received by the credit bureaus are bogus attempts to have accurate information removed under false pretenses. This >50% statistic has remained constant for decades. Even during my time at Equifax, in the early 1990s, the percentage of disputes we received from credit repair or-ganizations, relative to the whole, was over half. This is one of the reasons lenders/furnishers request a variety of information from those alleging they've been the victims of fraud. The more information a consumer is willing to provide, the more comfort it provides to lenders that their claims are authentic rather than aggressive attempts at avoiding their financial obligations." (Ulzheimer Decl. Ex. G). |
| 48. Once that escalation occurs, the FCRA dispute-investigation department plays no role.<br><br>Westlake 30(b)(6) Dep. II at 70:8–71:5 (Marchiando Decl. Ex. 37) Westlake Rule 30(b)(6) Dep. at 278:20–279:20 (Marchiando Decl. Ex. 1) | **Disputed.**<br><br>Plaintiff failed to address Westlake's legal department. Westlake's legal department conducts a thorough investigation of identity theft disputes once escalated after the proper documentation is provided.<br>**Mata Dep.** 78:20-22<br>**Campos Dep.** 37:16-25; 38:21-25; 61:4- |

27

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | 8; 61:24-25; 77:23-25; 85:6-7;<br>**Cruz. Dep:** 73:10-23; 75:13-16; 54:1-5<br>**Westlake 30(b)(6) Dep.** 271:21-25; 272:1-6; 280:11-20; 211:13-21; 246:15-17; (Berardino Decl. Ex. W)<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 49. Even though the investigator escalates the identity-theft dispute as potentially valid, he or she still responds back to the CRAs that Westlake has verified as accurate the reporting of the account as belonging to the disputing consumer.<br><br>Westlake 30(b)(6) Dep. at 280:11–281:10<br>(Marchiando Decl. Ex. 1) Campos Dep. at 80:25–81:12 (Marchiando Decl. Ex. 36) | Objection as to relevance. The Ninth Circuit has held that "a furnisher's initial failure to comply with reporting that a debt is disputed is not privately enforceable." While this does not obliviate the furnisher of their obligation to correct the omission after investigation, the initial reporting is not actionable prior to investigation. *Gorman v. Wolpoff & Abramson, LLP.*, 584 F.3d 1147, 1163-1164 (2009).<br><br>Notwithstanding, **undisputed.** |
| 50. Once the dispute is escalated, Westlake's legal department then sends the consumer a letter, explaining that Westlake's desire to further investigate the claim of identity theft, and asking the consumer to provide certain, additional information.<br><br>Westlake 30(b)(6) Dep. at 278:20–279:20, 251:12–252:9 (Marchiando | **Undisputed.** |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Decl. Ex. 1) | |
| 51. Westlake produced a dispute-escalation letter addressed to Plaintiff, but could not verify the letter was ever sent.<br><br>Westlake 30(b)(6) Dep. at 252:6–253:25 (Marchiando Decl. Ex. 1) | **Disputed.**<br><br>Westlake mailed a letter to Plaintiff on April 13, 2020 requesting Plaintiffs' identity theft affidavit.<br><br>Westlake 30(b)(6) Dep. at 254:1-20; (Bergiman Decl. Ex. QQ). |
| 52. The dispute-escalation letter is dated April 13, 2020.<br>Westlake 30(b)(6) Dep. at 254:19–255:14<br>(Marchiando Decl. Ex. 1) | **Undisputed.** |
| 53. Westlake sends all escalated disputes to the legal department once a month.<br><br>Westlake 30(b)(6) Dep. at 255:15–18 (Marchiando Decl. Ex. 1) | **Disputed.**<br><br>Westlake's legal department investigates identity theft disputes and identity theft disputes are escalated as they arise.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 54. The escalated disputes then go into a letter-sending queue, Westlake's computer system generates the letters, and a third party prints and mails them.<br><br>Westlake 30(b)(6) Dep. at 255:19–256:5 (Marchiando Decl. Ex. 1) | **Disputed.**<br><br>Westlake's legal department investigates identity theft disputes and identity theft disputes are escalated as they arise.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 55. By the time Westlake created the escalated-dispute letter for Plaintiff, (1) Plaintiff has spoken to Westlake twice on the telephone, both of which calls Westlake recorded, and told Westlake the account was the result of identity theft; (2) the Huntington Beach Police Department has called Westlake, which again was recorded, and told Westlake to mark the account as fraudulent; (3) Plaintiff has disputed at least twice through the CRAs stating that the account was the result of identity theft; and (4) Westlake repeatedly verified the disputed account as accurately attributed to Plaintiff and continued to report it as such to the CRAs.<br><br>Westlake 30(b)(6) Dep. at 256:12–257:9 (Marchiando Decl. Ex. 1) | Objection as to the vague and ambiguous phrasing of "created."<br><br>**Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake, while giving weight to completed police reports does not place much weight on calls from individuals claiming to be the police because it receives hundreds, if not thousands, of call from claiming to be someone they are not. (Bergiman Decl. Ex. OO).<br><br>Notably, the purported detective here did not even identify themselves, and claimed the account was fraudulent, even though to present the investigation is still ongoing pursuant to Miller. (Berardino Decl. Ex. O).<br><br>Additionally, Westlake called the cell number provided by the purported Huntington Beach Police Department detective and is not a number associated with the Huntington Beach Police Department.  (Bergiman Decl. ¶19). |
| 56. Westlake's dispute investigators cannot review prior disputes when conducting a current investigation.<br><br><br>Mata Dep. at 75:11–21, 76:4–9 (Marchiando Decl. Ex. 27) Cruz Dep. at 49:6–10 (Marchiando Decl. Ex. 38) | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake's legal department investigates identity theft disputes and are capable of reviewing prior disputes should the investigation necessitate such review. |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 57. Westlake's dispute investigators do not call or email the disputing consumer or, where applicable, the police or F.T.C.<br><br>Cruz Dep. at 71:7–23, 75:17–25, 76:2–10 (Marchiando Decl. Ex. 38) | **Dispute.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlakes' credit dispute analysts do not call or email the disputing consumer, police, or the F.T.C., however, Westlake's legal department investigates identity theft disputes and will call the consumer, police and/or F.T.C. should the investigation necessitate such contact.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 58. Dispute investigators do not review the account notes as a matter of practice, so they do not consider information they contain in conducting investigations of disputes. | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM). |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Mata Dep. at 92:1–23 (Marchiando Decl. Ex. 27) | Westlakes' credit dispute analysts review the account notes, as restated twice by Plaintiffs' counsel.<br>**Cruz Dep.** at 79:1-6; 87:25-88:1-3 (Berardino Decl. para 11, Exhibit N)<br><br>Additionally, Westlake's legal department investigates identity theft disputes and will review the account notes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 59. Dispute investigators do not obtain separate reports about the disputing consumer, like a skip-trace or LexisNexis report, or other means to verify information.<br><br>Mata Dep. at 97:15–24 (Marchiando Decl. Ex. 27) | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake's legal department investigates identity theft disputes will obtain separate reports about the disputing consumer.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (Bergiman Decl. Ex. WW). |
| 60. Dispute investigators do not use the internet to do any research relating to the dispute, such as the consumer or his or her address.<br><br>Mata Dep. at 112:12–17 (Marchiando Decl. Ex. 27) | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake's legal department investigates identity theft disputes and uses the internet to conduct their investigation.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW). |
| 61. Dispute investigators do not research the dealer from whom the contract originated.<br><br>Mata Dep. at 112:18–20 (Marchiando Decl. Ex. 27) | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake's legal department investigates identity theft disputes and research the dealer from whom the contract originated as necessary.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24) |

