THE MOLINO FIRM, Professional Law Corporation
Anthony A. Molino, Esq., [SBN 156661] molino@molinolawfirm.com
Steven R. Berardino, Esq., [SBN 075820] sberardino@molinolawfirm.com
John C. Holmes, Esq. [SBN 120578] jholmes@molinolawfirm.com
Taylor M. McGrew, Esq. [SBN 343886) tmcgrew@molinolawfirm.com
4751 Wilshire Boulevard, Suite 207
Los Angeles, California 90010-3838
Telephone (323) 692-4010 Facsimile (323) 692-4015

Attorneys for Defendant, WESTLAKE SERVICES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA MILLER<br><br>Plaintiff,<br><br>vs.<br><br>WESTLAKE SERVICES, LLC.<br><br>Defendant. | Case No. 8:21-cv-00692-JLS-KES<br><br>DEFENDANT'S REQUEST FOR JUDICIAL NOTICE<br><br>[Filed Concurrently with Opposition to Motion for Partial Summary Judgment; Response to Plaintiff's Separate Statement of Undisputed Material Facts; Evidence in Support of Opposition; Objection to Expert Witness Report of Evan Hendricks; Declarations of Tracy Bergiman, Steven Berardino; John Ulzheimer]<br><br>Date: Oct. 28, 2022<br>Time:10:30 a.m.<br>Location: Courtroom 8A<br>Judge: Honorable Josephine Staton |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEY OF RECORD:

Defendants WESTLAKE SERVICES, hereby request that this honorable court take judicial notice, pursuant to Federal Rules of Evidence Rule 201, of the following:

1

1. Exhibit "A" – Complaint for FCRA and CCRAA Violations in the related case, Melissa Miller v. Experian Information Solutions, Inc.; TransUnion LLC; and Equifax Information Services LLC, filed May 19, 2020 in this Court.  (FRE, § 201(b)(1) & (2), (c)(2)).

2. Exhibit "B" – Plaintiff's Complaint for FCRA and CCRAA Violations in the related case, Melissa Miller v. Nissan Motor Acceptance Corporation, filed April 15, 2021 in this Court.  (FRE, § 201(b)(1) & (2), (c)(2)).

3. Exhibit "C" – Plaintiff's Complaint for FCRA and CCRAA Violations in the related case, Melissa Miller v. State Farm Bank, F.S.B., filed February 5, 2021 in this Court.  (FRE, § 201(b)(1) & (2), (c)(2)).

4. Exhibit "D" – This Courts' docket as of September 20, 2021 in the related case, Melissa Miller v. Experian Information Solutions, Inc.; TransUnion LLC; and Equifax Information Services LLC, reflecting a Notice of Settlement as to Equifax Information Services, LLC and Trans Union, LLC filed by plaintiff Melissa Miller (entered 11/18/2020).  (FRE, § 201(b)(1) & (2), (c)(2)).

5. Exhibit "E" – This Courts' docket as of June 3, 2022 in the related case, Melissa Miller v. Nissan Motor Acceptance Corporation, reflecting a Mediation Report filed by Mediator (ADR Panel) Frank Kaplan: A mediation did not take place because the case settled before the session occurred. (Entered: 03/20/2022).  (FRE, § 201(b)(1) & (2), (c)(2)).

6. Exhibit "F" – This Courts' docket as of January 21, 2022 in the related case, Melissa Miller v. State Farm Bank, F.S.B., reflecting a Stipulation to Dismiss Case pursuant to Settled-Dismissal with Prejudice filed by Plaintiff Melissa Miller. (Entered: 01/12/2022). (FRE, § 201(b)(1) & (2), (c)(2)).

Respectfully submitted.

DATED: October 7, 2022                    THE MOLINO FIRM, PLC


                              By:   s/Steven R. Berardino
                                    Steven R. Berardino, Esq.
                                    Attorney for Defendant
                                    WESTLAKE  SERVICES, LLC

3

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT A

Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Southern Division**

| | |
|---|---|
| **MELISSA MILLER,** | ) Case No. |
| **Plaintiff,** | ) |
| v. | ) **COMPLAINT FOR FCRA AND** |
| | ) **CCRAA VIOLATIONS** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and EQUIFAX INFORMATION SERVICES LLC,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Defendants.** | ) |

COMES NOW the Plaintiff, MELISSA MILLER, by and through the undersigned Counsel, and sues Defendants, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and EQUIFAX INFORMATION SERVICES LLC (collectively "Defendants"). Plaintiff respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.1–1785.36 ("CCRAA").

**PRELIMINARY STATEMENT**

1. This is an action for actual damages, punitive damages, costs, and attorneys' fees brought pursuant to the FCRA and CCRAA.

2. Equifax, Experian, and TransUnion comprise the three major consumer reporting agencies ("CRAs") in the United States.

3. CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities that furnisher them information, like non-parties Nissan Motor Acceptance Corporation ("NMAC"), State Farm Bank, and Westlake Financial Services Inc., particularly where a consumer makes a dispute about information the CRAs are reporting.

4. When a consumer like Plaintiff disputes information through the CRAs, those disputes are electronically transmitted to the parties furnishing the information, in this case the Furnishers are NMAC, State Farm, and Westlake.

5. The FCRA demands that each CRA conduct a reasonable investigation of the consumer's dispute(s) and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6. The Consumer Financial Protection Bureau has noted that "experience indicates that [CRAs] lack incentives and under-invest in accuracy." CONSUMER FIN. PROT. BUREAU, *Supervisory Highlights Consumer Reporting Special Edition* 21 (Issue 14, March 2, 2017).[1]

7. Statutes like the FCRA and CCRAA therefore provide consumers with the only mechanism by which they can force CRAs and furnishers to report accurate information about them.

### JURISDICTION AND VENUE

8. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

### PARTIES

9. Plaintiff is a natural person and resident of Orange County, California. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

---

[1] *Available at* https://files.consumerfinance.gov/f/documents/201703_cfpb_Supervisory-Highlights-Consumer-Reporting-Special-Edition.pdf (last visited May 6, 2020).

COMPLAINT AND DEMAND FOR JURY TRIAL

10. Experian conducts business in the State of California through its registered agent, CT Corporation System located at 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

11. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is also a "consumer credit reporting agency" as defined in CAL. CIV. CODE ANN. § 1785.3(d). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d) and CAL. CIV. CODE ANN. § 1785.3(d), to third parties.

12. Experian disburses such reports to third parties under contract for monetary compensation.

13. TransUnion conducts business in the State of California through its registered agent, The Prentice-Hall Corporation System, Inc., located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

14. TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is also a "consumer credit reporting agency" as defined in CAL. CIV. CODE ANN. § 1785.3(d). TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d) and CAL. CIV. CODE ANN. § 1785.3(d), to third parties.

15. TransUnion disburses such reports to third parties under contract for monetary compensation.

16. Equifax conducts business in the State of California through its registered agent, The Prentice-Hall Corporation System, Inc., located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

17. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is also a "consumer credit reporting agency" as defined in CAL. CIV. CODE ANN.

§ 1785.3(d). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d) and CAL. CIV. CODE ANN. § 1785.3(d), to third parties.

18.    Equifax disburses such reports to third parties under contract for monetary compensation.

### FACTUAL ALLEGATIONS

19.    Plaintiff is a natural person who is alleged to owe a debt to NMAC, State Farm Bank, and Westlake while she was a resident of California.

20.    On or around October 22, 2019, Plaintiff received a letter from Synchrony Bank stating her credit line for her TJX MasterCard was lowered because of delinquent accounts in her credit reports.

21.    Surprised by this letter and reference to supposedly delinquent accounts where she has none, Plaintiff set about investigating the claims by Synchrony Bank.

22.    On or around December 18, 2019, Plaintiff obtained her Experian credit report, report number 1313-0443-96. On or around December 19, 2019, Plaintiff obtained her report from TransUnion, report number BAL45-002 00663. On January 19, 2020, Plaintiff obtained her report from Equifax, with confirmation number 0019000253. All three CRAs' reports about Plaintiff showed three auto loan accounts and one Wells Fargo credit card account, none of which she was previously aware or authorized to be opened in her name.

23.    The first fraudulent auto loan account which appeared on Plaintiff's Experian, Equifax and TransUnion reports was a NMAC account with a balance of $35,016. That account was apparently opened in June of 2019 in the State of Texas, a state that Plaintiff had never been-to or lived-in. Plaintiff did not authorize her information to be used for an application for this account nor did she purchase a vehicle from NMAC.

COMPLAINT AND DEMAND FOR JURY TRIAL

24. The second fraudulent auto loan account which appeared on Plaintiff's Experian, Equifax and TransUnion reports was a State Farm Bank account for $27,596, opened in July of 2019 in the State of Illinois. Plaintiff again did not authorize her information to be used by State Farm Bank or anyone else on this date, nor did she purchase a vehicle. Plaintiff has never visited or lived-in the State of Illinois.

25. The third fraudulent account for an auto loan which appeared on Plaintiff's Experian, Equifax and TransUnion reports was with Westlake Financial Services in the amount of $13,749, opened in July of 2019. This account was opened in Los Angeles, California. Plaintiff did not authorize her information to be used for an application with Westlake nor did she purchase a vehicle.

26. Plaintiff never gave NMAC, State Farm, Westlake or anyone authorization to use her information for any of the above loans that Experian, Equifax and TransUnion were reporting on her credit reports. Plaintiff did not purchase any of these vehicles, nor otherwise engage in any transactions with NMAC, State Farm, or Westlake relating to the accounts they each attributed to her.

27. A fraudulent credit card account also appeared on Plaintiff's Experian, Equifax and TransUnion credit reports. That account, with Wells Fargo for $3,500, was opened in August of 2017, and was numbered 446542035725XXXX. Plaintiff has never had any business or accounts with Wells Fargo.

28. Plaintiff also identified numerous other errors within her Experian and TransUnion credit reports, including fifty-two inquiries—instances where a company accessed her credit reports—that were impermissible under the FCRA.

29. Plaintiff's credit limits were decreased by her actual creditors, and she began getting denied new credit due to the inaccurate reporting on her credit report by Defendants.

30. On January 22, 2020, Plaintiff disputed in writing to Experian, Equifax, and TransUnion the three auto loan accounts, the Wells Fargo account, the fifty-two

COMPLAINT AND DEMAND FOR JURY TRIAL

impermissible inquiries, as well as the erroneous reporting of her name, address, and phone number(s). Within the disputes, Plaintiff included a copy of her California Driver's License, as well as her Social Security Card, to prove both her residence and her social security information. She clearly detailed the fraudulent accounts from NMAC, State Farm Bank, Westlake, and Wells Fargo, as well as noted the impermissible inquiries on her credit reports.

31. Within the dispute letters to Experian, Equifax and TransUnion, Plaintiff included the numbers of three police reports she had filed with the Huntington Beach Police Department (2018-601027, T18001230, and 2020-00001696). Plaintiff also included the number of an identity fraud report number that she filed with the Federal Trade Commission (109743860).

32. Despite the CRA Defendants being informed that Plaintiff had never visited or lived in two of the states where the vehicles were purchased and never gave authorization for any of the accounts to be opened, the CRA Defendants failed to rectify the fraudulent information and inexplicably verified the information as "accurate."

33. While the disputes were pending with Experian, Equifax and TransUnion, on February 13, 2020, Plaintiff received a packet from State Farm Bank which included the original application to purchase the vehicle (reference number 10000001036791) and an affidavit of forgery. Plaintiff responded on March 2, 2020 with a notarized affidavit indicating the signatures on the promissory notes and security agreement were indeed forged and not hers.

34. On February 19, 2020, Equifax responded to Plaintiff's dispute with confirmation number 0028026973. In its response, Equifax completely ignored the disputes about the incorrect names, addresses, phone numbers, or impermissible inquiries.

35. Equifax responded to each auto loan account by stating "[w]e verified that this account belongs to you."

COMPLAINT AND DEMAND FOR JURY TRIAL

6

36. Based apparently on these supposed verifications, Equifax continued to report the fraudulent accounts after the disputes from Plaintiff.

37. On February 22, 2020, TransUnion responded to Plaintiff's dispute with report number BNWHL-003 01632. TransUnion deleted the alleged Wells Fargo account from Plaintiff's report.

38. Despite having knowledge of similar fraud occurring with the auto loan accounts, TransUnion responded to Plaintiff's disputes that each account was "[v]erified as Accurate." TransUnion continued to report the fraudulent accounts after the dispute from Plaintiff.

39. On February 20, 2020, Experian responded to Plaintiff's dispute with report number 1585-0248-64. Experian deleted the alleged Wells Fargo account from Plaintiff's report.

40. Despite having knowledge of similar fraud occurring with the auto loan accounts, Experian did not delete them. Instead, Experian responded to Plaintiff's disputes regarding the State Farm Bank account by indicating "Outcome: Remains," the Westlake account by indicating "Outcome: Updated" and to the NMAC account by indicating "Outcome: Updated."

41. Based on these apparent outcomes of its investigations, Experian continued to report the fraudulent accounts after the disputes from Plaintiff.

42. Discovery will confirm that Experian, Equifax, and TransUnion sent Plaintiff's disputes to NMAC, State Farm Bank, and Westlake, all of whom responded— incorrectly—as though the debts were truly Plaintiff's.

43. Discovery will likewise show that rather than doing any sort of investigation of their own, Experian, Equifax, and TransUnion chose to simply parrot the verifications from the Furnishers and continued the negative fraudulent reporting in Plaintiff's reports.

44. Experian, Equifax, and TransUnion received more-than enough information to merit more than simply relying on what the Furnishers told them about the accounts.

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff had detailed that she was the victim of identity theft, therefore simply verifying the above information served no purpose.

