Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### Southern Division

| | |
|---|---|
| **MELISSA MILLER,** | **Case No.: 8:21-CV-00692** |
| **Plaintiff,** | Honorable Josephine Staton |
| **v.** | |
| | **PLAINTIFF'S RESPONSES TO DEFENDANT'S STATED FACTS** |
| **WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES,** | |
| **Defendant.** | **Hearing date:** Oct. 28, 2022<br>**Time:** 10:30 a.m.<br>**Location:** Courtroom 8A |

Plaintiff Melissa Miller submits these responses to what she interprets to be Westlake's responsive Statement of Uncontroverted Facts as anticipated by Section 9.c.i. of the Court's Standing Order (ECF 10). Because Westlake has not followed the Standing Order's formatting protocols, Plaintiff cannot definitively identify what facts in the declaration of Tracy Bergiman (ECF 55-3) (or anywhere else) Westlake will claim are undisputed. Plaintiff therefore responds to Mr. Bergiman's statements as set forth below.

| **BERGIMAN'S FACTS:** | **PLAINTIFF'S RESPONSES AND SUPPORTING EVIDENCE:** |
|---|---|
| 1. I am an employee of Westlake Services, LLC, dba Westlake Financial Services | **Undisputed.** |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| ("Westlake"). I have been employed at Westlake since approximately 2015. I am presently Director of Compliance. If called upon to testify to the contest of this declaration, I could and would competently do so based upon my personal knowledge | |
| 2. Westlake is in the business of purchasing and taking assignment of retail installment contracts for the sale of automobiles. | **Undisputed.** |
| 3. When Westlake is offered an automobile sales contract, it will involve a dealer that Westlake has an original contractual relationship with. | **Undisputed.** |
| 4. The dealer sends personal identifying documents to Westlake such as those identified during the purchase of subject vehicle. | **Undisputed.** |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| 5. This documentation is verified through its proprietary algorithm. | **Disputed** because it is not clear what "[t]his documentation" entails. |
| 6. There is also a customer welcome call to verify that electronic signatures and to other purchaser identification information. | **Disputed** as suggesting such a call went to Plaintiff. Here, Westlake called the fraudster's phone number.<br><br>WFS00323<br>(Marchiando 2d Decl. Ex. 3) |
| 7. Westlake also employs a fraud shield alert. | **Disputed** that Westlake uses Fraud Shield as any way of vetting an application or in its investigations.<br><br>Westlake 30(b)(6) Dep. at 67:1–69:24<br>(Marchiando 2d Decl. Ex. 1)<br><br>Westlake's Rule 30(b)(6) witness testified that Westlake did not know what most of the Fraud Shield entries on the report it produced in this case meant.<br><br>Westlake 30(b)(6) Dep. at 67: 14–21; 69: 12–24.<br>(Marchiando 2d Decl. Ex. 1) |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| 8. All fraud alerts must be cleared by the underwrites before Westlake purchases these alerts that must be cleared before a sales contract can be purchased by Westlake.  This process occurs hundreds of times a day. | **Undisputed.** |
| 9. All of these procedures were followed in this case. | **Disputed** because it is unclear what "all of these procedures" encompasses. |
| 10. I attached to this Declaration 20 Exhibits in support of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. | **Undisputed.** |
| 11. Westlake purchased the contract and in the regular course of its business set up an account file. | **Undisputed.** |
| 12. The Contract purchased by Westlake was signed by Melissa Hamilton, which is, upon information and belief, Plaintiff Melissa Miller's ("Plaintiff") maiden name. | **Disputed.**<br><br>Plaintiff never signed the contract.<br><br>Miller Dep. at 57: 6–9, 60: 5–9<br>    (Marchiando 2d Decl.  Ex. 2) |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| 13. Westlake waives the verification of consumer references based on a number of factors. | **Undisputed.** |
| 14. The procedure employed by Westlake upon receiving a dispute from a CRA is to upload all relevant documents including account notes. | **Disputed.**<br>Agents do not have the ability to review previous disputes.<br>Mata Dep. at 74:14–17, 76: 4–7, 18–19<br>    (Marchiando 2d Decl. Ex. 4)<br><br>Agents lack the ability to listen to recording.<br>Mata Dep. at 116: 22-25; 117: 1–7<br>    (Marchiando 2d Decl. Ex. 4)<br>Cruz Dep. at 90:16–20<br>    (Marchiando 2d Decl. Ex. 5)<br><br>Agents have no access to underlying transactions, to call or email consumers.<br>Mata Dep. at 11: 13–21.<br>    (Marchiando 2d Decl. Ex. 4)<br><br>Westlake employees do not look at OSFLL account notes during the investigation. |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| | Campos Dep. at 53:14–23, 57:17-22, 58:1–2; 75:19–23; 76:13–17<br><br>    (Marchiando 2d Decl. Ex. 6)<br>Cruz Dep. at 81: 3-9<br><br>    (Marchiando 2d Decl. Ex. 5)<br><br><br>Westlake employees do not read the dispute letters. They scan for police reports or affidavits.<br>Campos Dep. at 12–17<br><br>    (Marchiando 2d Decl. Ex. 6) |
| 15. Westlake does not close these indirect disputes without a complete review of the file documents. | **Disputed.**<br>Westlake responds to the CRAs while still conducting an investigation.<br>Rule 30(b)(6) Dep. at 280:11–20<br><br>    (Marchiando 2d Decl. Ex. 1)<br> Campos at 53:25; 56: 1-8.<br><br>    (Marchiando 2d Decl. Ex. 6)<br><br><br>Jose Mata testified that he cannot close out a dispute unless he clicks on every document, but he does not review dispute letters for substance.<br>Mata Dep. at 86:25–87:19<br><br>    (Marchiando 2d Decl. Ex. 4) |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| | Westlake employees do not completely review the OSFLL account notes during the investigation. Campos Dep. at 53:14–23, 57:17–22, 58:1–2, 75:19-23, 76:13–17<br><br>   (Marchiando 2d Decl. Ex. 6)<br>Cruz Dep. at 81:3–9<br>   (Marchiando 2d Decl. Ex. 5)<br><br>Westlake employees do not read the dispute letters. They scan for police reports or affidavits. Campos Dep. at 85:12–17<br>   (Marchiando 2d Decl. Ex. 6) |
| 16. Westlake does not reply [sic] on its own records alone but matches those records to those of the CRAs. | **Disputed.**<br>Westlake simply matches the information they initially produced to the CRAs. Campos Dep. at 85:18–25 86:1–14<br>   (Marchiando 2d Decl. Ex. 6)<br><br>Further disputed because Westlake fails to identify what CRA records Mr. Bergiman references. |
| 17. Westlake did not receive, any of the alleged police reports filed with the Huntington | **Disputed.**<br>Plaintiff's disputes letters included police report numbers (2018-601027, |

