UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| V.R. Vallery | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:
          Not Present                                                      Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER GRANTING IN PART AND
                                DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL
                                SUMMARY JUDGMENT (Doc. 50)**

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Melissa Miller.  (Mot., Doc. 50, Mem., Doc. 53).  Defendant Westlake Services, LLC opposed (Opp., Doc. 55), and Plaintiff replied (Reply, Doc. 60).  Having considered the parties' briefs and held oral argument, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for the reasons stated below.

## I.   BACKGROUND[1]

Defendant purchases vehicle-sale contracts from dealerships.  (Defendant's Response to Plaintiff's Separate Statement of Undisputed Material Facts ("Def.'s Response") ¶ 1, Doc. 56.)  A dealership presents a particular loan to five or six companies like Defendant, who then "fight over" who will purchase it.  (*Id.* ¶ 2.)

On July 1, 2019, someone used Plaintiff's personal identifying information to apply for financing to purchase a 2015 Ford Fusion.  (*Id.* ¶ 3.)  Plaintiff claims that she

---

[1] As an initial matter, the Court addresses Defendant's numerous, largely boilerplate evidentiary objections.  (*See* Doc. 56.)  In such instances, it is "unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  To the extent that the Court relies on objected-to evidence, the relevant objections are overruled.  *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010).

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

was a victim of identity theft: she did not purchase the vehicle, did not direct anyone to do so, and did not provide her personal information to anyone so that they could purchase a vehicle.  (*Id.* ¶ 16.)  Plaintiff also claims that she has never owned a Ford Fusion and did not apply for credit to finance the purchase of a Ford Fusion.  (*Id.* ¶¶ 8, 17.)  The applicant used Plaintiff's maiden name, Melissa Hamilton, her Social Security Number, employment information, and a copy of her driver's license to fill out the credit application.  (*Id.* ¶ 4.)  The address on the application, 6817 Atlantic Avenue, Long Beach, did not match the address on the driver's license and is the address of a shopping center—not a residential address.  (*Id.* ¶ 5.)  Plaintiff also claims that the email addresses listed on the application were not her email addresses.  (*Id.* ¶ 19.)  Other information on the credit application form and associated employment verification form was accurate, however: Plaintiff's job title, her employer's address, and her phone number were accurate.  (*Id.* ¶¶ 3–3, 8.)  Defendant received a credit report purportedly about Plaintiff from Experian with the same incorrect address and several entries flagging potential fraud, including: (1) "SSN used 12 times since 4-1-19"; (2) "(01) Inquiry/On-file current address conflict"; (3) "(09) More than 3 inquiries in the last 30 days"; (4) "(10) Inquiry address: ALERT"; and (5) "(17) On-file address: Non-residential."  (*Id.* ¶¶ 12–14.)

Plaintiff claims that she never made any payments on the account and that she never received any correspondence or communications about the account from Defendant.  (*Id.* ¶¶ 8, 17.)  Plaintiff also claims that she first learned of the account in her name while reviewing her credit reports in the fall of 2019 (*Id.* ¶¶ 22–23.)  Defendant had reported to credit reporting agencies ("CRAs") that the account belonged to Plaintiff and had a delinquent payment history.  (*Id.* ¶ 24.)  Defendant also later reported the account as a charge-off.  (*Id.* ¶ 25.)

On December 4, 2019, Plaintiff placed a phone call to Defendant to explain that the account was not hers and was the product of identity theft.  (*Id.* ¶ 26.)  During that phone call, Defendant's representative told Plaintiff that her identity theft claims would be escalated to Defendant's legal department once Plaintiff submitted an affidavit of identity theft.  (*Id.*; Bergiman Decl. Ex. LL at 2:6–18, 3:3–17, 5:17–20, Doc. 55-3.)  On

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

December 13, 2019, one of Defendant's employees called Plaintiff regarding missed payments on the account.  (Def.'s Response ¶ 26.)  During that phone call, the employee told Plaintiff that, to escalate her identity theft claim, she would have to "send [Defendant] something in writing, a police report."  (Bergiman Decl. Ex. MM at 3:25–4:1, Doc. 55-3.)  Plaintiff responded that her lawyer would reach out to Defendant and stated: "When I called you guys to let you guys know, you told me I had to do a police report and all these things, like it was my fault." (*Id.* at 4:2–5:6.)  The employee told Plaintiff that collection activity on the account would continue until Plaintiff provided the requested documentation—*i.e.*, a police report or affidavit of identify theft—supporting her claim of identity theft or her lawyer's contact information.  (*Id.* at 6:13–9:3.)  Plaintiff responded: "I am not sending it to you.  My lawyer will send it to you." (*Id.* at 9:5–6.)  Defendant claims that it did not hear from Plaintiff's attorneys until this lawsuit was filed.  (Opp. at 10–11; Bergiman Decl. ¶ 27, Doc. 55-3.)

Aside from the two phone conversations, Plaintiff has testified that she sent Defendant an affidavit of identity theft, though Defendant denies having received it. (Def.'s Response ¶ 27; Marchiando Reply Decl. Ex. 2 (Miller Dep. Tr.) at 81:8-24, Doc. 62-2.)  Plaintiff also filed three reports with the Huntington Beach Police Department and another report with the Federal Trade Commission.  (Def.'s Response ¶ 27.)  Defendant claims that it never received copies of any of those reports.  (Bergiman Decl. ¶ 17.)  Plaintiff also claims that a detective from the Huntington Beach Police Department called Defendant and explained that Plaintiff was the victim of identity theft. (Def.'s Response ¶ 28.)  Defendant disputes that the caller was a detective from the Huntington Beach Police Department, noting that: (1) the detective did not identify himself; (2) did not call with Plaintiff on the line; and (3) placed the call from a number not associated with the Huntington Beach Police Department.  (Opp. at 7; Bergiman Decl. ¶ 19 & Ex. NN, Doc. 55-3.)  Defendant's internal notes do not indicate any doubt that the caller was a detective, however: an entry dated January 16, 2020 identifies the caller as "DETECTIVE FROM HUNTINGTON BEACH" and notes "HE WOULD LIKE US TO DOCUMENT ON THE ACCT WAS FRAUDULET PURCHASED [*sic*] AND A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                           Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

VICTIM OF IDENTITY THEFT."  (Marchiando Decl. Ex. 26 (Account Notes) at WFS000013, Doc. 51-26.)