33

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 62. Dispute investigators do not contact anyone else at Westlake about the dispute.<br><br>Mata Dep. at 112:21–23<br><br>(Marchiando Decl. Ex. 27) Cruz Dep. at 90:5–8 (Marchiando Decl. Ex. 38) | **Disputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake's legal department investigates identity theft disputes and contact any individual as necessary.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). |
| 63. Westlake's dispute investigators followed Westlake's procedures for processing Plaintiff's disputes, and no mistakes were made regarding the investigation of Plaintiff's disputes.<br><br>Westlake 30(b)(6) Dep. II at 26:16–27:9 (Marchiando Decl. Ex. 37) | **Undisputed.**<br><br>First, Plaintiff failed to furnish Westlake with an Identity Theft Affidavit, as requested from Plaintiff numerous times. (Bergiman Decl. ¶18, Ex. LL and MM).<br><br>Westlake has a policy relating to identity theft disputes, wherein after receipt of the requested documents, disputes are escalated to Westlake's legal department whom handles identity theft disputes. Because Miller refused to provide Westlake with the requested documentation, such escalation did not occur. (Bergiman Decl. Ex. XX). |
| 64. The Consumer Data Industry Association's ("CDIA") Credit Reporting Resource Guide advises that Compliance Condition Codes "[a]llows the reporting of a condition that is required for legal compliance." | Objection as to relevance, lack of foundation, hearsay. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to consumer credit reporting agencies |