45. This is particularly true given the nature of identity theft. Of course the Furnishers' records contained at least Plaintiff's name, date of birth, and Social Security Number tied to the fraudulent accounts, as that is the type of information thieves take and use to open fraudulent accounts. The CRA Defendants are aware of this, yet they pretend that they are entitled to rely on the information furnishers provide even when they have genuine reasons—like those Plaintiff provided with her disputes—to suspect the furnishers' information may not be reliable or accurate.

46. Moreover, Experian, Equifax and TransUnion chose to recklessly, and in violation of the FCRA, ignore the detailed disputes of the impermissible inquiries, the disputed addresses, and incorrect phone numbers detailed in Plaintiff's dispute letters.

47. Plaintiff's proof to Experian, Equifax, and TransUnion of their misreporting of her full name, addresses, and phone numbers should have initiated an independent inquiry into the cause of a mixed file or identity theft. Plaintiff provided her cell phone number, email address and correct mailing address but was never contacted by Experian, Equifax, or TransUnion in the course of their investigations of her disputes.

48. Plaintiff included three police report numbers and a FTC Report number which should have demonstrated to Experian, Equifax, and TransUnion that these accounts were fraudulent or that her credit was mixed with someone else's. The production of the three police report numbers and the FTC report should have triggered an independent investigation by the CRAs.

49. Instead, the CRAs simply waited for the Furnishers to complete their investigations, and parroted-back those results to Plaintiff as their own.

50. On or about February 29, 2020, Plaintiff desperately disputed again, in writing, with Experian. She provided an almost identical copy of the first dispute letter with some brief additional information. She detailed the mistake with NMAC, State Farm

Bank, and Westlake, as well as noted the impermissible inquiries in her Experian report. Plaintiff again included three police report numbers she had filed in Huntington Beach, where she has resided for over two years. Plaintiff also included the fourth report number filed with Federal Trade Commission. Again, this dispute was a duplicative dispute of the first one she had sent out that was ignored.

51.     The February 29, 2020 dispute to Experian contained color images of her social security card, her California Driver's License, a Mercury Insurance bill with her current address and an image of Huntington Police Report verifying her demographics.  In response to her February 29, 2020 dispute, Experian sent an email to Plaintiff from infor@e.ncac.experian.com on March 11, 2020 indicating "we were unable to honor your request" based on the limited information.

52.     Experian then requested Plaintiff to submit "one copy of a government issued identification card, such a driver's license. One copy of a utility bill, bank or insurance statement." Plaintiff provided all those documents already in her dispute, but discovery will show that Experian willfully sends this generic response in an attempt to minimize the number of reinvestigations it must conduct and to deter future disputes.

53.     Experian violated 15 U.S.C. § 1681i when it refused to investigate Plaintiff's dispute.

54.     On or about March 11, 2020, Plaintiff desperately disputed again, in writing, with Equifax. She provided an almost identical copy of the first dispute letter with some brief additional information.  She again included a copy of her California Driver's License as well as her Social Security Card to prove both her residence and identity as it was being reported by Trans Union. She detailed the mistake with NMAC, State Farm Bank, and Westlake, as well as noted the erroneous inquiries in her Equifax report. Plaintiff again included three police report numbers she had filed in Huntington Beach, where she has resided for over two years. Plaintiff also included a fourth report number filed with Federal

COMPLAINT AND DEMAND FOR JURY TRIAL

9

Trade Commission. Again, this dispute was a duplicative dispute of the first one she had sent and that was ignored.

55. On April 9, 2020, Equifax responded to Plaintiff's second dispute with confirmation # 0077038885. Equifax deleted some of the erroneous names and addresses Plaintiff had been repeatedly disputing. Equifax finally agreed with Plaintiff's evidence, and responded to all three auto loan disputes as follows, "We have researched the credit account. . . . The results are: This item has been deleted from the credit file." Equifax had received the same information in Plaintiff's original dispute but failed to correct its error until April 9, 2020.

56. On or about March 11, 2020, Plaintiff desperately disputed again, in writing, with TransUnion. She provided an almost identical copy of the first dispute letter with some brief additional information. She again included a copy of her California Driver's License as well as her Social Security Card to prove both her residence and identity as it was being reported by TransUnion. She detailed the mistake with NMAC, State Farm Bank, and Westlake, as well as noted the erroneous inquiries in her TransUnion report. Plaintiff again included three police report numbers she had filed in Huntington Beach, where she has resided for over two years. Plaintiff also included a fourth report number filed with Federal Trade Commission. Again, this dispute was a duplicative dispute of the first one she had sent and that was ignored.

57. On March 19, 2020, Trans Union responded to Plaintiff's second dispute with report number BT58X-003 00057. TransUnion failed to indicate within its response which accounts were being deleted or verified. Moreover, TransUnion indicated that it had received the "identity theft block request" from Plaintiff but it "declines to block the information [she] had identified" (File # 386077645).

58. On April 14, 2020, Plaintiff received a letter from NMAC stating it had received the documentation provided regarding fraudulent purchases with her personal information and will remove the tradeline from her credit history if fraud is determined.

COMPLAINT AND DEMAND FOR JURY TRIAL

10

59.     Since the time of the purchase(s), the Furnishers should have known that Plaintiff was not the actual debtor yet continued to verify to Experian, Equifax, and TransUnion that she was the true debtor. For their part, despite Plaintiff's numerous, detailed disputes, the CRAs took no action to investigate those disputes. They instead waited to see what the Furnishers found, and regurgitated that information to Plaintiff.

60.     The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a CRA when it receives a consumer's FCRA dispute.

61.     As a result of the inaccurate credit reporting and inadequate investigation of Plaintiff's disputes, Plaintiff has suffered damages including, but not limited to:

     i.     Higher interest

     ii.     Deceased credit limits on existing credit cards;

     iii.     Denial in application for new credit card use or higher limits;

     iv.     Monies lost by attempting to fix her credit, such as communication costs, postage for disputes;

     v.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

     vi.     Stress associated with hundreds of hours attempting to resolve this matter,

62.     All conditions precedent to the filing of this action has occurred.

**CAUSES OF ACTION**

**COUNT I**
**Experian's Violations of FCRA § 1681e(b)**

63.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

64.     Plaintiff made it clear to Experian in her disputes that the accounts it attributed to her did not belong to her and she had not authorized them, included information about police and FTC reports regarding the accounts, and provided identification along with the disputes.

65.     Rather than having in place procedures to account for correcting such patent inaccuracies, discovery will show that Experian relies exclusively on furnishers for the accuracy of account information when deciding whether to report it.

66.     In fact, Experian relies on furnisher information exclusively even with it is told, as Plaintiff did, that it is reporting an account that does not belong to a consumer.

67.     All of Experian's reporting of Plaintiff's accounts was done according to Experian's established policies and procedures. Discovery will show that Experian reported Plaintiff's accounts exactly as designed, and none of the reporting was the result of mistake or error.

68.     As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damages by stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

69.     Plaintiff provided three police report numbers, an FTC report number and many details that Experian purposely ignored. The details from Plaintiff's disputes should have triggered a procedure to independently evaluate the account information before reporting it, yet Experian failed to do so.

70.     Experian's conduct, action, and inaction were willful, rendering it liable for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

71.     The Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

COMPLAINT AND DEMAND FOR JURY TRIAL

12

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### Experian's Violation of FCRA § 1681i

72. Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Plaintiff provided sufficient details that should have led Experian to identify the fraud. Experian chose to ignore the disputes by Plaintiff and instead rely on the Furnisher Defendants for account information.

73. Discovery will show that Experian's investigation into disputes is perfunctory and designed to feign compliance with the FCRA. The processes and procedures are meant to devote as little time as possible to an investigation, because investigations cost Experian money by having to pay dispute agents to conduct the investigations, and investigations earn Experian no profit.

74. Experian's resulting business approach to investigations means that it relies almost exclusively on furnishers for account information. Discovery will show that in Plaintiff's case, all Experian did was send the ACDVs of Plaintiff's disputes to the Furnisher Defendants, and then respond to Plaintiff with whatever information the Furnisher Defendants sent to Experian.

75. While Experian is duty-bound under the FCRA to conduct its own, independent investigation of Plaintiff's disputes, Experian does nothing. Such is

confirmed by the fact that Experian never called, emailed, or otherwise contacted Plaintiff to discuss her disputes.

76.     Discovery will further confirm that Experian did not contact the FTC or Huntington Beach Police Department about Plaintiff's complaints of identity theft.

77.     As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damages by stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

78.     Experian's conduct, action and inaction as willful, rendering it liable for actual damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o. Experian was made aware of the identity theft by Plaintiff providing a police report and contact information.

79.     The Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

WHEREFORE, the Plaintiff demands judgment and compensatory and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**COUNT III**
**Experian's Violations of CCRAA § 1785.16**

80.     At all times relevant to this action, Experian is subject to and must abide by the law of the State of California, including, without limitation, California Civil Code § 1785.16, regarding the information it reported about Plaintiff because she is a California resident.

81.     The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA.

82. Experian violated § 1785.16 by failing to reinvestigate information disputed by Plaintiff as clearly indicated within the dispute Experian received. Experian was provided a copy of Plaintiff's Driver's License and Social Security Card to provide proof of her identity. Plaintiff provided detailed information she had never been to two of the states where the vehicles were purchased and that she never authorized the opening of the fraudulent accounts.  Plaintiff clearly indicated the errors on the reported information on Plaintiff's credit report; however, Experian failed to acknowledge, investigate, update, or delete the erroneous accounts or inaccurate personal information reported.

83. Experian likewise failed to consider all relevant information in considering Plaintiff's dispute, as required by CCRAA § 1785.16(b). Plaintiff included three police report numbers as well as an FTC report number in her disputes to Experian, and discovery will confirm that Experian did nothing with that information in investigating Plaintiff's dispute.

84. Discovery will confirm that all Experian did was convey Plaintiff's disputes to the Furnisher Defendants, and took no action that could be considered a reasonable investigation of Plaintiff's disputes.

85. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.16(a).

86. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Experian, including punitive damages of $100 to $5,000 per willful violation.

87. Plaintiff is also entitled to injunctive relief against Experian pursuant to CAL. CIV. CODE § 1785.31(b).

88. Plaintiff is further entitled to recover her court costs and attorneys' fees pursuant to CAL. CIV. CODE § 1785.31(d).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., for

COMPLAINT AND DEMAND FOR JURY TRIAL

15

statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT IV
## TransUnion's Violations of FCRA § 1681e(b)

89.     TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

90.     Plaintiff made it clear to TransUnion in her disputes that the accounts it attributed to her did not belong to her and she had not authorized them, included information about police and FTC reports regarding the accounts, and provided identification along with the disputes.

91.     Rather than having in place procedures to account for correcting such patent inaccuracies, discovery will show that TransUnion relies exclusively on furnishers for the accuracy of account information when deciding whether to report it.

92.     In fact, TransUnion relies on furnisher information exclusively even with it is told, as Plaintiff did, that it is reporting an account that does not belong to a consumer.

93.     All of TransUnion's reporting of Plaintiff's accounts was done according to TransUnion's established policies and procedures. Discovery will show that TransUnion reported Plaintiff's accounts exactly as designed, and none of the reporting was the result of mistake or error.

94.     As a result of this conduct, action and inaction of TransUnion, the Plaintiff suffered damages by stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

95.     Plaintiff provided three police report numbers, an FTC report number and many details that TransUnion purposely ignored. The details from Plaintiff's disputes

should have triggered a procedure to independently evaluate the account information before reporting it, yet TransUnion failed to do so.

96. TransUnion's conduct, action, and inaction were willful, rendering it liable for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

97. The Plaintiff is entitled to recover costs and attorneys' fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, TRANS UNION LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT V
## TransUnion's Violations of FCRA § 1681i

98. TransUnion violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Plaintiff provided sufficient details that should have led TransUnion to identify the fraud. TransUnion chose to ignore the disputes by Plaintiff and instead rely on the Furnisher Defendants for account information.

99. Discovery will show that TransUnion's investigation into disputes is perfunctory and designed to feign compliance with the FCRA. The processes and procedures are meant to devote as little time as possible to an investigation, because investigations cost TransUnion money by having to pay dispute agents to conduct the investigations, and investigations earn TransUnion no profit.

COMPLAINT AND DEMAND FOR JURY TRIAL

100. TransUnion's resulting business approach to investigations means that it relies almost exclusively on furnishers for account information. Discovery will show that in Plaintiff's case, all TransUnion did was send the ACDVs of Plaintiff's disputes to the Furnisher Defendants, and then respond to Plaintiff with whatever information the Furnisher Defendants sent to TransUnion.

101. While TransUnion is duty-bound under the FCRA to conduct its own, independent investigation of Plaintiff's disputes, TransUnion does nothing. Such is confirmed by the fact that TransUnion never called, emailed, or otherwise contacted Plaintiff to discuss her disputes.

102. Discovery will further confirm that TransUnion did not contact the FTC or Huntington Beach Police Department about Plaintiff's complaints of identity theft.

103. As a result of this conduct, action and inaction of TransUnion, the Plaintiff suffered damages by stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

104. TransUnion's conduct, action and inaction as willful, rendering it liable for actual damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o. TransUnion was made aware of the identity theft by Plaintiff providing a police report and contact information.

105. The Plaintiff is entitled to recover costs and attorneys' fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

WHEREFORE the Plaintiff demands judgment and compensatory, statutory, and punitive damages against Defendant, TRANS UNION LLC, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT VI
## TransUnion's Violations of CCRAA § 1785.16

106. At all times relevant to this action, TransUnion is subject to and must abide by the law of the State of California, including, without limitation, California Civil Code § 1785.16, regarding the information it reported about Plaintiff because she is a California resident.