| | |
|---|---|
| Beach Police Department or the report filed with the FTC. | T18001230, 2020-001696), a phone number for officer Katelyn Jordan (ID #423024) and FTC Report number (109743860). |
| | WFS 220–24 |
| |     (Marchiando 2d Decl. Ex. 7) |
| | WFS 225–30 |
| |     (Marchiando 2d Decl. Ex. 8) |
| | WFS 231–36 |
| |     (Marchiando 2d Decl. Ex. 9) |
| | WFS 237–44 |
| |     (Marchiando 2d Decl. Ex. 10) |
| | WFS 245–52 |
| |     (Marchiando 2d Decl. Ex. 11) |
| | |
| | Plaintiff's disputes included images of a police report and Westlake agent testified, if she was reviewing the dispute today, she would have sent it to legal department. |
| | |
| | Campos Dep. at 78:1–12 |
| |     (Marchiando 2d Decl. Ex. 6) |
| | |
| | WFS000154 |
| |     (Marchiando 2d Decl. Ex. 12) |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| 18. Although Plaintiff claims she mailed the completed Identity Theft Affidavit back to Westlake, Westlake did not receive any such response. | **Disputed.** Plaintiff mailed the Identity Theft Affidavit to Westlake. Miller Dep. at 81:20–25, 86:1–6, 86:18–24 <br><br> (Marchiando 2d Decl.  Ex. 2) |
|---|---|
| 19. Westlake called the cell phone number pursuant to the caller ID of the purported Huntington Beach Police Department detective and it is not associated with the Huntington Beach Police Department. | **Disputed.** Westlake never called back the Huntington Beach Police Detective at (310) 437 7570 prior to June 2022 Notes at WFS 00010–20 <br><br> (Marchiando 2d Decl.  Ex. 13) <br><br> There is no evidence of the record of Westlake calling the phone number during the relevant time. Rule 30(b)(6) Dep. at 210:3–25, 211:1–9 <br><br> (Marchiando 2d Decl.  Ex. 1) |
| 20. Westlake has credit dispute analysts who conduct cursory reviews of discovery.  These analysts, upon receipt of the proper documentation, escalate these disputes to Westlake's legal department, whom | **Undisputed.** |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| conduct an investigation of identity theft disputes. | |
| 21. Jose Mata is a Credit Dispute Analyst at Westlake. | **Undisputed.** |
| 22. Identity theft affidavits are not the only document that triggers the escalation of an identity theft dispute to the legal department for further investigation.  Police reports also trigger an escalation, as well as documents where the consumer swears under penalty of perjury.  Westlake must receive more than a simple statement from an individual claiming she disputes her charges and/or account. | **Disputed.**<br><br>Plaintiff's disputes included images of a police report, and Westlake's dispute investigator testified, that it warranted escalation to the legal department. Campos Dep. at 78:1–12<br>    (Marchiando 2d Decl.  Ex. 6)<br>WFS000154<br>    (Marchiando 2d Decl.  Ex. 12) |
| 23. Westlake credit dispute analysts do not themselves call or email the disputing consumer, police or F.T.C., however, Westlake's legal department do so for identity theft disputes. | **Disputed** as suggesting any of this took place as to Plaintiff's disputes. Westlake presents no evidence of that. |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| 24. Westlake's legal department handle identity theft disputes, including obtaining separate reports about the disputing consumer, using the internet to conduct their investigation, researching the dealer from whom the contract originated, and contacting any individual they need to. | **Disputed** as suggesting any of this took place as to Plaintiff's disputes. Westlake presents no evidence of that. |
| 25. The December 4, 2019 phone call was the first time Westlake heard of alleged identity theft on the account. | **Disputed.** There were several "alerts for fraud" prior to the December 4, 2019, phone call. <br><br> The application address was flagged with "Fraud Alert". <br> Rule 30(b)(6) Dep. at 68:22–25, 69:1–8, 75:20–25, 76: 1–2, 206:12–25 <br> (Marchiando 2d Decl. Ex. 1) <br><br> The application address was a shopping center and not a residence. <br> Rule 30(b)(6) Dep. at 109:3–8, 111:4–9, 112:18–23 <br> (Marchiando 2d Decl. Ex. 1) |