In January and February 2020, Plaintiff sent credit reporting dispute letters to the three major CRAs—Equifax, Experian, and TransUnion—and the CRAs forwarded the letters to Defendant.  (Def.'s Response ¶ 29; Opp. at 11.)  Each letter states that Plaintiff did not open the account that Defendant was attributing to her, and later letters informed Defendant of the three reports she filed with the Huntington Beach Police Department, the report identification numbers, and the identification number of the report she filed with the Federal Trade Commission.  (Def.'s Response ¶ 30.)  The letters also contain copies of Plaintiff's Social Security Card, driver's license, and a letter confirming her mailing address, and other statements of additional identifying information.  (*Id.* ¶ 31.)  In a later credit dispute letter, Plaintiff included cover pages of the police reports and contact information for Huntington Beach police officers Defendant could speak to about the reports.  (*Id.* ¶ 32.)  Several of Plaintiff's disputes were coded "103: claims true identity fraud/account fraudulently opened."  (*Id.* ¶ 42.)

Defendant receives credit reporting disputes through communications known as Automated Consumer Dispute Verifications ("ACDVs"), which the CRAs transmit through an electronic system called e-OSCAR.  (*Id.* ¶ 34.)  Defendant employs credit dispute analysts, who use a system called Sonnet to view ACDVs.  (*Id.* ¶ 35.)  The ACDVs that Defendant received regarding Plaintiff's disputes included as attachments the dispute letters that Plaintiff sent the CRAs.  (*Id.* ¶ 39.)  Credit dispute analysts reviewing ACDVs have access to detailed notes on accounts, and those notes address, among other things, communications between Defendant and consumer accountholders.  (*Id.* ¶ 36.)  The notes for the account Defendant attributed to Plaintiff included notations for the calls during which Plaintiff claimed the account resulted from identity theft and the purported call from the Huntington Beach Police Department detective. (*Id.* ¶ 37.)  Karen Campos and Jose Mata, the analysts who reviewed Plaintiff's disputes here, testified that they did not consult Defendant's internal notes on Plaintiff's account when they reviewed and responded to the ACDVs.  (Marchiando Decl. Ex. 27 (Mata Dep. Tr.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

at 92:1–14, Doc. 51-27; Marchiando Reply Decl. Ex. 6 (Campos Dep. Tr.) at 75:19–25, 76:13–17, Doc. 62-6.)

According to Plaintiff, Defendant's credit dispute analysts' investigations of disputes like Plaintiff's are minimal.  (Mem. at 5.)  Defendant concedes that credit dispute analysts "conduct cursory reviews" of ACDVs, but adds that the analysts escalate disputes to Defendant's legal department upon receipt of supporting documentation, such as an affidavit of identity theft, a police report, or a sworn statement from the disputing consumer.  (Bergiman Decl. ¶¶ 20, 22.)  Credit dispute analysts do not contact disputing consumers, police, or the Federal Trade Commission, though Defendant's legal department may do so if a dispute is escalated.  (*Id.* ¶ 23.)

Defendant's credit dispute analysts are significantly restricted in what they do as part of an investigation.  Credit dispute analysts do not review prior disputes from a consumer when reviewing an ACDV.  (Def.'s Response ¶ 56.)  Further, these analysts generally do not review account notes in Defendant's system or contact consumers.  (*Id.* ¶¶ 57–58.)  Nor do they obtain separate reports about the disputing consumer, like a skip-trace or LexisNexis report or use the internet to conduct additional research pertinent to the dispute.  (*Id.* ¶¶ 59–60.)  Last, they do not contact dealers from whom contracts originated or other personnel employed by Defendant for additional information.  (*Id.* ¶¶ 61–62.)  Defendant claims that, while credit dispute analysts do not perform these investigative tasks, members of the legal department tasked with investigating identity theft disputes do once a dispute is escalated.  (*Id.* ¶¶ 56–62.)

Plaintiff claims that Defendant's credit dispute analysts' training is deficient.  First, Plaintiff claims that these analysts undergo receive only a four-hour online training session every two years.  (*Id.* ¶ 70.)  Defendant counters that the analysts receive additional training throughout their employment, which includes briefing on relevant cases, industry updates, and webinars.  (Bergiman Decl. ¶ 35.)  Plaintiff also claims, and Defendant does not dispute, that credit dispute analysts do not need to pass Consumer Data Industry Association ("CDIA") training to work as analysts for Defendant.  (Def.'s

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                              Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

Response ¶ 72.)  Defendant's credit dispute analysts can fail the training and continue to work with Defendant, and there is no limit on the number of times an individual can fail and continue working as an analyst.  (*Id.* ¶ 72.)