34

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| bates no. WFS000391 (Marchiando Decl. Ex. 39) | (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1).<br><br>**Disputed.**<br><br>Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G). |
| 65. The Guide goes on to note that "[t]his condition may refer to accounts closed at consumer's request, accounts in dispute under the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act<br><br>(FDCPA) or the Fair Credit Billing Act (FCBA)."<br><br>bates no. WFS000391 (Marchiando Decl. Ex. 39) | Objection as to relevance, lack of foundation, hearsay. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to consumer credit reporting agencies (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1).<br><br>**Disputed.**<br><br>Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G). |
| 66. The Guide identifies and describes multiple compliance condition codes.<br><br>bates nos. WFS000458–59 (italics in original) (Marchiando Decl. Ex. 39) | Objection as to relevance, lack of foundation, hearsay. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to consumer credit reporting agencies |

35

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1).<br><br>**Disputed.**<br><br>Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G). |
| 67. Westlake never uses compliance condition codes when communicating dispute results to the CRAs.<br><br>Mata Dep. at 74:3–75:1 (Marchiando Decl. Ex. 27) | Objection as to relevance. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to consumer credit reporting agencies (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1). Additionally, Westlake is not required to use compliance condition codes when communicating dispute results to the CRAs.<br><br>**Disputed.**<br><br>Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G). |
| 68. Westlake does not know that compliance condition codes are.<br><br>Westlake 30(b)(6) Dep. II at 13:20– | Objection as to relevance. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| 14:10 (Marchiando Decl. Ex. 37) | consumer credit reporting agencies (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1). Additionally, Westlake is not required to use compliance condition codes when communicating dispute results to the CRAs.<br><br>**Disputed.**<br><br>Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G).<br><br>Additionally, Westlake's 30(b)(6) witness oversees the individuals who work with the Sonnet Application daily, and did not work on Miller's application himself, and was therefore unclear as to what was being referenced by Plaintiff's counsel.<br>(Bergiman Decl. ¶34). |
| 69. Westlake used no compliance condition codes in responding to the CRAs for Plaintiff's disputes.<br><br>bates nos. WFS000121–24 (Marchiando Decl. Ex. 28) WFS000125–28 (Marchiando Decl. Ex. 29) WFS000146–49 (Marchiando Decl. Ex. 30) WFS000150–53 (Marchiando Decl. Ex. 31) WFS000170–73 (Marchiando Decl. Ex. 32) WFS000174–77 (Marchiando Decl. Ex. 34) WFS000178–80 (Marchiando Decl. Ex. 35) | Objection as to relevance. Under the Fair Credit Reporting Act (FCRA), consumers have no private right of action against furnishers of information for reporting inaccurate information to consumer credit reporting agencies (CRAs) regarding consumer accounts; instead, the only private right of action consumers have against furnishers is for a violation of the section of the FCRA requiring furnishers to conduct an investigation following notice of a dispute. 15 U.S.C.A. §§ 1681s-2(b), 1681s-2(c)(1). Additionally, Westlake is not required to use compliance condition codes when communicating dispute results to the CRAs.<br><br>**Disputed.** |