107. The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA.

108. TransUnion violated § 1785.16 by failing to reinvestigate information disputed by Plaintiff as clearly indicated within the dispute TransUnion received. TransUnion was provided a copy of Plaintiff's Driver's License and Social Security Card to provide proof of her identity. Plaintiff provided detailed information she had never been to two of the states where the vehicles were purchased and that she never authorized the opening of the fraudulent accounts. Plaintiff clearly indicated the errors on the reported information on Plaintiff's credit report; however, TransUnion failed to acknowledge, investigate, update, or delete the erroneous accounts or inaccurate personal information reported.

109. TransUnion likewise failed to consider all relevant information in considering Plaintiff's dispute, as required by CCRAA § 1785.16(b). Plaintiff included three police report numbers as well as an FTC report number in her disputes to TransUnion, and discovery will confirm that TransUnion did nothing with that information in investigating Plaintiff's dispute.

110. Discovery will confirm that all TransUnion did was convey Plaintiff's disputes to the Furnisher Defendants, and took no action that could be considered a reasonable investigation of Plaintiff's disputes.

111. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to CAL. CIV. CODE § 1785.16(a).

COMPLAINT AND DEMAND FOR JURY TRIAL

19

112. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to CAL. CIV. CODE § 1785.31(a)(2) against TransUnion, including punitive damages of $100 to $5,000 per willful violation.

113. Plaintiff is also entitled to injunctive relief against TransUnion pursuant to CAL. CIV. CODE § 1785.31(b).

114. Plaintiff is further entitled to recover her court costs and attorneys' fees pursuant to CAL. CIV. CODE § 1785.31(d).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, TRANS UNION LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT VII
## Equifax's Violations of FCRA § 1681e(b)

115. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

116. Plaintiff made it clear to Equifax in her disputes that the accounts it attributed to her did not belong to her and she had not authorized them, included information about police and FTC reports regarding the accounts, and provided identification along with the disputes.

117. Rather than having in place procedures to account for correcting such patent inaccuracies, discovery will show that Equifax relies exclusively on furnishers for the accuracy of account information when deciding whether to report it.

118. In fact, Equifax relies on furnisher information exclusively even with it is told, as Plaintiff did, that it is reporting an account that does not belong to a consumer.

119. All of Equifax's reporting of Plaintiff's accounts was done according to TransUnion's established policies and procedures. Discovery will show that Equifax

reported Plaintiff's accounts exactly as designed, and none of the reporting was the result of mistake or error.

120. As a result of this conduct, action and inaction of Equifax, the Plaintiff suffered damages by stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

121. Plaintiff provided three police report numbers, an FTC report number and many details that Equifax purposely ignored. The details from Plaintiff's disputes should have triggered a procedure to independently evaluate the account information before reporting it, yet Equifax failed to do so.

122. Equifax's conduct, action, and inaction were willful, rendering it liable for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

123. The Plaintiff is entitled to recover costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EQUIFAX INFORMATION SERVICES LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

**COUNT VIII**
**Equifax's Violations of FCRA § 1681i**

124. Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Plaintiff provided sufficient details

that should have led Equifax to identify the fraud. Equifax chose to ignore the disputes by Plaintiff and instead rely on the Furnisher Defendants for account information.

125. Discovery will show that Equifax's investigation into disputes is perfunctory and designed to feign compliance with the FCRA. The processes and procedures are meant to devote as little time as possible to an investigation, because investigations cost Equifax money by having to pay dispute agents to conduct the investigations, and investigations earn Equifax no profit.

126. Equifax's resulting business approach to investigations means that it relies almost exclusively on furnishers for account information. Discovery will show that in Plaintiff's case, all Equifax did was send the ACDVs of Plaintiff's disputes to the Furnisher Defendants, and then respond to Plaintiff with whatever information the Furnisher Defendants sent to Equifax.

127. While Equifax is duty-bound under the FCRA to conduct its own, independent investigation of Plaintiff's disputes, Equifax does nothing. Such is confirmed by the fact that Equifax never called, emailed, or otherwise contacted Plaintiff to discuss her disputes.

128. Discovery will further confirm that Equifax did not contact the FTC or Huntington Beach Police Department about Plaintiff's complaints of identity theft.

129. As a result of this conduct, action and inaction of Equifax, the Plaintiff suffered damages by stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

130. Equifax's conduct, action and inaction as willful, rendering it liable for actual damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o. Equifax was made aware of the identity theft by Plaintiff providing a police report and contact information.

COMPLAINT AND DEMAND FOR JURY TRIAL

131.   The Plaintiff is entitled to recover costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

132.   The Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, the Plaintiff demands judgment and compensatory and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

## COUNT IX
### Equifax's Violations of CCRAA § 1785.16

133.   At all times relevant to this action, Equifax is subject to and must abide by the law of the State of California, including, without limitation, California Civil Code § 1785.16, regarding the information it reported about Plaintiff because she is a California resident.

134.   The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA.

135.   Equifax violated § 1785.16 by failing to reinvestigate information disputed by Plaintiff as clearly indicated within the dispute Equifax received. Equifax was provided a copy of Plaintiff's Driver's License and Social Security Card to provide proof of her identity. Plaintiff provided detailed information she had never been to two of the states where the vehicles were purchased and that she never authorized the opening of the fraudulent accounts.  Plaintiff clearly indicated the errors on the reported information on Plaintiff's credit report; however, Equifax failed to acknowledge, investigate, update, or delete the erroneous accounts or inaccurate personal information reported.

136.   Equifax likewise failed to consider all relevant information in considering Plaintiff's dispute, as required by CCRAA § 1785.16(b). Plaintiff included three police report numbers as well as an FTC report number in her disputes to Equifax, and discovery

COMPLAINT AND DEMAND FOR JURY TRIAL

23

will confirm that Equifax did nothing with that information in investigating Plaintiff's dispute.

137.   Discovery will confirm that all Equifax did was convey Plaintiff's disputes to the Furnisher Defendants, and took no action that could be considered a reasonable investigation of Plaintiff's disputes.

138.   As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to CAL. CIV. CODE § 1785.16(a).

139.   As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to CAL. CIV. CODE § 1785.31(a)(2) against Equifax, including punitive damages of $100 to $5,000 per willful violation.

140.   Plaintiff is also entitled to injunctive relief against Equifax pursuant to CAL. CIV. CODE § 1785.31(b).

141.   Plaintiff is further entitled to recover her court costs and attorneys' fees pursuant to CAL. CIV. CODE § 1785.31(d).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EQUIFAX INFORMATION SERVICES LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)   Award Plaintiff actual and punitive damages for Experian's Equifax's, and TransUnion's violations of the FCRA;

(2)   Award Plaintiff injunctive relief for Defendants' violations of the CCRAA;

(3)   Award Plaintiff attorneys' fees and costs under the FCRA and CCRAA;

(4)   Award Plaintiff post-judgment interest; and

COMPLAINT AND DEMAND FOR JURY TRIAL

(5)     Award all other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**MELISSA MILLER**

By:  _/s/ Craig C. Marchiando_
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

***Attorneys for Plaintiff***

# EXHIBIT B

Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MELISSA MILLER, | Case No.: _____ |
| Plaintiff, | |
| v. | **PLAINTIFF'S COMPLAINT FOR FCRA AND CCRAA VIOLATIONS** |
| NISSAN MOTOR ACCEPTANCE CORPORATION, | |
| Defendant. | **JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, MELISSA MILLER, by and through the undersigned Counsel, and sues Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION (hereinafter "NMAC" and "Furnisher"). Plaintiff respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.1–1785.36 ("CCRAA").

**PRELIMINARY STATEMENT**

1.     This is an action for actual damages, punitive damages, costs, and attorneys' fees brought pursuant to the FCRA and CCRAA.

2.     Non-parties Equifax, Experian, and TransUnion comprise the three major consumer reporting agencies ("CRAs") in the United States.

3.     CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the

1

information they report. It is not enough for them to simply parrot information they receive from entities that furnish them information, like Defendant, particularly where a consumer makes a dispute about information the CRAs are reporting.

4. When a consumer like Plaintiff disputes information through the CRAs, those disputes are electronically transmitted to the parties furnishing the information, in this case the furnisher is the Defendant.

5. The FCRA demands that each furnisher conduct a reasonable investigation of the consumer's dispute(s) and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6. Since furnishers generally have no duty to accurately report information to CRAs, individuals like Plaintiff have little recourse when creditors like Defendant are duped into granting credit by identity thieves and then improperly attribute those accounts to consumers who never opened them or authorized them to be opened.

7. Statutes like the FCRA and CCRAA therefore provide consumers with the only mechanism by which they can force furnishers to report accurate information about them.

## JURISDICTION AND VENUE

8. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

## PARTIES

9. Plaintiff is a natural person and resident of Orange County, California. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. NMAC is a financial institution providing consumer loans and conducting business in California through its registered agent, Corporation Service Company which does business in California as CSC – Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

2

PLAINTIFF'S COMPLAINT

## FACTUAL ALLEGATIONS

### *Plaintiff's Experiences with Defendant*

11. Plaintiff is a natural person who is alleged to owe a debt to NMAC in Texas, while she is and has been a resident of California.

12. On or around October 22, 2019, Plaintiff received a letter from Synchrony Bank stating her credit line for her TJX MasterCard was lowered because of delinquent accounts in her credit reports.

13. Surprised by this letter and reference to supposedly delinquent accounts where she has none, Plaintiff set about investigating the claims by Synchrony Bank.

14. On or around December 12, 2019, Plaintiff obtained her report from TransUnion, FIN 405253163, report number BAL45-002 00663. On or around December 18, 2019, Plaintiff obtained her Experian credit report, report number 1313-0443-96. On January 19, 2020, Plaintiff obtained her report from Equifax, with confirmation number 0019000253. All three CRAs' reports about Plaintiff showed an auto loan account from Defendant which Plaintiff had never opened nor authorized anyone to open in her name.

15. The fraudulent auto loan account which appeared on Plaintiff's Experian, Equifax and TransUnion reports was a 'Nissan Motor Acceptance' account for $35,016, opened in June of 2019 in the State of Texas. Plaintiff did not authorize her information to be used by NMAC or anyone else on this date, nor did she purchase a vehicle. Plaintiff has never visited or lived in the State of Texas.

16. The fraudulent NMAC auto account reflected a balance of $34,779 as of November of 2019. It reflected that November's payment was 30 days late for $579. This inaccurate reporting significantly lowered Plaintiff's credit score.

17. Plaintiff's credit limits were decreased by her actual creditors, and she began getting denied new credit due to the inaccurate reporting on her credit report by Defendant.

3

18.     On January 22, 2020, Plaintiff disputed in writing to Experian, Equifax, and TransUnion the NMAC auto loan account, as well as the erroneous reporting of her name, address, and phone number(s). Within the very detailed disputes, Plaintiff included a copy of her California Driver's License, as well as her Social Security Card, to prove both her residence and her social security information. She clearly detailed the fraudulent account from NMAC as well as noted the impermissible inquiries on her credit reports.

19.     Within the dispute letters to Experian, Equifax and TransUnion, Plaintiff included the numbers of three police reports she had filed with the Huntington Beach Police Department (2018-601027, T18001230, and 2020-00001696). Plaintiff also included the number of an identity fraud report number that she filed with the Federal Trade Commission (109743860).

20.     When CRAs receive disputes like Plaintiff's, the FCRA demands that they immediately forward them, and all relevant information, to the furnishers whose credit accounts or tradelines are the subject of the disputes.

21.     The CRAs use a uniform electronic system, known as e-OSCAR, to transmit disputes to furnishers. The substance of the disputes and accompanying documents are transmitted using forms called automated consumer dispute verification ("ACDV") forms.

22.     Despite the Defendant receiving the ACDVs from all three CRAs (including the detailed dispute letter) and being informed that Plaintiff had never visited or lived in state of Texas where the vehicle was purchased, the Defendant failed to investigate or rectify the fraudulent information and inexplicably verified the information as "accurate" to all three CRAs.

23.     On February 19, 2020, Equifax responded to Plaintiff's dispute with confirmation number 0028026973. Equifax responded to the NMAC auto loan account by stating "[w]e verified that this account belongs to you."

PLAINTIFF'S COMPLAINT

24. Based apparently on the supposed verification by NMAC, Equifax continued to report the fraudulent accounts after the disputes from Plaintiff.

25. On February 20, 2020, Experian responded to Plaintiff's dispute with report number 1585-0248-64. Experian responded to Plaintiff's dispute regarding the NMAC account by indicating "Outcome: Updated".

26. Based on these apparent outcomes of its investigations, Experian continued to report the fraudulent account after the disputes from Plaintiff and was now showing 90 days late for the month of February which showed over 120 days delinquent.

27. On February 22, 2020, TransUnion responded to Plaintiff's dispute with FIN 405253163, report number BNWHL-003 01632. TransUnion verified as accurate based on Defendant's validation of the fraudulent account. TransUnion continued to report the derogatory fraudulent account after the dispute from Plaintiff.

28. Discovery will confirm that Experian, Equifax, and TransUnion sent Plaintiff's disputes to NMAC according to the process discussed more thoroughly below. Receipt is also confirmed by the verification of the NMAC account as supposedly accurate.

29. Rather than doing any sort of investigation of its own, Defendant chose to simply verify Plaintiff's information that she indicated had been stolen from her (name, SS, DOB). Defendant continued the negative fraudulent reporting to all three CRAs.

30. Defendant had more than enough information to learn the illicit nature of the account. Plaintiff had detailed that she was the victim of identity theft, therefore simply verifying the above information served no purpose.

31. This is particularly true given the nature of identity theft. Of course, Defendant's records contained at least Plaintiff's name, date of birth, and Social Security Number tied to the fraudulent account, as that is the type of information thieves take and use to open fraudulent accounts.

32. Plaintiff included within her disputes three police report numbers and an FTC Report number which should have demonstrated to Defendant that this account was fraudulent. The production of the three police report numbers and the FTC report should have triggered an independent investigation by Defendant.