| | |
|---|---|
| | The application was also flagged because the Social Security Number was linked to multiple people.<br>Rule 30(b)(6) Dep. at 88:12–25, 89:1–3, 100:12–25, 101:1–5<br>(Marchiando 2d Decl.  Ex. 1) |
| 26. Westlake did not end up hearing from Ms. Miller's attorneys after the call on December 13, 2019 until the filing of this present lawsuit. | **Undisputed.** |
| 27. Since Westlake did not hear from Counsel for an extended period of time, its reporting to the CRAs was accurate to the best of its knowledge upon its investigation. | **Disputed.**<br>This states a legal conclusion regarding the investigations, and only refers to a single investigation. Plaintiff made multiple disputes, and this statement does not clarify to which "investigation" it is aimed.<br>Further, nothing in the record indicates that a discussion with counsel would have made any difference in the conducting of Westlake's investigations. |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| 28. Westlake made it clear to Plaintiff that it could do nothing with those provided by the CRA's during transmittal of the dispute. | **Disputed.** This statement is unintelligible, and does not explain the way in which Westlake supposedly made anything "clear" to Plaintiff. |
| 29. Westlake did not repeatedly contact Plaintiff. | **Disputed.** Plaintiff received calls from Westlake on her cell phone while at work. Miller Dep. at 130:19–25 131:1–2 (Marchiando 2d Decl. Ex. 2) Also disputed as lacking support for how Mr. Bergiman know this fact. |
| 30. Plaintiff never requested that Westlake cease contacting her. | **Disputed.** Plaintiff asked Westlake to stop calling. Miller Dep. at 131:3–7 (Marchiando 2d Decl. Ex. 2) Also disputed as lacking support for how Mr. Bergiman know this fact. |
| 31. Plaintiff never provided an alternate phone number to call. | **Disputed.** Plaintiff's dispute letters provided her correct phone number. WFS 220–24 (Marchiando 2d Decl. Ex. 7) WFS 225–30 |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| | (Marchiando 2d Decl. Ex. 8)<br><br>WFS 231–36<br><br>(Marchiando 2d Decl. Ex. 9)<br><br>WFS 237–44<br><br>(Marchiando 2d Decl. Ex. 10)<br><br>WFS 245–52<br><br>(Marchiando 2d Decl. Ex. 11) |
| 32. Plaintiff never explicitly told Westlake not to call her work phone number. | **Undisputed.** |
| 33. If Plaintiff had provided requested documents requested including her driver's license, a complete police report, proof of residency and the affidavit of identity theft the case would potentially have been closed long ago. | **Disputed** because Plaintiff provided much of this information to Westlake before its letter requesting it. Plaintiff's disputes which included police report numbers (2018-601027, T18001230, 2020-001696), a phone number for officer Katelyn Jordan (ID #423024) and FTC Report number (109743860). Plaintiff also included an insurance bill to establish her residency.<br><br>WFS 220–24<br><br>(Marchiando 2d Decl. Ex. 7)<br><br>WFS 225–30<br><br>(Marchiando 2d Decl. Ex. 8)<br><br>WFS 231–36 |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| | (Marchiando 2d Decl.  Ex. 9)<br><br>WFS 237–44<br><br>    (Marchiando 2d Decl.  Ex. 10)<br><br>WFS 245–52<br><br>    (Marchiando 2d Decl.  Ex. 11) |
| 34. I oversee the individuals that work with Sonnet Application daily and did not work on Plaintiff's application personally. | **Undisputed.** |
| 35. Westlake's credit dispute analysts are provided numerous training opportunities through their course of employment with Westlake.  Specifically, each dispute is utilized as an opportunity for continued training in addition to case decision, industry updates and webinars are deployed as needed to provide further training. | **Disputed.**<br><br>Jose Mata could not remember the last time anyone sat with him to teach the role.<br><br>Mata Dep. at 26:15–25, 27:1–7<br><br>    (Marchiando 2d Decl.  Ex. 4)<br><br>He also does not remember or know if he was ever trained as to the term "identity theft."<br><br>Mata Dep. at 114:17–25<br><br>    (Marchiando 2d Decl.  Ex. 4)<br><br>Ms. Campos has never heard of anyone (including her) being disciplined for improperly responding to a dispute. |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