Jose Mata, one of the credit dispute analysts who reviewed Plaintiff's disputes, testified in deposition that his review of the ACDVs related to Plaintiff's account consisted of comparing the identifying information in the in the ACDV—name, date of birth, Social Security Number, address, and account status—with the information in those same categories in Defendant's records.  (*Id.* ¶ 38; Marchiando Decl. Ex. 27 (Mata Dep. Tr.) at 79:11–23, 89:24–90:20.)  Mata also testified that he did not review the substance of the letters attached to the ACDVs for Plaintiff's disputes and would not use the information in the letters unless they included an affidavit of identity theft.  (Marchiando Decl. Ex. 27 (Mata Dep. Tr.) at 87:7–19, 99:12–22, 109:7–12.)  Last, Mata testified that his best estimate of the pace at which he investigates disputes is ten per hour, spending about six minutes on each dispute.  (*Id.* at 50:19–51:10.)  Karen Campos, another credit dispute analyst who reviewed ACDVs related to Plaintiff's disputes, testified in deposition that she would "scan" letters attached to ACDVs for "helpful information" and forward the disputes to the legal department if they included a police report.  (Marchiando Decl. Ex. 36 (Campos Dep. Tr.) at 77:8–25, Doc. 51-36.)  Defendant does not dispute that the credit dispute analysts who reviewed the ACDVs related to Plaintiff's disputes verified the account as belonging to Plaintiff to the CRAs.  (Def.'s Response ¶ 81.)

Credit dispute analysts generally do not forward identity theft disputes to the legal department unless they include an affidavit of identity theft or a police report.  (*Id.* ¶ 46.)  Even when a credit dispute analyst escalates an identity theft dispute to the legal department as potentially legitimate, he or she responds back to the CRAs that Defendant has verified as accurate the reporting of the account if the information in the ACDVs matches the information in Defendant's records.  (*Id.* ¶ 49.)  Defendant's director of compliance, Tracy Bergiman, confirmed this in his deposition as Defendant's Rule 30(b)(6) designee: "Q.[E]ven if [a dispute is] escalated to a[] legal department

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                           Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

investigation, you still respond to e-OSCAR as verified, right? A. Correct." (Marchiando Decl. Ex. 1 (Bergiman Dep. Tr. Vol. I) at 281:7–10, Doc. 51-1.)  Campos also testified in deposition that she would verify a disputed account as accurate even if she escalated the dispute to the legal department.  (Marchiando Decl. Ex. 36 (Campos Dep. Tr.) at 81:3–12.)

Defendant concedes that "the idea behind identity theft is information is used to open an account that doesn't belong … to the fraudster." (*Id.* ¶ 82.)  And Defendant does not dispute that the credit dispute analysts who reviewed the ACDVs related to Plaintiff's disputes followed standard procedures here.  (Def.'s Response ¶ 63.)  That is, Defendant's policy is that: (a) identity theft disputes are generally not escalated to the legal department for investigation unless the disputing consumer provides an affidavit of identity theft, a police report, or a sworn statement; and (b) credit dispute analysts verify the accuracy of Defendant's reporting of accounts subject to dispute even if they determine that a dispute merits escalation to the legal department for further investigation (*Id.* ¶¶ 49, 63.).

Defendant claims that on April 13, 2020, as part of its investigation, the legal department mailed Plaintiff a letter requesting for additional supporting documentation regarding her identity theft disputes.  (Opp. at 13–14; Bergiman Decl. Ex. QQ, Doc. 55-3.)  Bergiman testified that, by the time Defendant sent Plaintiff the letter requesting the affidavit, it had twice verified to the CRAs that its reporting of the account attributed to Plaintiff was accurate: "Q.  But by the time this letter is even created, you have already completed two sets of investigations and verified the reporting is accurate, right? A.  Correct." (Marchiando Decl. Ex. 1 (Bergiman Dep. Tr. Vol. I) at 271:7–11.)  Plaintiff claims that this was false reporting because Defendant had not in fact verified that the account that it attributed to her belonged to her when it reported that to the CRAs.  (Mem. at 19–20.)  Defendant has not presented any evidence that it reported to the CRAs that its investigation into Plaintiff's disputes was ongoing or that the account remained in dispute.  Indeed, it appears that Defendant continued to report that the account at issue was verified as belonging to Plaintiff at least until this suit was filed. (Opp. at 10–11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

Defendant claims that it never received the supporting documentation that it requested.  (Bergiman Decl. ¶ 18.)  Bergiman testified in deposition: "we get hundreds, if not thousands of people calling in saying that they are somebody who they are not.  And if we followed every lead, that's all we'd be doing all day,[] following leads."  (Bergiman Decl. Ex. OO (Bergiman Dep. Tr. Vol. I) at 211:4–9, Doc. 55-3.)  According to Bergiman, if Plaintiff had provided the requested documentation "the case would have potentially been closed long ago."  (Bergiman Decl. ¶ 33.)

Plaintiff's expert, Evan Hendricks, opines that Plaintiff provided Defendant with sufficient information to determine that Plaintiff was a victim of identity theft.[2] (Hendricks Decl. Ex.1 (Hendricks Rep.) at 2, Doc. 63-1.)  Hendricks also opines that it is a "glaring flaw" in Defendant's dispute investigation process that it verifies as accurate FCRA-governed identity theft disputes even after determining that the disputes "have sufficient factual basis to suggest the account resulted from identity theft" and escalating them for investigation by its legal department.  (*Id.* at 3.)  According to Hendricks, such a process "runs counter to practices designed to identify and delete inaccuracies, which counsel either pausing the dispute, seeking additional time to complete the investigation, deleting the tradeline as unverifiable or, even more simply, hiring a larger staff so that such investigations can be adequately completed within the period set out in the FCRA."