37

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | Plaintiff's proffered evidence is misleading, in that the CRRG standards are "intended for regular monthly updates to previously-reported accounts" and are not the instructions on how to respond to consumer disputes. (Ulzheimer Decl. Ex. G). |
| 70. Westlake's dispute investigators undergo online training provided by the CDIA every two years, and the training lasts four hours.<br><br>Westlake 30(b)(6) Dep. II at 27:12–19; 64:25–65:2 (Marchiando Decl. Ex. 37) | **Dispute**<br><br>The Westlake employees that Plaintiff is referring to are called "Credit Dispute Analysts," Mata Dep. at 17:8-9. (Berardino Decl. Ex. L)(Bergiman Decl. ¶20 and Ex. XX).<br><br>Westlake's legal department investigates identity theft disputes.<br>**Mata Dep.** at 107:2-7; 109:17-20; 111:13-16;<br>**Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7;<br>**Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5<br>**Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23;<br>(Bergiman Decl. ¶¶20, 22, 23, and 24)<br>(Berardino Decl. Exhibit V)<br>(Bergiman Decl. Ex. WW).<br><br>Additionally, this is not the only training provided to Westlake's credit dispute analysts. Each dispute is utilized as an opportunity for continued training. Additionally, case decisions, industry updates and webinars are deployed as needed to provide further training. (Bergiman Decl. ¶35). |
| 71. There is no other training regarding the FCRA or dispute investigation given to these individuals<br><br>Westlake 30(b)(6) Dep. II at 39:18–22 (Marchiando Decl. Ex. 37) | **Dispute**<br><br>The Westlake employees that Plaintiff is referring to are called "Credit Dispute Analysts," Mata Dep. at 17:8-9. (Berardino Decl. Ex. L)(Bergiman Decl. ¶20 and Ex. XX). |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | Additionally, Westlake's legal department investigates identity theft disputes. **Mata Dep.** at 107:2-7; 109:17-20; 111:13-16; **Campos Dep.** at 37:13-25; 38:1-13; 60:18-25; 61:1-11; 71:7-12; 85:6-7; **Cruz Dep.** at 23:8-14; 24:4-14; 25:3-24; 72:19-25; 73:1-15 & 17-25; 74:1; 75:10-16; 76:11-18; 83:21-25; 84:1-5 **Westlake 30(b)(6) Dep.** at 277:19-24; 279:4-20; 280:16-20; 228:14-23; 246:18-23; (Bergiman Decl. ¶¶20, 22, 23, and 24) (Berardino Decl. Exhibit V) (Bergiman Decl. Ex. WW). <br><br> Additionally, this is not the only training provided to Westlake's credit dispute analysts. Each dispute is utilized as an opportunity for continued training. Additionally, case decisions, industry updates and webinars are deployed as needed to provide further training. (Bergiman Decl. ¶35). |
| 72. Trainees are tested at the end of the CDIA training, and receive a pass/fail grade. <br><br> Westlake 30(b)(6) Dep. II at 40:15–41:16 (Marchiando Decl. Ex. 37) | **Undisputed.** |
| 73. If an individual fails, they continue to work at Westlake as a dispute investigator and may retake the training, and Westlake does not have a limit on the number of times an individual can fail and continue to work. <br><br> Westlake 30(b)(6) Dep. II at 43:1–44:8 (Marchiando Decl. Ex. 37) | **Undisputed.** |
| 74. Jose Mata testified that his best estimate of his pace investigating disputes is 10 per hour. <br><br> Mata Dep. at 50:19–51:10 (Marchiando | **Undisputed.** |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Decl. Ex. 27) | |
| 75. Westlake's corporate representative testified about Mr. Mata's workload as "between that time and now, he's handled probably 25,000 disputes, if not more, and he is not going to recall what specifically he did on this one account back in 2020."<br><br>Westlake 30(b)(6) Dep. at 247:11–248:2 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 76. Westlake does not know of any court decisions that are considered in drafting its dispute-investigation procedures.<br><br>Westlake 30(b)(6) Dep. II at 36:15–19 (Marchiando Decl. Ex. 37) | Objection; calls for legal conclusion.<br><br>Notwithstanding, **Disputed.**<br><br>Westlake's dispute investigation procedures are drafted by its Legal and Compliance department based on review of applicable statutes and cases. (Bergiman Decl. ¶36). |
| 77. All Westlake considers in creating its dispute-investigation procedures is the Credit Reporting Resource Guide and the FCRA.<br><br>Westlake 30(b)(6) Dep. II at 36:1–9 (Marchiando Decl. Ex. 37) | **Disputed.**<br><br>Westlake used the Credit Reporting Resources Guide as a guide and does not base its dispute investigating procedures on this guide. (Bergiman Decl. ¶37). |
| 78. Westlake has never heard of the decision *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), and does not know if that decision played any role in creating its FCRA-compliance procedures.<br><br>Westlake 30(b)(6) Dep. II at 79:3–17 (Marchiando Decl. Ex. 37) | Objection; calls for legal conclusion.<br><br>Notwithstanding, **Disputed.**<br><br>Westlake's dispute investigation procedures are drafted by its Legal and Compliance department based on review of applicable statutes and cases. (Bergiman Decl. ¶36). |
| 79. Westlake provided information about the account to the credit bureaus.<br><br>Westlake Rule 30(b)(6) Dep. at 165:15–166:16, 256:25–257:9 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 80. Westlake received Plaintiff's disputes from the credit reporting | **Undisputed.** |