33. Instead, Defendant failed to investigate the location of the purchase (Texas), to contact any of the law enforcement agencies involved, or to call Plaintiff by phone to collect evidence of the fraud, Defendant took the inexpensive avenue of simply verifying the fraudulent account.

34. In late February and early March 2020, Plaintiff desperately disputed again, in writing, with Experian, Trans Union and Equifax. She provided an almost identical copy of the first dispute letter with some brief additional information. She detailed the mistake with NMAC, as well as noted the impermissible inquiry in her credit reports. Plaintiff again included three police report numbers she had filed in Huntington Beach, where she has resided for over two years. Plaintiff also included the fourth report number filed with Federal Trade Commission. Again, this dispute was almost a duplicative dispute of the first one she had sent out that was ignored by Defendant.

35. Plaintiff disputes to Experian, Equifax and Trans Union contained color images of her social security card, her California Driver's License, a Mercury Insurance bill with her current address and an image of Huntington Beach Police Report verifying her demographics.

36. On March 19, 2020, Trans Union responded to Plaintiff's second dispute FIN 386077645, report number BT58X-003 00057 and the disputed account with NMAC was not addressed but was also not appearing.

37. After the response from Trans Union and not seeing the account, Plaintiff was hopeful the error by Defendant may have been fixed.

38. On April 9, 2020, Equifax responded to Plaintiff's second dispute with confirmation # 0077038885. Equifax finally agreed with Plaintiff's evidence, and

PLAINTIFF'S COMPLAINT

responded to the auto loan disputes as follows, "We have researched the credit account... The results are: This item has been deleted from the credit file." Defendant had received the same information in Plaintiff's original dispute from the three CRAs but the error was not corrected until March or April of 2020.

39. Since the time of the purchase, Defendant should have known that Plaintiff was not the actual debtor yet continued to report and to verify to Experian, Equifax, and TransUnion that she was the true debtor. Defendant had in its possession account-level information that could easily have confirmed that Plaintiff did not owe the debt they were alleging.

40. Defendant should have possessed copies of picture identifications used during the purchase, and comparing those to the documents Plaintiff submitted with her disputes should have confirmed to Defendant that Plaintiff was not liable on the account.

### The Automated Handling of Credit Disputes

41. When Plaintiff mailed her detailed, written disputes and enclosures to the CRAs, they use a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as NMAC. It is an automated system and the procedures used by the CRAs are systemic and uniform.

42. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor) translates that dispute into an "ACDV" form.

43. The ACDV form is the method by which the Defendant have elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2.

44. Based on the manner in which Experian, TransUnion, and Equifax responded to Plaintiff's disputes, representing that Defendant had "updated" or "verified" the supposed accuracy of their reporting, Plaintiff alleges that Experian, Equifax, and TransUnion did in fact forward the Plaintiff's disputes via an ACDV to the Furnisher Defendant.

PLAINTIFF'S COMPLAINT

45. The Defendant understood the nature of the Plaintiff's disputes when they received the ACDVs from Experian, TransUnion, and Equifax (including the detailed letter).

46. When the Defendant received the ACDVs from Experian, TransUnion, and Equifax, it could have reviewed its own systems and previous communications with the Plaintiff and discovered that it in fact had connected Plaintiff to an account she never opened or authorized, and the debt for which should not have made it onto Plaintiff's consumer reports.

47. Notwithstanding the above, discovery will show Defendant follows a standard and systemically unlawful process when they receive ACDV disputes. Basically, all Defendant does is review their own internal computer screens with basic data for the accounts and repeat back to the ACDV system the same information they had already reported to the CRAs.

48. Defendant at all times had possession of the applications, identification of the buyers, and additional information that could have easily discovered the fraud of which Plaintiff complained. They chose to ignore that information in favor of slipshod investigations that are by design perfunctory so the Defendant can save money and also feign FCRA compliance.

49. When Defendant receives consumer disputes through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer systems is itself accurate.

50. The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

51. As a result of the inaccurate credit reporting and inadequate investigation of Plaintiff's disputes, Plaintiff has suffered damages including, but not limited to:

      i.     Higher interest

ii.   Deceased credit limits on existing credit cards;

iii.  Denial in application for new credit card use or higher limits;

iv.   Monies lost by attempting to fix her credit, such as communication costs, postage for disputes;

v.    Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

vi.   Stress associated with hundreds of hours attempting to resolve this matter,

52.   All conditions precedent to the filing of this action has occurred.

## CAUSES OF ACTION

### COUNT I
### NMAC's Violations of FCRA § 1681s-2(b)(1)(A) and (B)

53.   On at least one occasion within the past two years, by example only and without limitation, NMAC violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

54.   On one or more occasions within the past two years, by example only and without limitation, NMAC violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

55.   When the Plaintiff mailed her detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to NMAC via ACDV forms

56.   The ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

57.   NMAC understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

58.   When NMAC received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that NMAC in fact had connected Plaintiff to an account within a State at which she has never resided, and the debt for which should not have made it onto Plaintiff's consumer report.

9

59. Notwithstanding the above, discovery will show NMAC follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all NMAC does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information NMAC already had reported to the CRAs. NMAC at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud. NMAC never attempted to contact the law enforcement agencies Plaintiff reported the crime to.

60. When NMAC receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

61. As a result of NMAC's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

62. The violations by NMAC were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, NMAC was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

63. The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

64. NMAC was aware of the FCRA decisions by the Ninth Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

65. Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that NMAC intended its employees or agents to follow.

10

66. Because of Defendant's failure in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT II
### NMAC's Violations of FCRA § 1681s-2(b)(1)(C) and (D)

67. On one or more occasions within the past two years, by example only and without limitation, NMAC violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the NMAC's inaccuracies within Plaintiff's credit files with Experian, TransUnion and Equifax, without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to Experian, Trans Union and Equifax.

68. Specifically, discovery will show NMAC failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian, TransUnion, and Equifax.

69. The XB code will cause the CRAs to include in subsequent reporting of the account tradeline a notation that the information reported is disputed by the consumer and in investigation is ongoing.

70. Discovery will further show that NMAC failed to add the "XC" CCC in the ACDVs when it responded to Experian, TransUnion, and Equifax.

71. The XC code will cause the CRAs to include in subsequent reporting of the account tradeline a notation that the information reported is disputed by the consumer.

72. Discovery will also show that NMAC rarely, if ever, adds the XB or XC code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

73. Plaintiff's disputes were, at a minimum, bone fide.

74. In fact, the Plaintiff's disputes were justified because they showed that the signature used for the vehicles were not the same signature used by Plaintiff.

75. NMAC was aware of FCRA decisions by the Ninth Circuit setting out reporting requirements when consumers have bona fide disputes when it followed the ACDV procedures used regarding Plaintiff's dispute.

76. Discovery will confirm that the procedures followed regarding the Plaintiff's FCRA dispute through e-Oscar were the procedures that NMAC intended its employees or agents to follow.

77. Discovery will further confirm that NMAC's employee or agent did not make a mistake (in the way in which he or she followed NMAC's procedures) when he or she received, processed and responded to Experian and TransUnion's ACDVs and did not include the XB or XC code in the CCC field.

78. Discovery will also show NMAC has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

79. As a result of NMAC's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

80. The violations by NMAC were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, NMAC was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

12

PLAINTIFF'S COMPLAINT

81.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant, NMAC, in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT III
### NMAC's Violations of CCRAA § 1785.25(a)

82.     On one or more occasions within the past two years, by example only and without limitation, NMAC violated CAL. CIV. CODE § 1785.25(a) by knowingly furnishing to the CRAs information about Plaintiff that it knew or should have known was inaccurate.

83.     Specifically, discovery will show that through Plaintiff's disputes and its own records NMAC had ample information to raise a doubt, if not confirm outright, that the account it attributed to Plaintiff was not opened by or authorized by her.

84.     Despite this evidence and knowledge, NMAC soldiered-on in reporting to the CRAs that the account belonged to Plaintiff.

85.     Such reporting of information constitutes a violation of CAL. CIV. CODE § 1785.25(a) on its face.

86.     As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to CAL. CIV. CODE § 1785.16(a).

87.     As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to CAL. CIV. CODE § 1785.31(a)(2) against NMAC, including punitive damages of $100 to $5,000 per willful violation.

13

88.    Plaintiff is also entitled to injunctive relief against NMAC pursuant to CAL. CIV. CODE § 1785.31(b).

89.    Plaintiff is further entitled to recover her court costs and attorneys' fees pursuant to CAL. CIV. CODE § 1785.31(d).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)    Award Plaintiff actual and punitive damages for Nissan Motor Acceptance Corporation's violations of the FCRA;

(2)    Award Plaintiff injunctive relief for Defendant's violations of the CCRAA;

(3)    Award Plaintiff attorneys' fees and costs under the FCRA and CCRAA;

(4)    Award Plaintiff post-judgment interest; and

(5)    Award all other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**MELISSA MILLER**

By: */s/ Craig C. Marchiando*
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com
*Attorney for Plaintiff*

14

# EXHIBIT C

Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Southern Division

| | |
|---|---|
| MELISSA MILLER,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM BANK, F.S.B.,<br><br>Defendant. | Case No.: _____<br><br><br>**PLAINTIFF'S COMPLAINT FOR FCRA AND CCRAA VIOLATIONS**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, MELISSA MILLER, by and through the undersigned Counsel, and sues Defendant, STATE FARM BANK, F.S.B. (hereinafter "State Farm" and "Furnisher"). Plaintiff respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.1–1785.36 ("CCRAA").

## PRELIMINARY STATEMENT

1. This is an action for actual damages, punitive damages, costs, and attorneys' fees brought pursuant to the FCRA and CCRAA.

2. Non-parties Equifax, Experian, and TransUnion comprise the three major consumer reporting agencies ("CRAs") in the United States.

3. CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the

information they report. It is not enough for them to simply parrot information they receive from entities that furnish them information, like Defendant, particularly where a consumer makes a dispute about information the CRAs are reporting.

4. When a consumer like Plaintiff disputes information through the CRAs, those disputes are electronically transmitted to the parties furnishing the information, in this case the furnisher is the Defendant.

5. The FCRA demands that each furnisher conduct a reasonable investigation of the consumer's dispute(s) and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6. Since furnishers generally have no duty to accurately report information to CRAs, individuals like Plaintiff have little recourse when creditors like Defendant are duped into granting credit by identity thieves and then improperly attribute those accounts to consumers who never opened them or authorized them to be opened.

7. Statutes like the FCRA and CCRAA therefore provide consumers with the only mechanism by which they can force furnishers to report accurate information about them.

### JURISDICTION AND VENUE

8. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

### PARTIES

9. Plaintiff is a natural person and resident of Orange County, California. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. State Farm Bank is a financial institution headquartered in Illinois, located at P.O. Box 2316, Bloomington, Illinois, 61702, providing consumer loans and conducting business in the State of California. State Farm is a "furnisher" as that term is defined and interpreted under the FCRA and CCRAA.

PLAINTIFF'S COMPLAINT

**FACTUAL ALLEGATIONS**

***Plaintiff's Experiences with Defendant***

11.     Plaintiff is a natural person who is alleged to owe a debt to State Farm Bank while she was a resident of California.

12.     On or around October 22, 2019, Plaintiff received a letter from Synchrony Bank stating her credit line for her TJX MasterCard was lowered because of delinquent accounts in her credit reports.

13.     Surprised by this letter and reference to supposedly delinquent accounts where she has none, Plaintiff set about investigating the claims by Synchrony Bank.

14.     On or around December 18, 2019, Plaintiff obtained her Experian credit report, report number 1313-0443-96. On or around December 19, 2019, Plaintiff obtained her report from TransUnion, report number BAL45-002 00663. On January 19, 2020, Plaintiff obtained her report from Equifax, with confirmation number 0019000253. All three CRAs' reports about Plaintiff showed one Wells Fargo credit card account and an auto loan account from Defendant State Farm Bank neither of which did Plaintiff have or authorize anyone to open in her name.

15.     The fraudulent auto loan account which appeared on Plaintiff's Experian, Equifax and TransUnion reports was a State Farm Bank account for $27,596, opened in July of 2019 in the State of Illinois. Plaintiff did not authorize her information to be used by State Farm Bank or anyone else on this date, nor did she purchase a vehicle. Plaintiff has never visited or lived in the State of Illinois.

16.     The fraudulent State Farm Bank auto account reflected a balance of $27,596. It reflected that no payments had ever been made and showed a delinquency of 90 days. This negative reporting significantly lowered Plaintiff's credit score.

17.     Plaintiff's credit limits were decreased by her actual creditors, and she began getting denied new credit due to the inaccurate reporting on her credit report by Defendant.

3

18.     On January 22, 2020, Plaintiff disputed in writing to Experian, Equifax, and TransUnion the State Farm Bank auto loan account, as well as the erroneous reporting of her name, address, and phone number(s). Within the very detailed disputes, Plaintiff included a copy of her California Driver's License, as well as her Social Security Card, to prove both her residence and her social security information. She clearly detailed the fraudulent account from State Farm Bank as well as noted the impermissible inquiry on her credit reports.

19.     Within the dispute letters to Experian, Equifax and TransUnion, Plaintiff included the numbers of three police reports she had filed with the Huntington Beach Police Department (2018-601027, T18001230, and 2020-00001696). Plaintiff also included the number of an identity fraud report number that she filed with the Federal Trade Commission (109743860).

20.     When CRAs receive disputes like Plaintiff's, the FCRA demands that they immediately forward them, and all relevant information, to the furnishers whose credit accounts or tradelines are the subject of the disputes.

21.     The CRAs use a uniform electronic system, known as e-OSCAR, to transmit disputes to furnishers. The substance of the disputes and accompanying documents are transmitted using forms called automated consumer dispute verification ("ACDV") forms.