| | |
|---|---|
| | Campos Dep. at 93:24–25, 94:1–8<br><br>(Marchiando 2d Decl. Ex. 6) |
| 36. Westlake dispute investigation procedures are drafted by its Legal and Compliance department based on review of applicable statutes and cases | **Disputed.**<br>The CDIA Resource Guide and the Fair Credit Reporting Act are the two resources Westlake's Rule 30(b)(6) witness identified, and Westlake did not know if any court decisions were considered.<br>Rule 30(b)(6) Dep. Vol. II at 36:1–19<br>(Marchiando 2d Decl. Ex. 14)<br><br>Also disputed because Westlake does not identify what the "applicable statutes and cases are," and how its review of those informs its investigation procedures. |
| 37. Westlake uses the Credit Reporting Resources Guide as a guide, and does not base its dispute investigating procedures on this guide. | **Disputed**<br>The CDIA Resource Guide and the Fair Credit Reporting Act are the two resources Westlake's Rule 30(b)(6) witness identified, and Westlake did not know if any court decisions were considered.<br>Rule 30(b)(6) Dep. Vol. II at 36:1–19 |

PLT.'S RESPONSES TO DEFENDANT'S FACTS

|  | (Marchiando 2d Decl.  Ex. 14) |
|---|---|

October 14, 2022

Respectfully submitted,

**MELISSA MILLER,**

By:   _/s/ Craig C. Marchiando_
Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel.: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

Octavio Gomez (*pro hac vice*)
**THE CONSUMER LAWYERS**
412 E. Madison #916
Tampa, FL 33602
Phone: 844-855-9000
Mobile: 813 299 8537
Fax:    844-951-3933
Email:  Tav@TheConsumerLawyers.com

*Counsel for Plaintiff*

PLT.'S RESPONSES TO DEFENDANT'S FACTS