_____

[2] Defendant objects to Hendricks's report on the ground that it is inadmissible as an unsworn expert report.  (Doc. 58.)  Although "an unsworn expert report is inadmissible under Rule 56(e) to support or oppose summary judgment," *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070–71 (C.D. Cal. 2015), many courts "have permitted affidavits to cure previously unsworn materials." *DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009) (collecting cases).  Here, Plaintiff has submitted a sworn declaration from Hendricks confirming that all the information in his report is true and correct and attached the Hendricks Report to that declaration.  (Docs. 63, 63-1.)  The Court has discretion to accept Plaintiff's curative declaration. *Cf. Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (holding that the district court abused its discretion in excluding unsworn documents because the plaintiff should have been allowed to obtain a curative affidavit).  Defendant's objection is OVERRULED.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                          Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

(*Id.*)  Hendricks concludes that, because Defendant had ample evidence of fraud available to it, it was inadequate for Defendant to be "fixated on affidavits or [a] full police report" without regard for the substance of Plaintiff's disputes.  (*Id.* at 5.)  Hendricks's opinions are unrebutted.[3]

Plaintiff claims that Defendant's conduct caused her damages.  She testified in deposition that she "felt hopeless with [Defendant" and that "there's one particular phone call [with Defendant] that really gets me upset."  (Marchiando Decl. Ex. 5 (Miller Dep. Tr.) at 54:2–12, Doc. 51-5.)  Plaintiff also testified that although other fraudulent accounts were opened in her name with other lenders around the same time as the account at issue here, "[o]nce I contacted the other lenders, I didn't have a problem.

---

[3] Defendant submitted an expert report by John Ulzheimer with its Opposition. (Ulzheimer Decl. & Rep., Doc. 55-1.)  Ulzheimer's report is dated October 7, 2022, the date the Opposition was filed.  (*Id*.)  Plaintiff objects to Ulzheimer's report as inadmissible based on Defendant's failure to comply with the Court's Scheduling Order and the Federal Rules.  (Doc. 67.)

Under the Court's Scheduling Order in this case, the last date a party could serve an initial expert report was July 15, 2022, the deadline for rebuttal reports was August 12, 2022, and expert discovery closed on September 9, 2022.  (Scheduling Order at 2, Doc. 42.)  Federal Rule of Civil Procedure 26(a)(2)(B) states that a retained expert must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them."  Further, parties "*must* make these disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D) (emphasis added).  Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, there is no dispute that Ulzheimer's report was untimely disclosed and Defendant's Opposition and accompanying submissions do not acknowledge the lateness of the disclosure— let alone explain why it is substantially justified.  Further, expert discovery in this case has been closed for over a month, so Plaintiff had no opportunity to depose Ulzheimer or seek rebuttal opinions from her own expert.  Accordingly, Plaintiff's objection to Ulzheimer's report is SUSTAINED.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

They did not contact me."  (*Id.* at 54:17–24.)  Plaintiff also testified that she was embarrassed and anxious due to Defendant's alleged inaccurate reporting and spent "at least ten hours" trying to address credit issues, including but not limited to addressing the account Defendant attributed to her.  (*Id.* at 131:20–132:11, 133:3–134:10, 139:2–16, 139:18–140:5, 140:15–25.)  In his report, Hendricks opines that Defendant's reporting damaged Plaintiff's creditworthiness in at least two ways: (1) reporting the account as a "charge-off" with a written-off balance of $13,589 rendered Plaintiff ineligible for practically all forms of credit, as creditors typically do not extend credit to consumers until consumers remove all past-due or charged-off balances from their reports; and (2) reporting the account as a "charge-off" was "a major derogatory under the FICO scoring model" and lowered Plaintiff's FICO scores.  (Hendricks Decl. Ex.1 (Hendricks Rep.) at 3.)  Defendant claims that Plaintiff cannot prove that she has suffered damages due to Defendant's handling of her credit disputes because she has already been made whole by settlements with the CRAs and other lenders.  (Def.'s Response ¶¶ 83–87.)

Plaintiff brings claims for violations of: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; and (2) the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.1, *et seq*.  (Complaint ¶¶ 53–89, Doc. 1.)  Plaintiff's Motion seeks summary judgment only as to liability, not damages, on each claim.  (Mem. at 1, 25.)  Plaintiff also requests that the Court find that Defendant's violations of the FCRA here were willful as a matter of law.  (*Id.* at 23–24.)

## II.   **LEGAL STANDARD**

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                                    Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

"material" when it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.  But "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted)).

The role of the Court is not to resolve disputes of fact but to assess whether there are any factual disputes to be tried.  The moving party bears the initial burden of demonstrating the absence of a genuine dispute of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'"  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).  Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  And the evidence that the parties present must be admissible.  Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

### A.  FCRA

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).  "To ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."  *Robbins v. CitiMortgage, Inc.*, 2017 WL 6513662, at *5 (N.D. Cal. Dec. 20, 2017) (cleaned up) (quoting *Gorman*, 584 F.3d at 1153).  "Certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                                     Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

obligations are triggered 'upon notice of dispute,' *i.e.* when a furnisher receives notice from a CRA that a consumer disputes the information the furnisher provided." *Id.* (quoting *Gorman*, 584 F.3d at 1154.)  "In such circumstances, the furnisher must conduct an investigation with respect to the disputed information, review all relevant information provided by the credit reporting agency, and report the results of the investigation to the credit reporting agency." *Soria v. U.S. Bank N.A.*, 2019 WL 8167925, at *7 (C.D. Cal. Apr. 25, 2019) (citing 15 U.S.C. § 1681s-2(b)(1)).  If a furnisher receives notice of a dispute from a CRA, the furnisher's investigation must be "reasonable." *Gorman*, 584 F.3d at 1155–57.

To succeed on her FCRA claim, Plaintiff must prove: "(1) Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1)." *Id.*

Here, Defendant does not dispute that it is a furnisher, that it reported the account to the CRAs as belonging to Plaintiff, that Plaintiff disputed the account to multiple CRAs, or that it received such disputes from the CRAs.  (Opp. at 18–21; Def.'s Response ¶¶ 79–81.)  Defendant disputes: (1) Plaintiff's claim that its reporting was inaccurate; (2) Plaintiff's claim that Defendant failed to conduct a reasonable investigation of her disputes; and (3) Plaintiff's claim that she suffered damages on account of Defendant's handling of her disputes.  The Court addresses these disputes and the parties' arguments and evidence seriatim.