40

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| Agencies ("CRAs"), in the form of ACDVs.<br><br>Westlake 30(b)(6) Dep. at 41:15–42:5, 231:11–13, 263:19–264:5 (Marchiando Decl. Ex. 1) | |
| 81. For each dispute, Westlake verified the account as belonging to Plaintiff.<br><br>Westlake 30(b)(6) Dep. at 269:13–16, 271:7–11<br>(Marchiando Decl. Ex. 1)<br>WFS000121–24<br>(Marchiando Decl. Ex. 28)<br>WFS000125–28<br>(Marchiando Decl. Ex. 29)<br>WFS000146–49 (Marchiando Decl. Ex. 30) WFS000150–53<br>(Marchiando Decl. Ex. 31)<br>WFS000170–73<br>(Marchiando Decl. Ex. 32)<br>WFS000174–77<br>(Marchiando Decl. Ex. 34)<br>WFS000178–80 (Marchiando Decl. Ex. 35) | **Undisputed.** |
| 82. Westlake's Rule 30(b)(6) witness agreed that "the idea behind identity theft is information is used to open an account that doesn't belong . . . to the fraudster."<br><br>Westlake Rule 30(b)(6) Dep. at 260:21–25 (Marchiando Decl. Ex. 1) | **Undisputed.** |
| 83. Plaintiff testified about damages attributable to Westlake, noting she "felt hopeless with them," and that Westlake harassed her in trying to have her pay on the delinquent account.<br><br>Miller Dep. at 53:23–54:12, 54:21–24 (Marchiando Decl. Ex. 5) | **Disputed.**<br><br>Whether or not Plaintiff felt she was harassed is a fact in dispute. When Miller initially called Westlake informing them that she was disputing the account, Westlake informed her that in order for Westlake to do anything on their end, she needed to send in specific documentation to support her dispute, to which Miller stated "thank you" multiple times. At one point, Miller stated "Okay. Oh my goodness. Okay. Thank you so much for your help. I appreciate |

41

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

it." (Bergiman Decl. Ex. LL).

Nine days later, after not receiving the requested documentation from Plaintiff, Westlake contacted Plaintiff to collect on the account, wherein Plaintiff was uncooperative, stating that in requesting documentation Westlake was thus allegedly blaming/faulting her. Plaintiff mentioned "I have collection for three other cars. So I know. I'm completely aware of this. This is why I had to get a lawyer…" and "I actually have to do a;; this for three other auto company, Acura, Nissa, all these companies gave have auto loans in my name. So that's why I had to get a lawyer. I have a $150,000 on auto loan, then I have to get a lawyer." (12/13/2019 Call Recording Transcript at 4:24-5:1-8; 7:12-20; 6:16-20; 10:24-11:1-6). (Bergiman Decl. Ex. MM).

| | |
|---|---|
| 84. Plaintiff also explained the emotional distress this conduct caused.<br><br>Miller Dep. at 54:13–16 (Marchiando Decl. Ex. 5) | **Disputed.**<br><br>There is a dispute as to what the alleged emotional distress consisted of, whether the alleged emotional distress was caused by Westlake or one of the five other entities that Plaintiff sued stemming from the alleged identity theft, and whether Plaintiffs' emotional distress stemming from the identity theft has been redressed through settlements with four other entities.<br><br>Miller filed a complaint against Experian, Equifax, and TransUnion on May 19, 2020 which settled on or about November 18, 2020, alleging the following:<br><br>   a. Paragraph 61 alleges damages including, "mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."<br><br>   b. Paragraph 103 alleges "stress |

42

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

c. Paragraph 120 alleges "stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

d. Paragraph 101 alleges that TransUnion did not conduct its own independent investigation, evidenced by TransUnion never calling, emailing, or contacting Plaintiff to discuss her disputes.

(*See* Def.'s Req. for J. Notice ("RFJN" Ex. A).

Miller filed a complaint against State Farm Bank on February 5, 2021 which settled on or about January 12, 2022, alleging the following:

a. Paragraph 53 alleges damages including, "mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."

b. Paragraph 63 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

c. Paragraph 82 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

43

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

(See RFJN Ex. C).

Miller filed a complaint against Nissan Motor Acceptance on April 15, 2021 which settled on or about March 20, 2022, alleging the following:

a. Paragraph 51 alleges damages including, "mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."

b. Paragraph 61 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

c. Paragraph 79 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

(See RFJN Ex. B).