22.     Despite the Defendant receiving the ACDVs from all three CRAs (including the detailed dispute letter), and being informed that Plaintiff had never visited or lived in state of Illinois where the vehicle was purchased, the Defendant failed to investigate or rectify the fraudulent information and inexplicably verified the information as "accurate" to all three CRAs.

23.     While the disputes were pending with Experian, Equifax and TransUnion, on February 13, 2020, Plaintiff received a packet from State Farm Bank which included the original application to purchase the vehicle (reference number 10000001036791) and an affidavit of forgery. Plaintiff responded on March 2, 2020

4

with a notarized affidavit indicating the signatures on the promissory notes and security agreement were indeed forged and not hers.

24. On February 19, 2020, Equifax responded to Plaintiff's dispute with confirmation number 0028026973. Equifax responded to the State Farm auto loan account by stating "[w]e verified that this account belongs to you."

25. Based apparently on the supposed verification by State Farm Bank, Equifax continued to report the fraudulent accounts after the disputes from Plaintiff.

26. On February 22, 2020, TransUnion responded to Plaintiff's dispute with report number BNWHL-003 01632. TransUnion verified as accurate based on Defendant's validation of the fraudulent account. TransUnion continued to report the derogatory fraudulent account after the dispute from Plaintiff.

27. On February 20, 2020, Experian responded to Plaintiff's dispute with report number 1585-0248-64. Experian responded to Plaintiff's dispute regarding the State Farm Bank account by indicating "Outcome: Remains".

28. Based on these apparent outcomes of its investigations, Experian continued to report the fraudulent accounts after the disputes from Plaintiff and was now showing a "Maximum Delinquency of 120 days in 12/2019".

29. Discovery will confirm that Experian, Equifax, and TransUnion sent Plaintiff's disputes to State Farm Bank according to the process discussed more thoroughly below. Receipt is also confirmed by the verification of the State Farm Bank account as supposedly accurate.

30. Rather than doing any sort of investigation of its own, Defendant chose to simply verify Plaintiff's information that she indicated had been stolen from her (name, SS, DOB). Defendant continued the negative fraudulent reporting to all three CRAs.

31. Defendant had more than enough information to learn the illicit nature of the account. Plaintiff had detailed that she was the victim of identity theft, therefore simply verifying the above information served no purpose.

PLAINTIFF'S COMPLAINT

32. This is particularly true given the nature of identity theft. Of course the Defendant's records contained at least Plaintiff's name, date of birth, and Social Security Number tied to the fraudulent account, as that is the type of information thieves take and use to open fraudulent accounts.

33. Plaintiff included within her disputes three police report numbers and a FTC Report number which should have demonstrated to Defendant that this account was fraudulent. The production of the three police report numbers and the FTC report should have triggered an independent investigation by Defendant.

34. Instead, Defendant failed to investigate the location of the purchase (Illinois), to contact any of the law enforcement agencies involved, or to call Plaintiff by phone to collect evidence of the fraud, Defendant took the inexpensive avenue of simply verifying the fraudulent account.

35. In late February and early March 2020, Plaintiff desperately disputed again, in writing, with Experian, Trans Union and Equifax. She provided an almost identical copy of the first dispute letter with some brief additional information. She detailed the mistake with State Farm Bank, as well as noted the impermissible inquiry in her credit reports. Plaintiff again included three police report numbers she had filed in Huntington Beach, where she has resided for over two years. Plaintiff also included the fourth report number filed with Federal Trade Commission. Again, this dispute was almost a duplicative dispute of the first one she had sent out that was ignored by Defendant.

36. Plaintiff disputes to Experian, Equifax and Trans Union contained color images of her social security card, her California Driver's License, a Mercury Insurance bill with her current address and an image of Huntington Beach Police Report verifying her demographics.

37. On April 9, 2020, Equifax responded to Plaintiff's second dispute with confirmation # 0077038885. Equifax finally agreed with Plaintiff's evidence, and responded to the auto loan disputes as follows, "We have researched the credit

account. . . . The results are: This item has been deleted from the credit file." Defendant had received the same information in Plaintiff's original dispute from the three CRAs but the error was not corrected until April 9, 2020.

38.    The fact of correction by Equifax, however, does not by itself indicate that Defendant communicated to Equifax that it had made a mistake. Equifax may have chosen, on its own, to cease reporting the inaccurate information after receiving any of Plaintiff's disputes.

39.    After the response from Equifax, Plaintiff was hopeful the error by Defendant may have been fixed. However, On December 9, 2020, Experian responded to Plaintiff's dispute regarding the account with Defendant, report number 0135-7810-40, stating "Outcome: Updated". This account has negatively been reporting as in collections for over a year.

40.    The State Farm Bank account reflected a "recent Balance of $29,361 as of October 2020". It reflected a Status of "Account charged off. $10,100 written off. $29,361 past due".

41.    Since the time of the purchase(s), Defendant should have known that Plaintiff was not the actual debtor yet continued to report and to verify to Experian, Equifax, and TransUnion that she was the true debtor. Defendant had in its possession account-level information that could easily have confirmed that Plaintiff did not owe the debt they were alleging.

42.    Defendant should have possessed copies of picture identifications used during the purchase, and comparing those to the documents Plaintiff submitted with her disputes should have confirmed to Defendant that Plaintiff was not liable on the account.

***The Automated Handling of Credit Disputes***

43.    When Plaintiff mailed her detailed, written disputes and enclosures to the CRAs, they use a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as State Farm

Bank. It is an automated system and the procedures used by the CRAs are systemic and uniform.

44. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor) translates that dispute into an "ACDV" form.

45. The ACDV form is the method by which the Defendant have elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2.

46. Based on the manner in which Experian, TransUnion, and Equifax responded to Plaintiff's disputes, representing that Defendant had "updated" or "verified" the supposed accuracy of their reporting, Plaintiff alleges that Experian, Equifax, and TransUnion did in fact forward the Plaintiff's disputes via an ACDV to the Furnisher Defendant.

47. The Defendant understood the nature of the Plaintiff's disputes when they received the ACDVs from Experian, TransUnion, and Equifax (including the detailed letter).

48. When the Defendant received the ACDVs from Experian, TransUnion, and Equifax, it could have reviewed its own systems and previous communications with the Plaintiff and discovered that it in fact had connected Plaintiff to an account she never opened or authorized, and the debt for which should not have made it onto Plaintiff's consumer reports.

49. Notwithstanding the above, discovery will show Defendant follows a standard and systemically unlawful process when they receive ACDV disputes. Basically, all Defendant does is review their own internal computer screens with basic data for the accounts and repeat back to the ACDV system the same information they had already reported to the CRAs.

50. Defendant at all times had possession of the applications, identification of the buyers, and additional information that could have easily discovered the fraud of which Plaintiff complained. They chose to ignore that information in favor of

8

PLAINTIFF'S COMPLAINT

slipshod investigations that are by design perfunctory so the Defendant can save money and also feign FCRA compliance.

51. When Defendant receives consumer disputes through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer systems is itself accurate.

52. The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

53. As a result of the inaccurate credit reporting and inadequate investigation of Plaintiff's disputes, Plaintiff has suffered damages including, but not limited to:

    i. Higher interest

    ii. Deceased credit limits on existing credit cards;

    iii. Denial in application for new credit card use or higher limits;

    iv. Monies lost by attempting to fix her credit, such as communication costs, postage for disputes;

    v. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

    vi. Stress associated with hundreds of hours attempting to resolve this matter,

54. All conditions precedent to the filing of this action has occurred.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**State Farm Bank's Violations of FCRA § 1681s-2(b)(1)(A) and (B)**

55. On at least one occasion within the past two years, by example only and without limitation, State Farm violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

PLAINTIFF'S COMPLAINT

56.     On one or more occasions within the past two years, by example only and without limitation, State Farm violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

57.     When the Plaintiff mailed her detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to State Farm via ACDV forms

58.     The ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

59.     State Farm understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax.

60.     When State Farm received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that State Farm in fact had connected Plaintiff to an account within a State at which she has never resided, and the debt for which should not have made it onto Plaintiff's consumer report.

61.     Notwithstanding the above, discovery will show State Farm follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all State Farm does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information State Farm already had reported to the CRAs. State Farm at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud. State Farm never attempted to contact the law enforcement agencies Plaintiff reported the crime to.

62.     When State Farm receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

63.     As a result of State Farm's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of

credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

64. The violations by State Farm were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, State Farm was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

65. The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

66. State Farm was aware of the FCRA decisions by the Ninth Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

67. Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that State Farm intended its employees or agents to follow.

68. Because of Defendant's failure in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, STATE FARM BANK, F.S.B., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT II
### State Farm Bank's Violations of FCRA § 1681s-2(b)(1)(C) and (D)

69. On one or more occasions within the past two years, by example only and without limitation, State Farm violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the State Farm's inaccuracies within Plaintiff's credit files with Experian,

TransUnion and Equifax, without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to Experian, Trans Union and Equifax.

70.     Specifically, discovery will show State Farm failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian, TransUnion, and Equifax.

71.     The XB code will cause the CRAs to include in subsequent reporting of the account tradeline a notation that the information reported is disputed by the consumer and in investigation is ongoing.

72.     Discovery will further show that State Farm failed to add the "XC" CCC in the ACDVs when it responded to Experian, TransUnion, and Equifax.

73.     The XC code will cause the CRAs to include in subsequent reporting of the account tradeline a notation that the information reported is disputed by the consumer.

74.     Discovery will also show that State Farm rarely, if ever, adds the XB or XC code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

75.     State Farm knew that the Plaintiff disputed the subject account on multiple occasions directly with State Farm and its agents.

76.     Plaintiff's disputes were, at a minimum, bone fide.

77.     In fact, the Plaintiff's disputes were justified because they showed that the signature used for the vehicles were not the same signature used by Plaintiff.

78.     State Farm was aware of FCRA decisions by the Ninth Circuit setting out reporting requirements when consumers have bona fide disputes when it followed the ACDV procedures used regarding Plaintiff's dispute.

79.     Discovery will confirm that the procedures followed regarding the Plaintiff's FCRA dispute through e-Oscar were the procedures that State Farm intended its employees or agents to follow.

12

PLAINTIFF'S COMPLAINT

80. Discovery will further confirm that State Farm's employee or agent did not make a mistake (in the way in which he or she followed State Farm's procedures) when he or she received, processed and responded to Experian and TransUnion's ACDVs and did not include the XB or XC code in the CCC field.

81. Discovery will also show State Farm has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

82. As a result of State Farm's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

83. The violations by State Farm were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, State Farm was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

84. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant, State Farm, in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, STATE FARM BANK, F.S.B., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT III
### State Farm Bank's Violations of CCRAA § 1785.25(a)

85. On one or more occasions within the past two years, by example only and without limitation, State Farm violated CAL. CIV. CODE § 1785.25(a) by

13

knowingly furnishing to the CRAs information about Plaintiff that it knew or should have known was inaccurate.

86.    Specifically, discovery will show that through Plaintiff's disputes and its own records State Farm had ample information to raise a doubt, if not confirm outright, that the account it attributed to Plaintiff was not opened by or authorized by her.

87.    Despite this evidence and knowledge, State Farm soldiered-on in reporting to the CRAs that the account belonged to Plaintiff.

88.    Such reporting of information constitutes a violation of CAL. CIV. CODE § 1785.25(a) on its face.

89.    As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to CAL. CIV. CODE § 1785.16(a).

90.    As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to CAL. CIV. CODE § 1785.31(a)(2) against State Farm, including punitive damages of $100 to $5,000 per willful violation.

91.    Plaintiff is also entitled to injunctive relief against Equifax pursuant to CAL. CIV. CODE § 1785.31(b).

92.    Plaintiff is further entitled to recover her court costs and attorneys' fees pursuant to CAL. CIV. CODE § 1785.31(d).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, STATE FARM BANK, F.S.B., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

14

PLAINTIFF'S COMPLAINT

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)  Award Plaintiff actual and punitive damages for State Farm Bank violations of the FCRA;

(2)  Award Plaintiff injunctive relief for Defendant's violations of the CCRAA;

(3)  Award Plaintiff attorneys' fees and costs under the FCRA and CCRAA;

(4)  Award Plaintiff post-judgment interest; and

(5)  Award all other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**MELISSA MILLER**

By:  _/s/ Craig C. Marchiando_
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

***Attorney for Plaintiff***

15

PLAINTIFF'S COMPLAINT

# EXHIBIT D

ACCO,(KESx),CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division – Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:20-cv-00922-JLS-KES

| | |
|---|---|
| Melissa Miller v. Experian Information Solutions, Inc. et al | Date Filed: 05/19/2020 |
| Assigned to: Judge Josephine L. Staton | Date Terminated: 04/01/2021 |
| Referred to: Magistrate Judge Karen E. Scott | Jury Demand: Plaintiff |
| Related Cases: 8:21-cv-00244-JLS-KES | Nature of Suit: 480 Consumer Credit |
| 8:21-cv-00691-JLS-KES | Jurisdiction: Federal Question |
| 8:21-cv-00692-JLS-KES | |
| Cause: 15:1681 Fair Credit Reporting Act | |

**Plaintiff**

**Melissa Miller**                                    represented by **Craig Carley Marchiando**
Consumer Litigation Associates PC
700 South Flower Street Suite 1000
Los Angeles, CA 90017
757-930-3660
Email: craig@clalegal.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Experian Information Solutions, Inc.**                  represented by **Timothy J. Huether**
*TERMINATED: 02/16/2021*                                        Jones Day
51 Louisiana Avenue NW
Washington, DC 20001
202-879-5440
Fax: 202-626-1700
Email: thuether@jonesday.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Sun**
Jones Day
3161 Michelson Drive Suite 800
Irvine, CA 92612
949-851-3939
Fax: 949-553-7539
Email: jennifersun@jonesday.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trans Union LLC**                                    represented by **Donald E. Bradley**
Musick Peeler and Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626
714-668-2447