### 1.  Reasonableness of Defendant's Investigation

In determining whether a furnisher's investigation was reasonable, "[t]he pertinent question is … whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157 (citing *Westra v. Credit Control of Pinellas,* 409

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                     Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

F.3d 825, 827 (7th Cir. 2005) ("[The furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")).  "[A]n 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute."  *Id.* at 1155.  "A furnisher cannot escape its obligations 'by merely rubber stamping,' particularly 'where the circumstances demand[] a more thorough inquiry.'"  *Soria*, 2019 WL 8167925, at *8 (quoting *Gorman*, 584 F.3d at 1156).  "[T]he reasonableness of any investigation involving identity theft is likely to be a highly individualized and fact-intensive inquiry."  *Romero v. Monterey Fin. Servs., LLC*, 2021 WL 268635, at *3 (S.D. Cal. Jan. 27, 2021).

   "[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment.'"  *Gorman*, 584 F.3d at 1157 (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994)).  Thus, summary judgment on whether a furnisher conducted a reasonable investigation "is appropriate 'when only one conclusion about the conduct's reasonableness is possible.'"  *Id.* (quoting *Toolworks*, 50 F.3d at 622.)

       First, the Court declines Plaintiff's invitation to rule that "solely engaging in data conformity" renders a furnisher's investigation per se unreasonable as a matter of law. (Mem. at 15–16.)  Plaintiff's primary cited authority in support of this position, *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019), does not stand for the proposition that a furnisher's investigation that consists of comparing data in an ACDV with data in the furnisher's database is necessarily unreasonable as a matter of law.  As a district court in the Northern District of Georgia—which, unlike this Court, was bound to follow *Marchisio*—explained:

> In [*Marchisio*], the Eleventh Circuit did not hold that a furnisher's mere reliance on its own database establishes that the investigation is unreasonable as a matter of law.  Instead, the Eleventh Circuit agreed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                               Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

with the district court that the defendant-furnisher's investigative efforts were unreasonable because the furnisher "failed to create a reliable system for inputting information" into its own databases.  *Marchisio*, 919 F.3d at 1302.  The defendant in *Marchisio* was even aware that the system for inputting information into the databases "was unreliable and [was] aware that incorrect information concerning Plaintiffs' loan balance was still being reported[.]"  *Id.*  The *Marchisio* court also explained that "there was a large 'disconnect' between Defendant's system for debt verification and its ad hoc handling of settlement-related changes to debt obligations."  *Id.*  Despite the defendant's awareness of its own unreliable system and incorrect information, the defendant did not take any steps to ensure that accurate information regarding the plaintiffs' account (specifically, the terms of a settlement agreement) was "communicated to those who generate reports to reporting agencies."  *Id.*

*Ponder v. Ocwen Loan Servicing, LLC*, 2020 WL 4550934, at *12 (N.D. Ga. Apr. 23, 2020), *R&R adopted*, 2021 WL 5027495 (N.D. Ga. Aug. 4, 2021).  In sum, *Marchisio* contemplates that in certain circumstances the "data conformity" review that Plaintiff finds fault with may be sufficient to discharge a furnisher's duty to investigate under the FCRA.[4]

---

[4] Nor does Plaintiff's other cited authority support such an interpretation of what reasonableness under the FCRA requires.  (*See* Mem. at 15–16.)  The remaining out-of-circuit cases that Plaintiff relies on did not hold that "data conformity" or "data matching" investigations are unreasonable as a matter of law, but upheld, after trial, juries' determinations that such investigations were unreasonable in particular cases.  *See Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1263 (N.D. Ala. 2011) (upholding punitive damages award for consumer where trial evidence showed defendant received thousands of disputes per week and only checked its own records to validate debt for 95% of those disputes); *Daugherty v. Ocwen Loan Servicing, L.L.C.*, 701 F. App'x 246, 256–57 (4th Cir. 2017) (holding that a jury could conclude from the evidence at trial that the defendant furnisher's verification procedure was reckless); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611 (6th Cir. 2012) (reversing district

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

Under applicable Ninth Circuit precedent, "the term 'investigation' on its own force implies *a fairly searching* inquiry." *Gorman*, 584 F.3d at 1157 (emphasis added). "Requiring furnishers, on inquiry by a CRA, to conduct at least *a reasonable, non-cursory investigation* comports with the aim of the statute to 'protect consumers from the transmission of inaccurate information about them.' *Id.* (quoting *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985) (emphasis added). The key question is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.*

Here, there is no dispute that Plaintiff submitted at least six dispute letters to the CRAs—one to each CRA on January 22, 2020, and additional letters to each CRA on February 27, 2022—and that all of those dispute letters were transmitted to Defendant via ACDVs. (Def.'s Response ¶¶ 33–34.) Further, there is no dispute that each letter states that Plaintiff did not open the account that Defendant was attributing to her, and some of the letters informed Defendant of three reports that she filed with the Huntington Beach Police Department, the report identification numbers, and the identification number of the report she filed with the Federal Trade Commission. (*Id.* ¶ 30.) The letters also contain copies of Plaintiff's Social Security Card, driver's license, and a letter confirming her mailing address, and other statements of additional identifying information. (*Id.* ¶ 31.) In one of the letters, Plaintiff included cover pages of the police reports and contact information for Huntington Beach police officers Defendant could speak to about the reports. (*Id.* ¶ 32.) Last, several of Plaintiff's disputes were coded "103: claims true identity fraud/account fraudulently opened." (*Id.* ¶ 42.)