Miller had been seeing a psychiatrist for 15 years, prior to any events that give rise to this action, for depression and anxiety.
Miller Dep. 135:4-136:1-25; (Berardino Decl. Ex. X)

Miller had a preexisting anxiety and depression, testifying that her anxiety, prior to the credit issues, would be triggered by her job and simply by "just life in general"
Miller Dep. 143:5-11 (Berardino Decl. Ex. Y)

During all relevant time periods herein,

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | Miller was abusing her prescription medications (Effexor, Wellbutrin, and Diazapam) by taking more than directed by her psychiatrist.<br>Miller Dep. 143:17-21; 144:2-12<br>(Berardino Decl. Ex. Z) |
| 85. Westlake also repeatedly called Plaintiff, including at work, despite her instructions to stop, causing annoyance in addition to the emotional distress.<br><br>Miller Dep. at 130:13–131:14<br>(Marchiando Decl. Ex. 5) | **Disputed.**<br><br>Westlake did not repeatedly call Plaintiff. Plaintiff also never instructed Westlake to stop calling her or requested she not be contacted at work.<br><br>Additionally, in Plaintiffs' suit seeking damages against Experian and TransUnion, Plaintiff claimed TransUnion did not conduct its' own independent investigation, evidenced by TransUnion never calling, emailing, or contacting Plaintiff to discuss her disputes. (See RFJN, Ex. A). Plaintiff now claims that being contacted by Westlake is one of the reasons she is seeking damages. It is clear that Plaintiff will seek damages for either being contacted, or not being contacted at all.<br><br>As per the emotional distress statement, Defendant reiterates the following:<br><br>There is a dispute as to what the alleged emotional distress consisted of, whether the alleged emotional distress was caused by Westlake or any of the five other entities that Plaintiff sued stemming from the alleged identity theft, and whether Plaintiffs' emotional distress stemming from the identity theft has been redressed through settlements with four other entities.<br><br>Miller filed a complaint against Experian and TransUnion on May 19, 2020 which settled on or about November 18, 2020, alleging the following:<br>   e. Paragraph 61 alleges damages<br>     including, "mental anguish, stress, |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."

f. Paragraph 103 alleges "stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

g. Paragraph 120 alleges "stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

h. Paragraph 101 alleges that TransUnion did not conduct its own independent investigation, evidenced by TransUnion never calling, emailing, or contacting Plaintiff to discuss her disputes. (See RFJN Ex. A).

Miller filed a complaint against State Farm Bank on February 5, 2021 which settled on or about January 12, 2022, alleging the following:

d. Paragraph 53 alleges damages including, "mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."

e. Paragraph 63 alleges "damage to reputation, embarrassment, humiliation, and other mental and

46

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

emotional distress."

 f. Paragraph 82 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

(See RFJN Ex. C).

Miller filed a complaint against Nissan Motor Acceptance on April 15, 2021 which settled on or about March 20, 2022, alleging the following:

 d. Paragraph 51 alleges damages including, "mental anguish, stress, aggravation, and other related impairments to the enjoyment of life; stress associated with hundreds of hours attempting to resolve this matter."

 e. Paragraph 61 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

 f. Paragraph 79 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

(See RFJN Ex. B).

Miller had been seeing a psychiatrist for 15 years, prior to any events that give rise to this action, for depression and anxiety.

Miller Dep. 135:4-136:1-25; (Berardino Decl. Ex. X)

Miller had a preexisting anxiety and depression, testifying that her anxiety, prior to the credit issues, would be triggered by her job and "just life in

47

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | general"<br>Miller Dep. 143:5-11<br>(Berardino Decl. Ex. Y)<br><br>During all relevant time periods, Miller was abusing her prescription medications (Effexor, Wellbutrin, and Diazapam) by taking more than directed by her psychiatrist.<br>Miller Dep. 143:17-21; 144:2-12<br>(Berardino Decl. Ex. Z) |
| 86. The derogatory reporting embarrassed Plaintiff because she has always had "amazing credit," yet Westlake continued its inaccurate reporting in the face of her multiple, detailed disputes.<br><br>Miller Dep. at 131:20–132:11<br>(Marchiando Decl. Ex. 5) | Objection as to relevance. The Ninth Circuit has held that "a furnisher's initial failure to comply with reporting that a debt is disputed is not privately enforceable."   While this does not obliviate the furnisher of their obligation to correct the omission after investigation, the initial reporting is not actionable prior to investigation. *Gorman v. Wolpoff & Abramson, LLP.*, 584 F.3d 1147, 1163-1164 (2009).<br><br>Notwithstanding, **dispute.**<br><br>Plaintiff alleged the presence of the Westlake auto loan appearing on her credit reports caused her credit scores to be significantly lower.  This is inaccurate. In fact, not only did the subject loan not cause Plaintiff's credit scores to be "significantly" lower, it did not cause her credit scores to be lower at all.  "In addition to the balance of the subject loan being the lowest of the 3-4 allegedly fraudulent loans, the date two of these unrelated loans was opened was the same or one month prior to the date opened of the Westlake account. For these reasons, the Westlake account did not have a measurable impact on Plaintiff's FICO scores."<br> (Ulzheimer Decl. Ex. G). |

48

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

Miller claims she was embarrassed by Westlakes' conduct specifically, but only Miller's mother and husband knew what was going on and neither of them believed she was, for whatever reason, not paying her debts.