Fax: 714-668-2490
Email: d.bradley@musickpeeler.com
*ATTORNEY TO BE NOTICED*

**Marc F. Kirkland**
Quilling Selander Lownds Winslett and
Moser PC
6900 North Dallas Parkway Suite 800
Plano, TX 75024
214-560-5454
Fax: 214-871-2111
Email: mkirkland@qslwm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristin L Marker**
Quilling Selander Lownds Winslett and
Moser PC
6900 North Dallas Parkway Suite 800
Plano, TX 75024
214-560-5454
Fax: 214-871-2111
Email: kmarker@qslwm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Equifax Information Services, LLC**                    represented by    **Erica Danielle Hendricks**
Seyfarth Shaw LLP
2029 Century Park East Suite 3500
Los Angeles, CA 90067
310-277-7200
Fax: 310-201-5219
Email: ehendricks@seyfarth.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Esther S. McDonald**
Seyfarth Shaw LLP
1075 Peachtree Street NE Suite 2500
Atlanta, GA 30309-3958
404-885-1500
Fax: 404-892-7056
Email: emcdonald@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric M Lloyd**
Seyfarth Shaw LLP
560 Mission Street Suite 3100
San Francisco, CA 94105
415-397-2823
Fax: 415-397-8549

Email: elloyd@seyfarth.com
*ATTORNEY TO BE NOTICED*

**Mediator (ADR Panel)**

**Former Attorney Barry S Glaser**          represented by   **Barry S Glaser**
Lamb and Kawakami LLP
333 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071
213-630-5515
Fax: 213-630-5555
Email: bglaser@lkfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/19/2020 | 1 | COMPLAINT Receipt No: ACACDC-26492136 - Fee: $400, filed by Plaintiff Melissa Miller. (Attorney Craig Carley Marchiando added to party Melissa Miller(pty:pla)) (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 2 | CIVIL COVER SHEET filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 4 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 5 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 6 | CERTIFICATE of Interested Parties filed by Plaintiff Melissa Miller, (Marchiando, Craig) (Entered: 05/19/2020) |
| 05/19/2020 | 7 | NOTICE OF ASSIGNMENT to District Judge Josephine L. Staton and Magistrate Judge Karen E. Scott. (jtil) (Entered: 05/19/2020) |
| 05/19/2020 | 8 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 05/19/2020) |
| 05/19/2020 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union LLC. (Attachments: # 1 Experian, # 2 TransUnionLLC) (jtil) (Entered: 05/19/2020) |
| 05/20/2020 | 10 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON. (tg) (Entered: 05/20/2020) |
| 06/05/2020 | 11 | PROOF OF SERVICE Executed by Plaintiff Melissa Miller, upon Defendant Equifax Information Services, LLC served on 5/22/2020, answer due 6/12/2020. Service of the Summons and Complaint were executed upon Nicole Strauss, Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Marchiando, Craig) (Entered: 06/05/2020) |
| 06/05/2020 | 12 | PROOF OF SERVICE Executed by Plaintiff Melissa Miller, upon Defendant Experian Information Solutions, Inc. served on 5/22/2020, answer due 6/12/2020. Service of the |

| | | |
|---|---|---|
| | | Summons and Complaint were executed upon Daisy Montenegro, Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Marchiando, Craig) (Entered: 06/05/2020) |
| 06/05/2020 | 13 | PROOF OF SERVICE Executed by Plaintiff Melissa Miller, upon Defendant Trans Union LLC served on 5/22/2020, answer due 6/12/2020. Service of the Summons and Complaint were executed upon Nicole Strauss, Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Marchiando, Craig) (Entered: 06/05/2020) |
| 06/11/2020 | 14 | STIPULATION Extending Time to Answer the complaint as to Equifax Information Services, LLC answer now due 7/13/2020, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant Equifax Information Services, LLC.(Attorney Eric M Lloyd added to party Equifax Information Services, LLC(pty:dft))(Lloyd, Eric) (Entered: 06/11/2020) |
| 06/11/2020 | 15 | *Defendant Equifax Information Services, LLC's Notice of Interested Parties [L.R. 7.1-1]* NOTICE of Interested Parties filed by Defendant Equifax Information Services, LLC, identifying Equifax, Inc.. (Lloyd, Eric) (Entered: 06/11/2020) |
| 06/11/2020 | 16 | STIPULATION Extending Time to Answer the complaint as to Experian Information Solutions, Inc. answer now due 7/13/2020, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant Experian Information Solutions, Inc..(Attorney Jennifer Sun added to party Experian Information Solutions, Inc.(pty:dft))(Sun, Jennifer) (Entered: 06/11/2020) |
| 06/11/2020 | 17 | NOTICE of Interested Parties filed by Defendant Experian Information Solutions, Inc., identifying Experian plc, Central Source LLC, Online Data Exchange LLC, New Management Services LLC, VantageScore Solutions LLC, Opt-Out Services LLC. (Sun, Jennifer) (Entered: 06/11/2020) |
| 06/12/2020 | 18 | STIPULATION Extending Time to Answer the complaint as to re Complaint (Attorney Civil Case Opening) 1 filed by Defendant Trans Union LLC.(Attorney Kristin L Marker added to party Trans Union LLC(pty:dft))(Marker, Kristin) (Entered: 06/12/2020) |
| 06/12/2020 | 19 | CERTIFICATE of Interested Parties filed by Defendant Trans Union LLC, identifying TransUnion Intermediate Holdings, Inc.. (Marker, Kristin) (Entered: 06/12/2020) |
| 07/02/2020 | 20 | ANSWER to Complaint (Attorney Civil Case Opening) 1 filed by Defendant Trans Union LLC.(Marker, Kristin) (Entered: 07/02/2020) |
| 07/06/2020 | 21 | ORDER SETTING SCHEDULING CONFERENCE by Judge Josephine L. Staton. Scheduling Conference is set for 8/21/2020 at 10:30 AM. See attached Order for details. (tg) (Entered: 07/06/2020) |
| 07/13/2020 | 22 | ANSWER to Complaint (Attorney Civil Case Opening) 1 filed by Defendant Equifax Information Services, LLC.(Lloyd, Eric) (Entered: 07/13/2020) |
| 07/13/2020 | 23 | ANSWER to Complaint (Attorney Civil Case Opening) 1 filed by Defendant Experian Information Solutions, Inc..(Sun, Jennifer) (Entered: 07/13/2020) |
| 08/07/2020 | 24 | JOINT RULE 26(f) REPORT REPORT of Discovery Plan filed by Plaintiff Melissa Miller. (Attachments: # 1 Exhibit A)(Marchiando, Craig) (Entered: 08/07/2020) |
| 08/17/2020 | 25 | MINUTE ORDER (In Chambers) SCHEDULING ORDER by Judge Josephine L. Staton: On the Court's own motion, the Scheduling Conference set for hearing August 21, 2020, is VACATED and the following schedule is set. Last Day to File a Motion to Add Parties or Amend Pleadings: October 20, 2020; Fact Discovery Cutoff: March 2, 2021; Last Day to Serve Initial Expert Reports: March 16, 2021; Last Day to File Motions (Excluding Daubert Motions and all other Motions in Limine): March 16, 2021; Last Day to Serve |

| | | |
|---|---|---|
| | | Rebuttal Expert Reports: April 13, 2021; Last Day to Conduct Settlement Proceedings: May 4, 2021; Expert Discovery Cutoff: May 11, 2021; Last Day to File Daubert Motions: May 18, 2021; Last Day to File Other Motions in Limine (Excluding Daubert Motions): June 8, 2021; Final Pretrial Conference (10:30 a.m.): July 9, 2021; Preliminary Trial Estimate: 3 days (see document for further details) (bm) (Entered: 08/19/2020) |
| 08/19/2020 | 26 | NOTICE of Constitutional Question filed by Defendant Equifax Information Services, LLC. (Lloyd, Eric) (Entered: 08/19/2020) |
| 08/20/2020 | 27 | ORDER/REFERRAL to ADR Procedure No 2 by Judge Josephine L. Staton. Case ordered to Court Mediation Panel for mediation. ADR Proceeding to be held no later than May 4, 2021. (mku) (Entered: 08/20/2020) |
| 08/20/2020 | 28 | CIVIL TRIAL ORDER for cases assigned to Judge Josephine L. Staton. (mku) (Entered: 08/20/2020) |
| 09/10/2020 | 29 | STRICKEN, see docket entry no. 32 - APPLICATION of Non-Resident Attorney Esther Slater McDonald to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-28018496) filed by Defendant Equifax Information Services, LLC. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Exhibit Certificate of Good Standing, # 3 Exhibit Certificate of Good Standing, # 4 Proposed Order) (Lloyd, Eric) Modified on 9/16/2020 (lom). (Entered: 09/10/2020) |
| 09/10/2020 | 30 | APPLICATION of Non-Resident Attorney Timothy J. Huether to Appear Pro Hac Vice on behalf of Defendant Experian Information Solutions, Inc. (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-28028123) filed by Defendant Experian Information Solutions, Inc.. (Attachments: # 1 Proposed Order) (Sun, Jennifer) (Entered: 09/10/2020) |
| 09/15/2020 | 31 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Esther Slater McDonald to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-28018496) 29 . The following error(s) was/were found: Local Rule 83-2.1.3.4 Local counsel does not maintain an office within the District. (Thrasher, Lupe) (Entered: 09/15/2020) |
| 09/16/2020 | 32 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS RE: APPLICATION of Non-Resident Attorney Esther Slater McDonald to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC 29 by Clerk. The document is stricken and counsel is ordered to file an amended or corrected document by September 30, 2020. Counsel shall carefully consult the error(s) noted in the Notices of Deficiency and re-file no later than September 30, 2020. (lom) (Entered: 09/16/2020) |
| 09/16/2020 | 33 | ORDER by Judge Josephine L. Staton: granting 30 Non-Resident Attorney Timothy J. Huether APPLICATION to Appear Pro Hac Vice on behalf of Experian Information Solutions, Inc, designating Jennifer Sun as local counsel. (lom) (Entered: 09/16/2020) |
| 09/17/2020 | 34 | NOTICE of Appearance filed by attorney Erica Danielle Hendricks on behalf of Defendant Equifax Information Services, LLC (Attorney Erica Danielle Hendricks added to party Equifax Information Services, LLC(pty:dft))(Hendricks, Erica) (Entered: 09/17/2020) |
| 09/17/2020 | 35 | APPLICATION of Non-Resident Attorney Erica Hendricks to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC (Pro Hac Vice Fee - $500 Previously Paid on 9/10/2020, Receipt No. 28018496) filed by Defendant Equifax Information Services, LLC. (Attachments: # 1 Proposed Order, # 2 Exhibit Certificate of Good Standing, # 3 Exhibit Certificate of Good Standing, # 4 Exhibit Certificate of Good Standing) (Hendricks, Erica) (Entered: 09/17/2020) |

| 09/18/2020 | 36 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Erica Hendricks to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC (Pro Hac Vice Fee - $500 Previously Paid on 9/10/2020, Receipt No. 28018496) 35 . The following error(s) was/were found: Application lists Erica Hendricks as local counsel and Proposed Order has Eric Lloyd listed as local counsel. (Thrasher, Lupe) (Entered: 09/18/2020) |
| --- | --- | --- |
| 09/18/2020 | 37 | ORDER by Judge Josephine L. Staton granting 35 Non-Resident Attorney Esther Slater McDonald APPLICATION to Appear Pro Hac Vice on behalf of Defendant Equifax Information Services, LLC, designating Eric Lloyd as local counsel. (jp) (Entered: 09/19/2020) |
| 10/06/2020 | 38 | NOTICE OF ASSIGNMENT of Panel Mediator. Mediator (ADR Panel) Barry S Glaser has been assigned to serve as Panel Mediator. (lst) (Entered: 10/06/2020) |
| 10/29/2020 | 39 | STRICKEN, see docket entry no. 41 - APPLICATION of Non-Resident Attorney Marc F. Kirkland to Appear Pro Hac Vice on behalf of Defendant Trans Union LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-28771431) filed by Defendant Trans Union LLC. (Attachments: # 1 Declaration Marc Kirkland, # 2 Exhibit Attachment to Application, # 3 Exhibit State Bar Certificate of Good Standing, # 4 Proposed Order) (Marker, Kristin) Modified on 11/2/2020 (lom). (Entered: 10/29/2020) |
| 10/30/2020 | 40 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Marc F. Kirkland to Appear Pro Hac Vice on behalf of Defendant Trans Union LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-28771431) 39 . The following error(s) was/were found: Local Rule 83-2.1.3.4 Local counsel does not maintain an office within the District. (Thrasher, Lupe) (Entered: 10/30/2020) |
| 11/02/2020 | 41 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS RE: APPLICATION of Non-Resident Attorney Marc F. Kirkland to Appear Pro Hac Vice on behalf of Defendant Trans Union LLC 39 by Clerk. The document is stricken and counsel is ordered to file an amended or corrected document by 11/9/20. Counsel shall carefully consult the error(s) noted in the Notices of Deficiency and re-file no later than November 9, 2020. (lom) (Entered: 11/02/2020) |
| 11/06/2020 | 42 | NOTICE of Appearance filed by attorney Donald E Bradley on behalf of Defendant Trans Union LLC (Attorney Donald E Bradley added to party Trans Union LLC(pty:dft)) (Bradley, Donald) (Entered: 11/06/2020) |
| 11/09/2020 | 43 | APPLICATION of Non-Resident Attorney Marc F. Kirkland to Appear Pro Hac Vice on behalf of Defendant Trans Union LLC (Pro Hac Vice Fee - $500.00 Previously Paid on 10/29/2020, Receipt No. 28771431) filed by Defendant Trans Union LLC. (Attachments: # 1 Declaration of Marc F. Kirkland, # 2 Supplement Attachment to Application, # 3 Supplement Certificate of Good Standing, # 4 Supplement Certificate of Good Standing, # 5 Proposed Order) (Bradley, Donald) (Entered: 11/09/2020) |
| 11/10/2020 | 44 | ORDER by Judge Josephine L. Staton granting 43 Non-Resident Attorney Marc F Kirkland APPLICATION to Appear Pro Hac Vice on behalf of Defendant Trans Union LLC, designating Donald E Bradley as local counsel. (jp) (Entered: 11/10/2020) |
| 11/18/2020 | 45 | NOTICE of Settlement *as to Equifax Information Services, LLC and Trans Union, LLC.* filed by plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 11/18/2020) |
| 11/24/2020 | 46 | MEDIATION REPORT filed by Mediator (ADR Panel) Barry S Glaser: A mediation did not take place because the case settled before the session occurred.(Glaser, Barry) (Entered: 11/24/2020) |