Further, Defendant does not dispute that its credit dispute analysts "conduct *cursory* reviews of disputes." (Bergiman Decl. ¶ 20 (emphasis added).) The credit

---

court's grant of summary judgment for the defendant furnisher when there was evidence that the furnisher's "policy prohibited its employees from performing anything more than a cursory confirmation of his status before reporting back to a CRA").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

dispute analysts who reviewed the ACDVs associated with Plaintiff's account testified in deposition that they did not examine the substance of Plaintiff's dispute letters, which Defendant has admitted was consistent with its standard procedure for disputes.  (Def.'s Response ¶¶ 40–41.)  Defendant has also admitted that credit dispute analysts' investigations are limited in several respects.  These analysts do not review prior disputes from a consumer when reviewing an ACDV.  (*Id.* ¶ 56.)  Further, the analysts generally do not review account notes in Defendant's system or contact consumers.  (*Id*. ¶¶ 57–58.)  Nor do they obtain separate reports about the disputing consumer, like a skip-trace or LexisNexis report or use the internet to conduct additional research pertinent to the dispute.  (*Id*. ¶¶ 59–60.)  Last, they do not contact dealers from whom contracts originated or other personnel employed by Defendant for additional information.  (*Id*. ¶¶ 61–62.)

There is no dispute here that Jose Mata and Karen Campos, the analysts who reviewed Plaintiff's ACDVs, did not review the internal notes on the account indicating Plaintiff's direct disputes alleging identity theft as well as an apparent call from a detective from the Huntington Beach Police Department.  (Marchiando Decl. Ex. 27 (Mata Dep. Tr.) at 92:1–14; Marchiando Reply Decl. Ex. 6 (Campos Dep. Tr.) at 75:19–25, 76:13–17.)  Nor is it disputed that, whenever an analyst reviewed an ACDV containing Plaintiff's disputes, he or she did not review any other ACDVs that Defendant had already received.  (*Id.* ¶ 56.)

Defendant argues that its investigation procedure for identity theft disputes is reasonable because identity theft disputes that are supported with appropriate documents, such as an affidavit or a police report, are escalated to its legal department.  (Opp. at 20–22; Bergiman Decl. ¶¶ 23–24, 33.)  Defendant also argues that its approach is one that courts have endorsed, citing to *Woods v. LVNV Funding, LLC*, 27 F.4th 544 (7th Cir. 2022).  (Opp. at 20.)  In *Woods*, the Seventh Circuit held that a furnisher's data-matching investigation was not unreasonable when the ADCV containing the consumer's dispute had attached to it a police report indicating that the original creditor had sent the consumer two letters stating that their investigation had concluded that he was in fact

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                              Date:  October 28, 2022

Title:  Melissa Miller v. Westlake Services LLC

responsible for disputed purchases.  *Id.* at 550.  In light of all the information that it received with the ACDV, the furnisher had requested additional documentation related to the dispute from the consumer, but received no response.  *Id.* at 550–1.

According to Defendant, its investigations of Plaintiff's disputes in this case were reasonable because Plaintiff was told several times that Defendant would not investigate her disputes unless she provided an affidavit of identity theft or complete copies of the police reports that she filed.  (Opp. at 21.)  Defendant claims that—like the defendant in *Wood*—it sent Plaintiff a request to for additional supporting documentation that included an affidavit of identity theft for her to complete on April 13, 2020 and never received a response.  (*Id.* at 13–14.)

The procedure that Defendant followed here does not satisfy the FCRA's "reasonable investigation" requirement.  First, there is no dispute that credit dispute analysts' mode of reviewing ACDVs, which Defendant admits is "cursory" and significantly restricted, cannot be a reasonable investigation under the FCRA.  *See Gorman*, 584 F.3d at 1155 ("[A]n 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.").

Second, there is no dispute that when these analysts determine that a consumer's dispute based on identity theft has enough support to merit escalation to Defendant's legal department they nevertheless communicate to the CRAs that the disputed information's accuracy has been verified.  (Def.'s Response ¶ 49; Hendricks Decl. Ex. 1 (Hendricks Rep.) at 3; Reply at 15.)  In this case, the credit dispute analysts verified the accuracy of the reported information to the CRAs even though they had access to, but did not consult, internal notes on the account that indicated Plaintiff's prior direct disputes and a telephone call from an apparent Huntington Beach police detective.

Third, Defendant claims that Plaintiff's disputes were escalated to the legal department at some point, but it has not stated when the investigation was escalated or

_____
**CIVIL MINUTES – GENERAL**                                                      **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                              Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

what the legal department did to investigate Plaintiff's disputes beside sending her a request for additional documents on April 13, 2020.  (Opp. at 13–14; Reply at 15.)  The only evidence to support the conclusion that the legal department's investigation here was reasonable is that document request.  But sending a letter requesting documents is not an investigation.

Last, the Seventh Circuit's opinion in *Woods* does not assist Defendant.  There, the documents attached to the ACDV gave the defendant reason to believe that the consumer's disputes lacked merit because the original creditor had already resolved disputes against the consumer.  The furnisher defendant in that case could justify its limited investigation and request for additional information based on the content of the police report that had been transmitted with the ACDV.  Here, however, the ACDVs included information that supported rather than undermined the legitimacy of Plaintiff's disputes—a fact confirmed by Defendant's eventual escalation of those disputes to the legal department.  Furthermore, the *Woods* court emphasized that its opinion "is no license for furnishers to offload their § 1681s-2(b)(1)(A) investigation obligations to consumers by spamming them with requests for additional information."  27 F.4th at 551. A simple data-matching review followed by a request for additional documents or information may be reasonable when a furnisher has reviewed information that suggests the consumer's dispute lacks merit, but Defendant had no such information here.  Rather, when it received the ACDVs and verified them, Defendant had: (1) an Experian report with fraud alert notations (Def.'s Response ¶¶ 12–14; (2) account notes indicating Plaintiff's prior direct disputes and an apparent call from a detective (Marchiando Decl. Ex. 26 (Account Notes) at WFS000013–15); and (3) letters forwarded by the CRAs that included, *inter alia*, police report numbers and contact information for investigating officers (Marchiando Decl. Exs. 12–25 (CRA Letters), Docs. 51-12–25).