Miller Dep. 131:20-132:1-20

(Berardino Decl. Ex. AA)

There is a dispute as to what the alleged embarrassment consisted of, whether the alleged embarrassment was caused by Westlake or one of the several other entities that Plaintiff sued stemming from the alleged identity theft, and whether Plaintiffs' embarrassment stemming from the identity theft has been redressed through settlements with at least four other entities.

Miller filed a complaint against Experian and TransUnion on May 19, 2020 which settled on or about November 18, 2020, alleging the following:

i. Paragraph 103 alleges "stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

j. Paragraph 120 alleges "stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials"

(See RFJN Ex. A).

Miller filed a complaint against State Farm Bank on February 5, 2021 which settled on or about January 12, 2022, alleging the following:

g. Paragraph 63 alleges "damage to

49

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

reputation, embarrassment, humiliation, and other mental and emotional distress."

h.  Paragraph 82 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

(See RFJN Ex. C).

Miller filed a complaint against Nissan Motor Acceptance on April 15, 2021 which settled on or about March 20, 2022, alleging the following:

g.  Paragraph 61 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

h.  Paragraph 79 alleges "damage to reputation, embarrassment, humiliation, and other mental and emotional distress."

(See RFJN Ex. B).

| | |
|---|---|
| 87. Aspects of Plaintiff's damages include lost credit capacity, reduced credit limits, time lost due to disputing with Westlake, and anxiety when applying for credit.<br><br>Miller Dep. at 133:3–134:10, 139:2–16, 139:18–140:5, 140:15–25 (Marchiando Decl. Ex. 5) | Objection; relevance.  Miller has not disclosed how much compensation she has received from the five other parties that she sued, stemming from alleged identity theft.  (RFJN Ex. A, B, C, D, E, and F).  Thus, Miller has likely been fully compensated for her singular damages claim.<br><br>**Dispute.**<br><br>Plaintiff alleged the presence of the Westlake auto loan appearing on her credit reports caused her credit scores to be significantly lower.  This is inaccurate. In fact, not only did the loan not cause Plaintiff's credit scores to be "significantly" lower, it did not cause her credit scores to be lower at all.  "In |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | addition to the balance of the subject loan being the lowest of the 3-4 allegedly fraudulent loans, the date two of these unrelated loans was opened was the same or one month prior to the date opened of the Westlake account. For these reasons, the Westlake account did not have a measurable impact on Plaintiff's FICO scores." (Ulzheimer Decl. Ex. G).<br><br>Miller couldn't recall any actual payment of increased interest on anything as a result of the credit issues. Miller Dep. 139:2-10 (Berardino Decl. Ex. BB)<br><br>Miller cannot distinguish how many of the estimated 10 hours she spent straightening her credit issues, are attributable to Westlake. Miller: 139:17-140:1-9 (Berardino Decl. Ex. CC)<br><br>When asked whether or not the decrease in Millers' credit limits and denial of credit by her credit union pertained to Westlake's reporting as opposed to the other two automotive transactions or the Wells Fargo transaction, Miller stated they all affected her credit, but Miller conceded that the Westlake loan is the smallest of the three. Miller Dep. 37:11-20. (Berardino Decl. Ex. DD)<br><br>Miller had been seeing a psychiatrist for 15 years, prior to any events that give rise to this action, for depression and anxiety. Miller Dep. 135:4-136:1-25; (Berardino |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| | Decl. Ex. X)<br><br>Miller had a preexisting anxiety and depression, testifying that her anxiety, prior to the credit issues, would be triggered by her job and simply by "just life in general"<br>Miller Dep. 143:5-11 (Berardino Decl. Ex. Y)<br><br>During all relevant time periods herein, Miller was abusing her prescription medications (Effexor, Wellbutrin, and Diazapam) by taking more than directed by her psychiatrist.<br>Miller Dep. 143:17-21; 144:2-12 (Berardino Decl. Ex. Z)<br><br>There is a dispute as to whether Plaintiff has already been made whole as a result of the events proceeding her identity theft through her settlements with at least four other entities.<br>(RFJN Exs. D, E, and F). |
| 88. Westlake instructed the CRAs to cease the reporting of the account two weeks after Plaintiff filed this lawsuit.<br><br>bates no. WFS000214 (Marchiando Decl. Ex. 40) | Objection; Plaintiff's purported "fact" refers to a subsequent remedial measure and is thus inadmissible as evidence of liability. FRE 407 |
| 89. Plaintiff's expert, Evan Hendricks, discusses specific details about Westlake's investigation process, the information Westlake had since the inception of the account, and the information it later learned and Plaintiff presented in her disputes, and how that impacted Westlake's investigations of Plaintiff's disputes.<br><br>Hendricks Expert Report at 1–3 | Objection; relevance, lack of foundation, hearsay. Defendant objects to the expert report of Evan Hendricks in support of Plaintiff's motion. . FED. RULES CIV. PROC. RULE 56(e), 28 U.S.C.A.  An unsworn expert report is inadmissible to support summary judgment. Plaintiff failed to include with her expert report a declaration swearing under penalty of perjury. |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