| 02/09/2021 | 47 | STIPULATION to Dismiss Defendant Experian Information Solutions, Inc. filed by Defendant Experian Information Solutions, Inc.. (Attachments: # 1 Proposed Order)(Sun, Jennifer) (Entered: 02/09/2021) |
| 02/16/2021 | 48 | ORDER GRANTING Stipulation for Dismissal With Prejudice of Defendant Experian Information Solutions, Inc 47 by Judge Josephine L. Staton that Plaintiff Melissa Miller's claims against Defendant Experian Information Solutions, Inc. are dismissed with prejudice. Each party shall bear its own attorneys' fees and costs. (jp) (Entered: 02/16/2021) |
| 03/19/2021 | 49 | STIPULATION to Dismiss Defendant Trans Union LLC filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 03/19/2021) |
| 04/01/2021 | 50 | STIPULATION to Dismiss defendant Equifax Information Services, LLC filed by plaintiff Melissa Miller.(Marchiando, Craig) (Entered: 04/01/2021) |

| PACER Service Center | | | |
| Transaction Receipt | | | |
| 09/20/2021 14:51:30 | | | |
| PACER Login: | Bjc4751207 | Client Code: | Miller v. WFS |
| Description: | Docket Report | Search Criteria: | 8:20-cv-00922-JLS-KES End date: 9/20/2021 |
| Billable Pages: | 7 | Cost: | 0.70 |

# EXHIBIT E

Query     Reports     Utilities     Help     Log Out

ACCO,(KESx),CLOSED,DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:21-cv-00691-JLS-KES

| | |
|---|---|
| Melissa Miller v. Nissan Motor Acceptance Corporation | Date Filed: 04/15/2021 |
| Assigned to: Judge Josephine L. Staton | Date Terminated: 04/29/2022 |
| Referred to: Magistrate Judge Karen E. Scott | Jury Demand: Plaintiff |
| Related Case: 8:20-cv-00922-JLS-KES | Nature of Suit: 480 Consumer Credit |
| Cause: 15:1681 Fair Credit Reporting Act | Jurisdiction: Federal Question |

**Plaintiff**

**Melissa Miller**                    represented by    **Craig Carley Marchiando**
                                                        Consumer Litigation Associates PC
                                                        763 J. Clyde Morris Boulevard Suite 1-A
                                                        Newport News, VA 23601
                                                        757-930-3660
                                                        Fax: 757-257-3450
                                                        Email: craig@clalegal.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Devin H Fok**
                                                        DHF Law PC
                                                        2304 Huntington Drive Suite 210
                                                        San Marino, CA 91108
                                                        888-651-6411
                                                        Fax: 818-484-2023
                                                        Email: devin@devinfoklaw.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Leonard A. Bennett**
                                                        Consumer Litigation Associates PC
                                                        763 J. Clyde Morris Boulevard, Suite 1-A
                                                        Newport News, VA 23601
                                                        757-930-3660
                                                        Fax: 757-930-3662
                                                        Email: lenbennett@clalegal.com
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Nissan Motor Acceptance Corporation**    represented by    **Arden Devlin Burstein**
                                                            Vanlochem and Associates
                                                            6565 Sunset Boulevard Suite 412
                                                            Hollywood, CA 90028

323-993-0500
Fax: 323-993-0501
Email: aburstein@vandc.net
*ATTORNEY TO BE NOTICED*

**Joseph A. Apatov**
McGlinchey Stafford
1 East Broward Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
954-356-2516
Fax: 954-252-3808
Email: japatov@mcglinchey.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael D Van Lochem**
VanLochem and Associates LLP
6565 West Sunset Boulevard Suite 412
Hollywood, CA 90028
323-993-0500
Fax: 323-993-0501
Email: mvanlochem@vandc.net
*ATTORNEY TO BE NOTICED*

**Mediator (ADR Panel)**

**Frank Kaplan**        represented by    **Frank Kaplan**
5473 Collingwood Circle
Calabasas, CA 91302
310-429-2067
Fax: 310-424-2393845
Email: frank.kaplan71@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2021 | 1 | COMPLAINT Receipt No: ACACDC-31118739 - Fee: $402, filed by Plaintiff Melissa Miller. (Attorney Craig Carley Marchiando added to party Melissa Miller(pty:pla)) (Marchiando, Craig) (Entered: 04/15/2021) |
| 04/15/2021 | 2 | CIVIL COVER SHEET filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 04/15/2021) |
| 04/15/2021 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 04/15/2021) |
| 04/15/2021 | 4 | CERTIFICATE of Interested Parties filed by Plaintiff Melissa Miller, (Marchiando, Craig) (Entered: 04/15/2021) |
| 04/15/2021 | 5 | NOTICE of Related Case(s) filed by Plaintiff Melissa Miller. Related Case(s): 8:20cv922; 8:21cv244; 8:21cv692 (Marchiando, Craig) (Entered: 04/15/2021) |
| 04/15/2021 | 6 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge Karen E. Scott. (et) (Entered: 04/15/2021) |

| 04/15/2021 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 04/15/2021) |
|---|---|---|
| 04/15/2021 | 8 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER upon filing of the complaint by Judge David O. Carter. (kd) (Entered: 04/15/2021) |
| 04/15/2021 | 9 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request 3 . The following error(s) was found: The Summons is addressed to the incorrect defendant. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (et) (Entered: 04/15/2021) |
| 04/16/2021 | 10 | Request for Clerk to Issue Summons on Notice of Deficiency in Request to Issue Summons, 9 , Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 04/16/2021) |
| 04/19/2021 | 11 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Nissan Motor Acceptance Corporation. (twdb) (Entered: 04/19/2021) |
| 05/03/2021 | 12 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 21-01-Related Case-filed. Related Case No: 8:20-cv-00922 JLS(KESx). Case transferred from Judge David O. Carter to Judge Josephine L. Staton for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:21-cv-00691 JLS(KESx). Signed by Judge Josephine L. Staton (rn) (Entered: 05/03/2021) |
| 05/05/2021 | 13 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON (mku) (Entered: 05/05/2021) |
| 05/27/2021 | 14 | STIPULATION Extending Time to Answer the complaint as to Nissan Motor Acceptance Corporation answer now due 6/15/2021, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant Nissan Motor Acceptance Corporation.(Attorney Michael D Van Lochem added to party Nissan Motor Acceptance Corporation(pty:dft))(Van Lochem, Michael) (Entered: 05/27/2021) |
| 06/14/2021 | 15 | ANSWER to Complaint (Attorney Civil Case Opening) 1 filed by Defendant Nissan Motor Acceptance Corporation.(Van Lochem, Michael) (Entered: 06/14/2021) |
| 06/15/2021 | 16 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Answer to Complaint filed by Defendant Nissan Motor Acceptance Corporation 15 . The following error(s) was/were found: (1) No Notice of Interested Parties and/or no copies. (2) Counsel must comply with Local Rule 7.1-1. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (jp) (Entered: 06/15/2021) |
| 06/16/2021 | 17 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS RE: Answer 15 by Judge Josephine L. Staton. In accordance with the Notice to Filer of Deficiencies in Electronically Filed Documents, it is hereby ORDERED that the document is accepted as filed. However, counsel must consult the Notice to Filer of Deficiencies 16 and file a Notice of Interested Parties no later than **June 23, 2021.** Failure to do so may result in the Answer being STRICKEN. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mku) TEXT ONLY ENTRY (Entered: 06/16/2021) |
| 06/16/2021 | 18 | ORDER SETTING RULE 26(f) SCHEDULING CONFERENCE by Judge Josephine L. Staton. Scheduling Conference set for 8/13/2021 at 10:30 a.m. See Order for details. (mku) (Entered: 06/16/2021) |
| 06/18/2021 | 19 | PROOF OF SERVICE Executed by Plaintiff Melissa Miller, upon Defendant Nissan |

| | | |
|---|---|---|
| | | Motor Acceptance Corporation served on 5/6/2021, answer due 6/15/2021. Service of the Summons and Complaint were executed upon Trudy Desbiens - Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by service on a domestic corporation, unincorporated association, or public entity.Original Summons NOT returned. (Marchiando, Craig) (Entered: 06/18/2021) |
| 06/21/2021 | 20 | INITIAL DISCLOSURE filed by Defendant Nissan Motor Acceptance Corporation (Van Lochem, Michael) (Entered: 06/21/2021) |
| 06/22/2021 | 21 | NOTICE of Interested Parties filed by Defendant Nissan Motor Acceptance Corporation, identifying Nissan Motor Acceptance Corporation, Nissan North America, Inc.. (Attachments: # 1 proof of service)(Van Lochem, Michael) (Entered: 06/22/2021) |
| 06/22/2021 | 22 | PROOF OF SERVICE filed by Defendant Nissan Motor Acceptance Corporation, re Answer to Complaint (Attorney Civil Case Opening) 15 served on 6/14/2021. (Van Lochem, Michael) (Entered: 06/22/2021) |
| 07/30/2021 | 23 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 3 days, filed by Defendant Nissan Motor Acceptance Corporation.. (Attachments: # 1 Exhibit)(Van Lochem, Michael) (Entered: 07/30/2021) |
| 08/11/2021 | 24 | MINUTES (In Chambers) SCHEDULING ORDER by Judge Josephine L. Staton: On the Court's own motion, the Scheduling Conference set for hearing 8/13/2021, is VACATED and the following schedule is set. Last Day to File a Motion to Add Parties or Amend Pleadings: 10/15/2021. Fact Discovery Cutoff: 3/19/2022. Last Day to Serve Initial Expert Reports: 3/19/2022. Last Day to File Motions (Excluding Daubert Motions and all other Motions in Limine): 3/19/2022. Last Day to Serve Rebuttal Expert Reports: 4/19/2022. Last Day to Conduct Settlement Proceedings: 5/10/2022. Expert Discovery Cutoff: 5/17/2022. Last Day to File Daubert Motions: 5/24/2022. Last Day to File Other Motions in Limine (Excluding Daubert Motions): 6/14/2022. Final Pretrial Conference set for 7/15/2022 at 10:30 AM. (See document for further information). (jp) (Entered: 08/12/2021) |
| 08/12/2021 | 25 | ORDER/REFERRAL to ADR Procedure No 2 by Judge Josephine L. Staton. Case ordered to Court Mediation Panel for mediation. ADR Proceeding to be held no later than May 10, 2022. (mku) (Entered: 08/12/2021) |
| 08/12/2021 | 26 | CIVIL TRIAL ORDER for cases assigned to Judge Josephine L. Staton. (mku) (Entered: 08/12/2021) |
| 10/06/2021 | 27 | NOTICE OF ASSIGNMENT of Panel Mediator. Mediator (ADR Panel) Frank Kaplan has been assigned to serve as Panel Mediator. (lst) (Entered: 10/06/2021) |
| 01/18/2022 | 28 | NOTICE OF MEDIATION DATE filed. Mediation set for February 17, 2022.(Kaplan, Frank) (Entered: 01/18/2022) |
| 02/07/2022 | 29 | [DOCUMENT STRICKEN PER DKT ENTRY NO. 32 ] - NOTICE OF MOTION AND MOTION of Non-Resident Attorney Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32745290) filed by Plaintiff Melissa Miller. (Attachments: # 1 Proposed Order) (Marchiando, Craig). Modified on 2/9/2022 (jp). (Entered: 02/07/2022) |
| 02/07/2022 | 30 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: NOTICE OF MOTION AND MOTION of Non-Resident Attorney Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32745290) 29 . The following error(s) was/were found: Incorrect event selected. Correct event is Appear Pro Hac Vice (G-64) Case information is incomplete. DJ and MJ initials missing on application and proposed order. Other error(s) with |

| | | |
|---|---|---|
| | | document(s): Document is not a noticed Motion, but an Application. (lt) (Entered: 02/07/2022) |
| 02/09/2022 | 31 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: NOTICE OF MOTION AND MOTION of Non-Resident Attorney Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32745290) 29 . The following error(s) was/were found: Local Rule 83-2.1.3.4 Local counsel does not maintain an office within the District. Other error(s) with document(s): CM has local counsel in Newport News, VA, application has local counsel in San Francisco and the California State Bar has attorney in Williamsburg, VA, none of which are within the District. (lt) (Entered: 02/09/2022) |
| 02/09/2022 | 32 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS RE: NOTICE OF MOTION AND MOTION of Non-Resident Attorney Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32745290) 29 by Clerk of Court to Judge Josephine L. Staton. The document is stricken and counsel is ordered to file an amended or corrected document by 2/23/2022. Counsel shall carefully consult the error(s) noted in the Notice of Deficiency 30 31 and re-file the complete applications by 2/23/2022. (jp) (Entered: 02/09/2022) |
| 02/22/2022 | 33 | Notice of Appearance or Withdrawal of Counsel: for attorney Devin H Fok counsel for Plaintiff Melissa Miller. Adding Devin Heng Fok as counsel of record for Melissa Miller for the reason indicated in the G-123 Notice. Filed by Plaintiff Melissa Miller. (Attorney Devin H Fok added to party Melissa Miller(pty:pla))(Fok, Devin) (Entered: 02/22/2022) |
| 02/22/2022 | 34 | APPLICATION of Non-Resident Attorney Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller (Pro Hac Vice Fee - $500.00 Previously Paid on 2/7/2022, Receipt No. 32745290) filed by plaintiff Melissa Miller. (Fok, Devin) (Entered: 02/22/2022) |
| 02/24/2022 | 35 | Text Only ORDER GRANTING Application of Non-Resident Leonard A. Bennett to Appear Pro Hac Vice on behalf of Plaintiff Melissa Miller 34 pursuant to the Courts directive. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dca) TEXT ONLY ENTRY (Entered: 02/24/2022) |
| 03/04/2022 | 36 | APPLICATION of Non-Resident Attorney Joseph A. Apatov to Appear Pro Hac Vice on behalf of Defendant Nissan Motor Acceptance Corporation (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32890648) filed by defendant Nissan Motor Acceptance Corporation. (Attachments: # 1 Proposed Order proposed order) (Van Lochem, Michael) (Entered: 03/04/2022) |
| 03/04/2022 | 37 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Joseph A. Apatov to Appear Pro Hac Vice on behalf of Defendant Nissan Motor Acceptance Corporation (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32890648) 36 . The following error(s) was/were found: Case information is incomplete. DJ and MJ initials missing on application and proposed order. See Dkt. 12. (lt) (Entered: 03/04/2022) |
| 03/07/2022 | 38 | Text Only ORDER GRANTING Application of Non-Resident Attorney Joseph A. Apatov to Appear Pro Hac Vice on behalf of Defendant Nissan Motor Acceptance Corporation (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32890648) 36 . Terminating APPLICATION of Non-Resident Attorney Joseph A. Apatov to Appear Pro Hac Vice on behalf of Defendant Nissan Motor Acceptance Corporation (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32890648) 36 pursuant to the Courts directive. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mku) TEXT ONLY ENTRY (Entered: 03/07/2022) |

| 03/07/2022 | 39 | TEXT ONLY ENTRY: NOTICE TO PARTIES by District Judge Josephine L. Staton - Effective Monday, March 21, 2022, Judge Josephine L. Staton will be located in the First Street U.S. Courthouse, Courtroom 8A, on the 8th floor, located at 350 W. 1st Street, Los Angeles, California 90012. All Court appearances shall be made in Courtroom 8A of the First Street U.S. Courthouse unless otherwise ordered by the Court. For additional information regarding mandatory chambers copies and the use of Zoom hearings in civil matters, please refer to Judge Staton's Procedures & Schedules Page on the Court's website: https://www.cacd.uscourts.gov/honorable-josephine-l-staton. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cbr) TEXT ONLY ENTRY (Entered: 03/07/2022) |
|---|---|---|
| 03/20/2022 | 40 | MEDIATION REPORT filed by Mediator (ADR Panel) Frank Kaplan: A mediation did not take place because the case settled before the session occurred.(Kaplan, Frank) (Entered: 03/20/2022) |
| 04/19/2022 | 41 | STIPULATION to Dismiss Case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) filed by Plaintiff Melissa Miller. (Attachments: # 1 Proposed Order)(Marchiando, Craig) (Entered: 04/19/2022) |
| 04/29/2022 | 42 | ORDER GRANTING Stipulation to Dismiss Action With Prejudice Pursuant to FRCP 41(a)(1)(A)(ii) (Doc. 41 ) by Judge Josephine L. Staton as follow: NMAC is dismissed from this action with prejudice pursuant to FRCP 41(a)(1)(A)(ii); The Parties shall bear their own fees and costs, including all attorneys' fees, incurred in connection with this action; and The Court shall retain jurisdiction for purpose of enforcing the terms of the settlement agreement entered into by the Parties. (Made JS-6. Case Terminated.) (jp) (Entered: 04/29/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/03/2022 08:46:01 | | | |
| **PACER Login:** | ma0935 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:21-cv-00691-JLS-KES End date: 6/3/2022 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

# EXHIBIT F

ACCO,(KESx),CLOSED,DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division – Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:21-cv-00244-JLS-KES

Melissa Miller v. State Farm Bank F.S.B.
Assigned to: Judge Josephine L. Staton
Referred to: Magistrate Judge Karen E. Scott
Related Case: 8:20-cv-00922-JLS-KES
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 02/05/2021
Date Terminated: 01/13/2022
Jury Demand: Both
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Melissa Miller**                              represented by  **Craig Carley Marchiando**
                                                Consumer Litigation Associates PC
                                                763 J Clyde Morris Boulevard Suite 1-A
                                                Newport News, VA 23601
                                                757-930-3660
                                                Fax: 757-257-3450
                                                Email: craig@clalegal.com
                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**State Farm Bank F.S.B.**                      represented by  **Sherman M Spitz**
                                                Berger Kahn ALC
                                                1 Park Plaza Suite 340
                                                Irvine, CA 92614
                                                949-474-1880
                                                Fax: 949-313-5029
                                                Email: sspitz@bergerkahn.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Heather C Whitmore**
                                                Berger Kahn
                                                2 Park Plaza Suite 650
                                                Irvine, CA 92614-8516
                                                949-474-1880
                                                Fax: 949-474-7265
                                                Email: hwhitmore@bergerkahn.com
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/05/2021 | 1 | COMPLAINT Receipt No: ACACDC-30422949 - Fee: $402, filed by Plaintiff Melissa Miller. (Attorney Craig Carley Marchiando added to party Melissa Miller(pty:pla)) (Marchiando, Craig) (Entered: 02/05/2021) |
| 02/05/2021 | 2 | CIVIL COVER SHEET filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: |

| | | 02/05/2021) |
|---|---|---|
| 02/05/2021 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Melissa Miller. (Marchiando, Craig) (Entered: 02/05/2021) |
| 02/08/2021 | 4 | NOTICE OF ASSIGNMENT to District Judge Cormac J. Carney and Magistrate Judge Karen E. Scott. (ghap) (Entered: 02/08/2021) |
| 02/08/2021 | 5 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 02/08/2021) |
| 02/08/2021 | 6 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant State Farm Bank F.S.B. (ghap) (Entered: 02/08/2021) |
| 02/08/2021 | 7 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Complaint (Attorney Civil Case Opening) 1 . The following error(s) was found: No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1-1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. (ghap) (Entered: 02/08/2021) |
| 02/12/2021 | 8 | CERTIFICATE of Interested Parties filed by Plaintiff Melissa Miller, (Marchiando, Craig) (Entered: 02/12/2021) |
| 03/29/2021 | 9 | STIPULATION Extending Time to Answer the complaint as to State Farm Bank F.S.B. answer now due 4/21/2021, filed by defendant State Farm Bank F.S.B..(Attorney Heather C Whitmore added to party State Farm Bank F.S.B.(pty:dft))(Whitmore, Heather) (Entered: 03/29/2021) |
| 04/13/2021 | 10 | PROOF OF SERVICE Executed by Plaintiff Melissa Miller, upon Defendant State Farm Bank F.S.B. served on 3/1/2021, answer due 4/21/2021. Service of the Summons and Complaint were executed upon Sally Olsen - Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by personal service.Original Summons returned. (Marchiando, Craig) (Entered: 04/13/2021) |
| 04/14/2021 | 11 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Service of Summons and Complaint Returned Executed (21 days), 10 . The following error(s) was/were found: Title page is missing. Other error(s) with document(s): The year in the case number is (21), Correct case number 8:21-CV-244. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (twdb) (Entered: 04/14/2021) |
| 04/22/2021 | 12 | ANSWER to Complaint (Attorney Civil Case Opening) 1 with JURY DEMAND filed by Defendant State Farm Bank F.S.B..(Whitmore, Heather) (Entered: 04/22/2021) |
| 04/22/2021 | 13 | NOTICE of Interested Parties filed by Defendant State Farm Bank F.S.B., identifying State Farm Mutual Automobile Insurance Company. (Whitmore, Heather) (Entered: 04/22/2021) |
| 04/27/2021 | 14 | ORDER TO REASSIGN CASE due to self-recusal pursuant to General Order 21-01 by Judge Cormac J. Carney. Case transferred from Judge Cormac J. Carney to the calendar of Judge James V. Selna for all further proceedings. Case number now reads as 8:21-cv-00244-JVS-KES. (rrp) (Entered: 04/27/2021) |
| 04/28/2021 | 15 | ORDER RETURNING CASE FOR REASSIGNMENT by Judge James V. Selna. ORDER case returned to the Clerk for random reassignment pursuant to General Order 21-01. Case randomly reassigned from Judge James V. Selna to Judge David O. Carter for all further |

| | | |
|---|---|---|
| | | proceedings. The case number will now reflect the initials of the transferee Judge 8:21-cv-00244-DOC-KES. (rrp) (Entered: 04/28/2021) |
| 04/30/2021 | 16 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER. (kd) (Entered: 04/30/2021) |
| 05/03/2021 | 17 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 21-01-Related Case-filed. Related Case No: 8:20-cv-00922 JLS(KESx). Case transferred from Judge David O. Carter to Judge Josephine L. Staton for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:21-cv-00244 JLS(KESx). Signed by Judge Josephine L. Staton (rn) (Entered: 05/03/2021) |
| 05/05/2021 | 18 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON (mku) (Entered: 05/05/2021) |
| 05/05/2021 | 19 | ORDER SETTING RULE 26(f) SCHEDULING CONFERENCE by Judge Josephine L. Staton. Scheduling Conference set for 7/9/2021 at 10:30 a.m. See Order for details. (mku) (Entered: 05/05/2021) |
| 06/24/2021 | 20 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 3, filed by Plaintiff Melissa Miller.. (Attachments: # 1 Exhibit A)(Marchiando, Craig) (Entered: 06/24/2021) |
| 07/07/2021 | 21 | MINUTES (In Chambers) SCHEDULING ORDER by Judge Josephine L. Staton: On the Court's own motion, the Scheduling Conference set for hearing 7/9/2021, is VACATED and the following schedule is set. Last Day to File a Motion to Add Parties or Amend Pleadings: 9/7/2021. Fact Discovery Cutoff: 1/28/2022. Last Day to Serve Initial Expert Reports: 2/11/2022. Last Day to File Motions (Excluding Daubert Motions and all other Motions in Limine): 3/16/2022. Last Day to Serve Rebuttal Expert Reports: 3/11/2022. Last Day to Conduct Settlement Proceedings: 4/8/2022. Expert Discovery Cutoff: 4/15/2022. Last Day to File Daubert Motions: 4/22/2022. Last Day to File Other Motions in Limine (Excluding Daubert Motions): 5/13/2022. Final Pretrial Conference set for 6/10/2022 at 10:30 AM. (See document for further information). (jp) (Entered: 07/07/2021) |
| 07/07/2021 | 22 | ORDER/REFERRAL to ADR Procedure No 3 by Judge Josephine L. Staton. Case ordered to a private mediator based upon a stipulation of the parties or by the court order. ADR Proceeding to be held no later than April 8, 2022. (mku) (Entered: 07/07/2021) |
| 07/07/2021 | 23 | CIVIL TRIAL ORDER for cases assigned to Judge Josephine L. Staton. (mku) (Entered: 07/07/2021) |
| 01/12/2022 | 24 | STIPULATION to Dismiss Case pursuant to Settled-Dismissal with Prejudice filed by Plaintiff Melissa Miller.(Marchiando, Craig) (Entered: 01/12/2022) |
| 01/13/2022 | 25 | MINUTE (IN CHAMBERS) ORDER DISMISSING ACTION ON STIPULATION TO DISMISS WITH PREJUDICE by Judge Josephine L. Staton: The Court, having been advised that this action has been resolved by a Stipulation to dismiss 24 , hereby orders this action dismissed with prejudice. The Court hereby orders all proceedings in the case vacated and taken off calendar. (Made JS-6. Case Terminated. (jp) (Entered: 01/13/2022) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/21/2022 11:33:15 | | | |
| **PACER Login:** | Bjc4751207 | **Client Code:** | Miller v. WFS |

| Description: | Docket Report | Search Criteria: | 8:21-cv-00244-JLS-KES End date: 1/21/2022 |
|---|---|---|---|
| Billable Pages: | 4 | Cost: | 0.40 |

## CERTIFICATE OF SERVICE

### *Melissa Miller v. Westlake Services, LLC.*
Case Number. 8:21-cv-00692-JLS-KES

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.

On October 7, 2022, I served a true copy of the within **REQUEST FOR JUDICIAL NOTICE** on interested parties:

[ ] By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[ ] By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following;

[ ] By emailing it via Federal Rule of Civil Procedure 5(b)(2)(D), per stipulation of parties to all parties/persons appearing on the Service List.

[X] By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct under the law of the United States of America.  Executed this 7th day of October 2022 Los Angeles, California.

_____
Beverly Langworthy

4

REQUEST FOR JUDICIAL NOTICE

## SERVICE LIST

Craig C. Marchiando, Esq.                craig@clalegal.com
Leonard Bennett, Esq.                    lenbennett@clalegal.com
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601


Octavio Gomez, Esq.                      tav@theconsumerlawyers.com
The Consumer Lawyers PLLC
3210 W. Cypress Street
Tampa, Florida 33607


Matthew M. Loker                         matt@loker.law
Loker Law APC
1303 East Grand Ave, Suite 101
Arroyo Grande, California 93420

5