In sum, Defendant has, on one hand, conceded that credit dispute analysts' review of ACDVs here was not sufficiently searching to constitute a reasonable investigation and, on the other hand, failed to provide sufficient evidence to support an inference that its legal department investigated Plaintiff's disputes.  *Cf. Wood v. Credit One*, 277 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                          Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

Supp. 3d at 851–53 (granting summary judgment to FCRA plaintiff on "reasonable investigation" element when plaintiff had presented "compelling evidence" that the furnisher's investigation had been "cursory" and the furnisher "presented no evidence that it performed any degree of careful inquiry or that it conducted anything other than superficial, unreasonable inquiry" that the account at issue belonged to the plaintiff) (cleaned up).  Given the undisputed facts here, the Court concludes that Defendant's investigation of Plaintiff's disputes was unreasonable as a matter of law.

### 2.  Inaccuracy of Defendant's Reporting

"FCRA plaintiffs must prove that the furnisher reported inaccurate information to prevail on a § 1681s-2(b) claim."  *Robbins*, 2017 WL 6513662, at *6 (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Biggs v. Experian Information Solutions, Inc.*, 209 F Supp. 3d 1142, 1144 (N.D. Cal. 2016); and *Gorman*, 584 F.3d at 1163–64).  Such information can be inaccurate "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  *Carvalho*, 629 F.3d at 890 (citation omitted).  A furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, "because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.  It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under 15 U.S.C. § 1681s–2(b)."  *Gorman*, 584 F.3d at 1163.

Here, Plaintiff asks the Court to declare that Defendant's reporting that the account that it attributed to Plaintiff was verified as belonging to her was inaccurate. (Mem. at 11–13.)  The Court notes at the outset that Plaintiff has produced admissible and unrebutted evidence that she never bought a Ford Fusion, never applied for financing to purchase a Ford Fusion, and never authorized anyone to apply for such financing in her name.  (Marchiando Decl. Ex. 6 (Miller Decl.) ¶¶ 4–7, Doc. 51-6.)  Defendant argues that there is a genuine dispute as to whether its reporting was accurate because Plaintiff has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                              Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

not proven—and had not proven at the time Defendant received her disputes—that she was a victim of identity theft.  (Opp. at 20–21; Def.'s Response ¶¶ 3–4, 8, 16–19, 22.)

Defendant claims that it is doubtful whether Plaintiff's identity was stolen on the following grounds: (1) some of the information in her application was accurate; (2) Plaintiff has not verified that a Huntington Beach Police Department detective called Defendant; and (3) the investigation of the alleged identity theft had not concluded when Plaintiff was deposed.  (*Id.*)  But Defendant has not put forth evidence that supports an inference that Plaintiff was in fact responsible for the account that Defendant attributed to her.  Nor does Defendant assert that Plaintiff *was* responsible for the account—Defendant claims only that it was reasonable for it to conclude that the account belonged to Plaintiff when it reported that to the CRAs.  (Opp. at 21.)

More importantly, Defendant's arguments here fail to address the key respect in which its reporting to the CRAs was inaccurate.  According to Plaintiff, Defendant reported inaccurate information to the CRAs when it responded that it had verified that the account in dispute belonged to Plaintiff, even though the account remained in dispute and Defendant's investigation was apparently ongoing.  (Mem. at 19–20; Reply at 9–11.) There is no dispute here that: (1) Defendant verified as accurate its reporting of the account because the information in the ACDVs matched the information in Defendant's records (Def.'s Response ¶ 81); (2) Plaintiff's dispute was escalated to the legal department for further investigation even though Defendant had responded to the CRAs that its reporting was accurate (Opp. at 13–14.); and (3) Defendant did not report to the CRAs that the account remained in dispute or that its investigation was ongoing when the dispute was escalated to the legal department.  (*Id.* at 10–11.)

The undisputed evidence here shows that Defendant did not accurately report the results of its purported investigation of Plaintiff's account because it reported that it had verified the account as belonging to Plaintiff without an investigation and after the dispute was escalated to the legal department as potentially meritorious.  *Cf. Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 854 (E.D. Va. 2017) (granting summary judgment

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

to plaintiff on this element when furnisher bank reported to CRAs that the plaintiff's disputes had been resolved when they had not been in fact).  Accordingly, the Court finds that there is no dispute of material fact that Defendant reported inaccurate information to the CRAs.

### 3.  Plaintiff's Damages

Damages are an element of a Plaintiff's FCRA claims here.  *See, e.g.*, *Gorman*, 584 F.3d at 1154–55 (to have a claim under 15 USC § 1681s-2(b) a plaintiff must show that the defendant's failure to conduct a reasonable investigation caused the plaintiff to suffer damages).  "Actual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses."  *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015), *aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC*, 2017 WL 3225710 (9th Cir. July 31, 2017).  "The FCRA permits recovery for emotional distress and humiliation."  *Drew v. Equifax Info. Sys., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012).  The Ninth Circuit has not yet addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA.  The Ninth Circuit has recognized in a different context, however, that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms."  *Johnson v. Hale*, 13 F.3d 1351, 1352–53 (9th Cir. 1994).

Plaintiff does not seek a determination of her actual damages in her Motion, but only a finding from this Court that she has suffered damages as a result of Defendant's failure to comply with its duties under the FCRA.  Plaintiff argues that her testimony about her anxiety and embarrassment resulting from her efforts to remedy the inaccurate reporting on her account and the time that those efforts consumed show that she has suffered at least some damages.  (Mem. at 22–23.)  Defendant counters that Plaintiff cannot prove that she has suffered damages because she has already settled four or five lawsuits arising from her claims of identity theft against CRAs and other furnishers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

(Opp. at 15–16.)  Defendant also notes that it is impossible for Plaintiff to distinguish her damages resulting from Defendant's inaccurate reporting and investigation here from the damages that resulted from other furnishers' and the CRAs' oversights.  (Def.'s Response ¶¶ 83–87.)

Because Plaintiff does not seek judgment on the amount of her actual damages, but only that she suffered at least *some* amount of damages, to be determined by a jury at trial, Defendant's arguments here fail.  Defendant has not presented any evidence disproving that Plaintiff at the very least had to spend time and effort to address Defendant's inaccurate attribution of an account marked as a "charge-off" to her.  Plaintiff also testified in deposition about her embarrassment and distress that she claims were caused by Defendant's conduct.  (Marchiando Decl. Ex. 5 (Miller Dep. Tr.) at 131:20–132:11, 133:3–134:10, 139:2–16, 139:18–140:5, 140:15–25.)  Further, Defendant has not rebutted Hendricks's opinion that Defendant's inaccurate reporting adversely affected Plaintiff's eligibility for credit.  (Hendricks Decl. Ex.1 (Hendricks Rep.) at 3.)  Thus, the Court finds that Plaintiff has suffered damages as a result of Defendant's inaccurate reporting and failure to conduct a reasonable investigation of her disputes, in an amount to be determined at trial.

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to Defendant's liability for violations of 15 USC § 1681s-2(b).

### 4.  **Willfulness of Defendant's Violation**

Plaintiff requests that the Court find not only that Defendant violated the FCRA, but that Defendant's violations were willful.  (Mem. at 23–24.)  "Willfulness may be shown by a reckless disregard of a statutory duty." *Romero*, 2021 WL 268635, at *4 (citing *Safeco*, 551 U.S. at 57). "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

*LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (citing *Safeco*, 551 U.S. at 57).  "That is, the defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1101 (N.D. Cal. 2016) (quoting *Safeco*, 551 U.S. at 68).

Here, Plaintiff claims that Defendant's violations were willful because it "acted in a manner that it knew violates the FCRA" when, "[d]espite engaging in no genuine investigation, Westlake falsely stated to the CRAs it had 'verified' the reporting as accurate, even doing so when it had enough doubt in that conclusion that it enlisted its legal department to take a more thorough look." (Mem. at 24.)  Defendant counters—correctly—that Plaintiff has not cited a single case that has taken the determination of whether a defendant violated the FCRA willfully from the trier of fact.  (Opp. at 18.)

Although the record here compels the conclusion that Defendant failed to conduct a reasonable investigation in response to Plaintiff's disputes, it does not compel the conclusion that it did so knowingly or recklessly.  Defendant's requests to Plaintiff for additional documentation and Bergiman's testimony that it would be impossible for to follow every lead Defendant receives about an account dispute can support a finding that Defendant did not knowingly or recklessly disregard its obligations under the FCRA. There is a genuine dispute as to whether Defendant knowingly disregarded its statutory obligations.  Accordingly, the Court DENIES Plaintiff's Motion as to the willfulness of Defendant's FCRA violations.

### B.  **CCCRAA**

"The California Legislature enacted [the] CCCRAA 'to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit … and other information in a manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'"  *Soria*, 2019 WL 8167925, at *8 (quoting Cal. Civ. Code §

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                    Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

1785.1(d)).  "Similar to the FCRA, the CCCRAA requires furnishers not to provide 'information on a specific transaction or experience to any consumer credit reporting agency if the [furnisher] knows or should know that the information is incomplete or inaccurate.'"  *Id.* at 20 (quoting § 1785.25(a)).

"To prevail on a [CCCRAA] claim, the plaintiff must prove that (1) Defendant is a 'person' under the [CCCRAA], (2) Defendant reported information to a CRA, (3) the information reported was inaccurate, (4) Plaintiff was harmed, and (5) Defendant knew or should have known that the information was inaccurate."  *Robbins*, 2017 WL 6513662, at *14.

The parties' arguments as to this claim parallel their FCRA arguments, and whether Defendant "knew or should have known that the information was inaccurate" mirrors the FCRA's "reasonable investigation" requirement.  *See Sanchez v. U.S. Bank Nat'l Ass'n*, 2019 WL 4540121, at *5 (C.D. Cal. June 27, 2019) (Staton, J.)*; cf. Scharer v. OneWest Bank, FSB*, 2014 WL 12558124, at *7 (C.D. Cal. Sept. 8, 2014) (failure to raise genuine dispute as to reasonable investigation under FCRA sufficient to show no dispute as to CCCRAA's "knows or should know" requirement).  Thus, for the reasons discussed above in relation to the FCRA claim, the Court concludes that Defendant violated the CCCRAA as well when it "verified" the accuracy of the information on the account attributed to Plaintiff without conducting a reasonable investigation.

Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to Defendant's liability under the CCCRAA.  As with the FCRA, however, the Court finds that there is a genuine dispute of material fact as to whether Defendant's violation was willful, and does not grant summary judgment on that issue.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's Motion for Partial Summary Judgment.  The Court GRANTS the Motion as to Defendant's liability

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-00692-JLS-KES                         Date:  October 28, 2022
Title:  Melissa Miller v. Westlake Services LLC

under the FCRA and CCCRAA.  The Court DENIES IN PART the Motion insofar as it declines to find that Defendant violated the FCRA and CCCRAA willfully.


Initials of Deputy Clerk:  vrv