| | |
|---|---|
| (Marchiando Decl. Ex. 41) | "'[It] is well established, that an unsworn expert report is inadmissible'" under Rule 56(e) to support or oppose summary judgment. *AFMS LLC v. United Parcel Service Co.*, 105 F.Supp.3d 1061 (C.D.Cal.2015) (citing *Shuffle Master, Inc. v. MP Games LLC*, 553 F.Supp.2d 1202, 1210 (D.Nev.2008) (citing cases); see *Harris v. Extendicare Homes, Inc.*, 829 F.Supp.2d 1023, 1027 (W.D.Wash.2011) (striking expert reports because they were attached to a declaration of counsel, who "is not competent to testify about the matters therein," and were unsworn).<br><br>Notwithstanding, **undisputed.** |
| 90. Mr. Hendricks opines about Westlake's process of escalating identity theft disputes and where it falls within industry practices.<br><br>Hendricks Expert Report at 3 (Marchiando Decl. Ex. 41) | Objection; relevance, lack of foundation, hearsay. Defendant objects to the expert report of Evan Hendricks in support of Plaintiff's motion. FED. RULES CIV. PROC. RULE 56(e), 28 U.S.C.A. An unsworn expert report is inadmissible to support summary judgment. Plaintiff failed to include with her expert report a declaration swearing under penalty of perjury.<br><br>"'[It] is well established, that an unsworn expert report is inadmissible'" under Rule 56(e) to support or oppose summary judgment. *AFMS LLC v. United Parcel Service Co.*, 105 F.Supp.3d 1061 (C.D.Cal.2015) (citing *Shuffle Master, Inc. v. MP Games LLC*, 553 F.Supp.2d 1202, 1210 (D.Nev.2008) (citing cases); see *Harris v. Extendicare Homes, Inc.*, 829 F.Supp.2d 1023, 1027 (W.D.Wash.2011) (striking expert reports because they were attached to a declaration of counsel, who "is not competent to testify about the matters therein," and were unsworn).<br><br>Notwithstanding, **undisputed.** |

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

Dated: October 7, 2022                    THE MOLINO FIRM, PLC


                                          By:    s/Steven R. Berardino
                                                 Steven R. Berardino, Esq.
                                                 Attorney for Defendant
                                                 WESTLAKE   SERVICES, LLC

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

## CERTIFICATE OF SERVICE

### *Melissa Miller v. Westlake Services, LLC.*
Case Number 8:21-cv-00692-JLS-KES

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.

On October 7, 2022, I served a true copy of the within **DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT** on interested parties:

[ ] By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[ ] By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following;

[ ] By emailing it via Federal Rule of Civil Procedure 5(b)(2)(D), per stipulation of parties to all parties/persons appearing on the Service List.

[X] By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct under the law of the United States of America.  Executed this 7th day of October 2022 in Los Angeles, California.

_____
Beverly Langworthy

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT

## SERVICE LIST

Craig C. Marchiando, Esq.                craig@clalegal.com
Leonard Bennett, Esq.                     lenbennett@clalegal.com
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601

Octavio Gomez, Esq.                       tav@theconsumerlawyers.com
The Consumer Lawyers PLLC
3210 W. Cypress Street
Tampa, Florida 33607

Matthew M. Loker                          matt@loker.law
Loker Law APC
1303 East Grand Ave, Suite 101
Arroyo Grande, California 93420

RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT