Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Southern Division

| | |
|---|---|
| **MELISSA MILLER,** ) | **Case No.: 8:21-CV-00692** |
| ) | |
| **Plaintiff,** ) | Honorable Josephine Staton |
| ) | |
| **v.** ) | **PLAINTIFF'S OPPOSITION TO DEFENDANT WESTLAKE SERVICES, LLC'S MOTION FOR AN ORDERPERMITTING LATE EXPERT REPORT AND EXPERT'S TESTIMONY AT TRIAL** |
| ) | |
| **WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | **Hearing date:** Feb. 3, 2023 |
| _____ ) | **Time:** 10:30 a.m. |
| | **Location:** Courtroom 8A |

## TABLE OF CONTENTS

OVERVIEW…………………………………………………………………………1

BACKGROUND PERTAINING TO WESTLAKE'S MOTION …………………………….2

LEGAL STANDARDS…………………………………………………………...5

ARGUMENT AND AUTHORITIES ……………………………………………….7

    I.  The Court's Exclusion of Mr. Ulzheimer as an Expert Is Not the Type of Order at which Rule 60 Is Aimed……………………………..…………………………..7

    II. Granting Westlake's Motion Still Requires Amendment of the Scheduling Order, but Westlake Has Not Sought that Relief………………………………………10

    III. Should the Court Consider the Merits of Westlake's Motion, It Still Fails ……...13

        A.    Westlake Has Not Shown Excusable Neglect Warrants Granting Its Motion……………………………………………………………13

            i.     Westlake's proposed deposition of Mr. Ulzheimer does not alleviate the substantial prejudice Plaintiff will suffer if his opinions are admitted…………………………………………14

            ii.    Westlake's delay will require a complete reworking of the case schedule and delay the trial of this case………………………16

            iii.   The oversight of Westlake's Counsel does not justify the relief Westlake seeks…………………………………………..18

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

iv.    Plaintiff takes Westlake at its word regarding its good faith, but the Court should scrutinize the reason given ....................20

B.    Westlake Has Failed to Show the Extraordinary Circumstances Justifying Relief under Rule 60(b)(6) ...................................20

CONCLUSION ......................................................................................22

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

# TABLE OF AUTHORITIES

## CASES

*Addaday v. Artist Int'l Co. Ltd.*,

No. 2:21-cv-05525-AB (PLAx), 2022 WL 1516052, at *1 (C.D. Cal. Apr. 19,

2022) ...............................................................................................................4, 5

*Argo Sys. FZE v. Liberty Ins. PTE, Ltd.*,

No. Civ.A. 04-00321-CGB, 2005 WL 1355060, at *5 (S.D. Ala. June 7, 2005) .....9

*Asfaw v. Wal-Mart Stores, Inc.*,

No. 2:19-cv-01292-GMN-NJK, 2019 WL 13533313, at *2 (D. Nev. Feb. 11, 2020)

..........................................................................................................................4, 5

*Bateman v. United States Postal Serv.*,

231 F.3d 1220, 1222–23 (9th Cir. 2000)...................................................................6

*Bell v. Olson*,

No. C21-781, 2022 WL 1215498, at *2 (W.D. Wash. Mar. 18, 2022)..............4, 15

*Briones v. Riviera Hotel & Casino*,

116 F.3d 379, 380 (9th Cir. 1997)............................................................................6

*Bynoe v. Baca*,

966 F.3d 972, 979 (9th Cir. 2020)..........................................................................15

*Cacevic v. City of Hazel Park*,

226 F.3d 483, 490 (6th Cir. 2000).............................................................................4

*Cota v. Carrows Restaurants, LLC*,

No. 20-cv-1428 TWR, 2022 WL 2119124, at \*5 (S.D. Cal. June 13, 2022)..........10

*Crapp v. City of Miami Beach*,

242 F.3d 1017, 1020 (11th Cir. 2001).....................................................................5

*Estate of LaFarge ex rel. Blizzard v. Kyker*,

No. 1:08-cv-185, 2011 WL 6151595, at \*6 (N.D. Miss. Dec. 12, 2011) ..............12

*Friedman v. Bloomberg, L.P.*,

No. 3:15-cv-443, 2021 WL 4917975, at \*1–2 (D. Conn. Jan. 19, 2021).................6

*Henderson v. Corelogic Nat'l Background Data, LLC*,

No. 3:12-cv-97, 2016 WL 7219622, at \*1 (E.D. Va. Oct. 7, 2016).........................8

*Kelly v. United States*,

805 F. Supp. 14, 15 (E.D. La. 1992) .......................................................................7

*Klapprott v. United States*,

335 U.S. 601, 602 (1949).........................................................................................7

*Lehman v. United States*,

154 F.3d 1010, 1017 (9th Cir. 1998)..................................................................5, 15

*Link v. Wabash R. Co.*,

370 U.S. 626, 634 n.10 (1962)...............................................................................14

*Manning v. Crockett*,

No. 95 C 3117, 1999 WL 342715, at \*3 (N.D. Ill. May 18, 1999)........................12

*Meadows v. Cohen*,

409 F.2d 750, 752 (5th Cir. 1969)..................................................................................7

*Mitchell v. City of Mobile, Ala.*,

No. 15-0360-CG-C, 2017 WL 3262130, at *1 (S.D. Ala. July 28, 2017) ......5, 9, 10

*Morris v. S. Intermodal Xpress*,

No. 16-632-CG-N, 2017 WL 2242960, at *2 (S.D. Ala. May 19, 2017) ................5

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380, 383–84 (1993) ...................................................................................6

*Revere v. McHugh*,

362 F. App'x 993 (11th Cir. 2010) .........................................................................10

*Rogers v. City of Selma*,

No. CV 14-586-CG-M, 2016 WL 2930967, at *1 (S.D. Ala. May 19, 2016) ....5, 10

*Sanchez v. Stryker Corp.*,

No. 2:10-cv-08832-ODW (JCGx), 2012 WL 1570569, at *2-4 (C.D. Cal. May 2, 2012) ...................................................................................................4, 5, 13, 14

*Smith v. Widman Trucking & Excavating, Inc.*,

627 F.2d 792, 797 (7th Cir. 1980)..............................................................................7

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*,

803 F.2d 1130, 1132 (11th Cir. 1986)........................................................................5

*United States v. Martin*,

226 F.3d 1042, 1048–49 (9th Cir. 2000) ................................................................. 6

**RULES**

FED. R. CIV. P. 26(a)(2)(B) ............................................................................ 1, 12

FED. R. CIV. P. 60(b) ......................................................................................passim

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

Plaintiff Melissa Miller, by Counsel, opposes Defendant Westlake Financial Services, LLC's Motion For An Order Permitting Late Expert Report And Expert's Testimony At Trial. (ECF 73.) For the reasons below, the Court should deny Westlake's Motion.

## OVERVIEW

The Court granted Plaintiff's Motion for Partial Summary Judgment on liability, finding Westlake's process for investigating Plaintiff's disputes of Westlake's credit reporting was unreasonable as a matter of law. (ECF 71.) Following that decision, the upcoming trial will be about Plaintiff's damages and whether Westlake's violations of the FCRA were willful. 15 U.S.C. §§ 1681n, 1681o.

Westlake's summary-judgment opposition, filed October 7, 2022, included a report from purported expert John Ulzheimer, who sought to opine on Plaintiff's damages and aspects of Westlake's processes for investigating and responding to consumer disputes under the FCRA. (ECF 55-1 at 7–8 (using page numbers in Clerk's header).) As any Rule 26(a)(2) disclosures were due July 15, 2022, Plaintiff objected to Mr. Ulzheimer's Report as untimely. (ECF 67.) In its ruling on Plaintiff's Motion for Partial Summary Judgment, the Court sustained Plaintiff's objection that Westlake's submission of its expert report nearly 90 days after it was due was untimely. (ECF 71 at 9 n.3.)

Having summary judgment granted against it and facing a trial over just damages and willfulness, Westlake has filed a Hail Mary motion asking the Court again to forgive

the glaring failure to meet the expert-disclosure deadline because its Counsel was not as attentive as it should have been. (ECF 73-1 at 2–3.) The Court should decline Westlake's invitation because Federal Rule of Civil Procedure 60 was not designed to allow a party to disregard the Scheduling Order and receive a do-over months later, and after a significant unfavorable ruling.  Further, reopening this major area of dispute would significantly delay the trial and necessitate substantial additional discovery in a case that is already approaching two years and has moved past dispositive motions.

## BACKGROUND PERTAINING TO WESTLAKE'S MOTION

The Court's Scheduling Order, issued September 28, 2021, is clear that initial expert *reports* were due to be served July 15, 2022. (ECF 24 at 2 (emphasis added).) Westlake was aware of the Scheduling Order's demands, as it joined with Plaintiff in stipulating to enlarge certain deadlines, including the expert report disclosure and summary judgment deadlines, in June 2022. (*See* ECF 46.) In that Stipulation, which Westlake's present Counsel signed, the Parties moved to have the deadline to serve expert *reports* enlarged from July 15 to September 15, 2022. (*Id.* at 2–3.) The Court denied those requests, citing a lack of good cause. (ECF 49.) So while Westlake now claims ignorance by Counsel as causing it to miss the deadline to serve its expert's report, the Court should treat such claims with heightened scrutiny because present Counsel agreed to a stipulation that discussed amending the deadline to serve that very report.

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

2

By waiting as long as it did to serve Mr. Ulzheimer's Report, Westlake gained the benefit of knowing not only the opinions and pertinent facts of Plaintiff's own expert, Evan Hendricks, but also all of Plaintiff's summary judgment strategy, arguments, and the evidence on which Plaintiff relied for those arguments. While summary judgment has now been granted in Plaintiff's favor, willfulness and damages remain to be tried, and Mr. Ulzheimer had improper and unapproved access to Plaintiff's arguments and underlying evidence on those issues while crafting his Report. The Report is rife with discussion of points Plaintiff addressed on summary judgment (ECF 55-1 at 17–25), which gave Westlake an unfair advantage in fashioning what appears will be the centerpiece of Westlake's defense on Plaintiff's damages and Westlake's willfulness. Further, that Mr. Ulzheimer took all of the time he possibly could in creating his report is confirmed by it being dated October 7, 2022, the day Westlake filed it. (*See* ECF 71 at 9 n.3 (noting date of Mr. Ulzheimer's Report).) Plaintiff was not afforded this same process, impermissibly tilting the scale in Westlake's favor.

In seeking the Court's intervention and favorable thumb on its side of the scale, Westlake mentions that Plaintiff submitted an unsworn affidavit of Mr. Hendricks with her summary judgment briefing, and the Court permitted Plaintiff to correct that oversight by submitting a sworn declaration after Westlake objected. (ECF 73-1 at 3.) Westlake argues that "[b]oth parties' attorneys made mistakes regarding their expert submissions," and

suggests granting Westlake's Motion is akin to the relief afforded Plaintiff. It is nowhere near that.

The Court permitted Plaintiff to cure a "gotcha" objection by Westlake, and cited a raft of cases supporting that logical outcome. (ECF 71 at 8 n.2.) The sworn report is identical to the one originally filed, so Westlake has not—because it cannot—argue any prejudice from the addition of the affirmation by Mr. Hendricks that the report was made under penalty or perjury. All that it took to correct the error was a one-line statement and signature. And Westlake had the entire summary-judgment-response period to consider Mr. Hendricks's opinions and respond to them, just as the Scheduling Order envisioned.

In contrast, the relief Westlake seeks will unwind the case altogether. Discovery will have to be reopened almost entirely so that Plaintiff can obtain subpoena discovery from Mr. Ulzheimer and his company regarding his opinions in other FCRA furnisher cases, payments from industry trade groups, claimed employment history, and even further discovery from the Defendant to address new "defenses" the report hopes to manufacture. Further, upon such additional discovery, Mr. Hendricks would have to be permitted the same ability to rebut Mr. Ulzheimer's opinions that Westlake was allowed as to the opinions of Mr. Hendricks. A deposition of Mr. Ulzheimer would then occur, and Plaintiff assumes Westlake would also insist on the deposition of Mr. Hendricks, again to even the field in Westlake's view, which adds additional time and expense that Westlake chose to

forgo during the Court-ordered discovery period.[1] There is not an apples-to-apples comparison to the what the Court permitted as to Plaintiff's expert and Westlake's proposal for curing its failure to timely serve the report of Mr. Ulzheimer. The Court should therefore deny Westlake's Motion.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b) "permits reconsideration of an order only upon a showing of," among other things: "(1) mistake, inadvertence, surprise or excusable neglect; . . . or (6) any other reason justifying relief." *Addaday v. Artist Int'l Co. Ltd.*, No. 2:21-cv-05525-AB (PLAx), 2022 WL 1516052, at *1 (C.D. Cal. Apr. 19, 2022); FED. R. CIV. P. 60(b). Rule 60, however, does not apply to every decision a court might render as a case wends its way through litigation. "[O]nly final, appealable judgments and orders fall within the purview of Rule 60(b)." *Sanchez v. Stryker Corp.*, No. 2:10-cv-08832-ODW (JCGx), 2012 WL 1570569, at *2 (C.D. Cal. May 2, 2012); *see Asfaw v. Wal-Mart Stores, Inc.*, No. 2:19-cv-01292-GMN-NJK, 2019 WL 13533313, at *2 (D. Nev. Feb. 11, 2020) (noting that Rule 60 "seeks reconsideration of a case-dispositive order," not the "interlocutory discovery order" at issue there). Until there is a final judgment or order, then, a Rule 60(b) motion is premature. *Bell v. Olson*, No. C21-781-JCC-SKV, 2022 WL

---

[1] Westlake also chose not to depose Plaintiff's expert during the discovery period.

1215498, at *2 (W.D. Wash. Mar. 18, 2022) ("A Rule 60(b) motion may be brought 'only after a final judgment or order; interlocutory orders are insufficient[.]'").

Westlake seeks relief under Rule 60(b) subparagraphs (1) and (6) (ECF 73-1 at 6), both of which require different showings. Rule 60(b)(1) relief is only appropriate in two circumstances: "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). Westlake's Motion is focused on the excusable litigation mistake aspect of Rule 60(b)(1), which courts have characterized as "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Mitchell v. City of Mobile, Ala.*, No. 15-0360-CG-C, 2017 WL 3262130, at *1 (S.D. Ala. July 28, 2017) (quoting *Morris v. S. Intermodal Xpress*, No. 16-632-CG-N, 2017 WL 2242960, at *2 (S.D. Ala. May 19, 2017), which in turn quotes *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)) (quotations omitted). Though the outcome may sometimes be harsh, courts have long looked at Rule 60(b)(1) motions with skepticism, *id.* at *1, with one explaining: "As unfortunate as it may be, attorney 'oversight' does not justify Rule 60(b) relief in the absence of good cause even though it may 'penalize innocent clients for the forgetfulness of their attorney.'" *Rogers v. City of Selma*, No. CV 14-586-CG-M, 2016 WL 2930967, at *1 (S.D. Ala. May 19, 2016) (quoting

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986)).

The Rule 60(b)(6) catchall applies in "extraordinary circumstances," and demands a showing of both injury and circumstances beyond a party's control preventing timely action. *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (citation omitted).

Though styled as a Rule 60(b) Motion, what Westlake actually seeks is reconsideration of the Court's sustaining of Plaintiff's objection. Westlake however has long missed District Local Rule 7-18's deadline to move for reconsideration fourteen days after the ruling that is the subject of the motion. *See Addaday*, 2022 WL 1516052, at *1 (discussing the requirements of Local Rule 7-18). Westlake is therefore stuck with arguing for relief that Rule 60(b) does not permit because the Court's sustaining of Plaintiff's objection to Mr. Ulzheimer's Report is not a final, appealable order. *Sanchez*, 2012 WL 1570569, at *2; *Asfaw*, 2019 WL 13533313, at *2.

### ARGUMENT AND AUTHORITIES

**I.    The Court's Exclusion of Mr. Ulzheimer as an Expert Is Not the Type of Order at which Rule 60 Is Aimed.**

Westlake's Motion stands on a questionable foundation—that Rule 60 relief is even available under these circumstances. It is not, as Rule 60(b) encompasses "a final judgment, order, or proceeding." FED. R. CIV. P. 60(b). The Rule is not intended to provide relief for every interlocutory order that occurs as a case unfolds.

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

Courts regularly hold that discovery rulings like the one at issue here are not within the purview of Rule 60(b). *See Friedman v. Bloomberg, L.P.*, No. 3:15-cv-443 (AWT), 2021 WL 4917975, at *1–2 (D. Conn. Jan. 19, 2021) (citing multiple cases refusing to apply Rule 60(b) to not only discovery rulings, but summary judgment decisions as well). There can be no argument here that the Court's ruling on the tardiness of Mr. Ulzheimer's report is "final" for purposes of Rule 60(b), as the trial of damages and willfulness still remains, and the Court may alter the ruling at any time before final judgment. *United States v. Martin*, 226 F.3d 1042, 1048–49 (9th Cir. 2000). Westlake does not address the question of applicability of Rule 60(b) to the Court's ruling at all, leaving little doubt as to whether Rule 60(b) is the appropriate procedural vehicle for Westlake to use.

Given these realities, it is not surprising that Westlake does not cite a single case granting Rule 60(b) relief under circumstances like these. Rather, Westlake's cases either (1) address Rule 60 relief after a mistake that was the death-knell for the moving party and resulted in a final, appealable order or judgment:

- *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 383–84 (1993) (establishing test for which Westlake advocates where claimants failed to timely file proofs of claim in bankruptcy, which barred their ability to obtain anything in the proceeding);

- *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1222–23 (9th Cir. 2000) (granting relief after plaintiff failed to respond to motion for summary judgment because his counsel was out of the country and unaware the motion had been filed);

- *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 380 (9th Cir. 1997) (granting *pro se* plaintiff relief after he failed to respond to motion to dismiss because of improper service);

- *Klapprott v. United States*, 335 U.S. 601, 602 (1949) (addressing modification of default judgment that stripped plaintiff of citizenship);

- *Kelly v. United States*, 805 F. Supp. 14, 15 (E.D. La. 1992) (granting Rule 60 relief after plaintiff filed a motion for reconsideration 19 days after summary judgment was entered against him).

Or, Westlake's other cited cases (2) have nothing to do with the issues here:

- *Meadows v. Cohen*, 409 F.2d 750, 752 (5th Cir. 1969) (agreeing to modify judgment to reflect statutory scheme);

- *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 797 (7th Cir. 1980) (declining to use Rule 60(b) to allow parties to reverse course after agreeing to a settlement).

The second point does not necessitate significant discussion, as irrelevant cases should not enter into the Court's analysis. As to the first point, unlike the parties seeking Rule 60 relief in those cases, Westlake has not lost the case outright and had a final order or judgment

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

9

entered against it because of the Court's ruling on Plaintiff's objection to the Ulzheimer Report. Such is confirmed by the fact that, as even Westlake agrees, a trial will take place on the issues of damages and willfulness. Those cases likewise lend nothing meaningful to the Court's analysis.

Put simply, Westlake points to no authority supporting the grant of relief it seeks, not even the text of Rule 60 itself. That glaring shortcoming should tell the Court all it needs to know about whether it should grant Westlake's Motion.

## II. Granting Westlake's Motion Still Requires Amendment of the Scheduling Order, but Westlake Has Not Sought that Relief.

Westlake submits that all that would be necessary to make things right in granting its Motion is to allow Plaintiff to take the deposition of Mr. Ulzheimer. (ECF 73-1 at 9.) That assertion overlooks a host of other things that must be considered should Westlake's Motion be granted, not the least of which is enlarging or continuing just about every remaining deadline.

First, Plaintiffs would seek comprehensive discovery from Mr. Ulzheimer and his company, to learn about his opinions rendered in other furnisher cases and declaration and deposition testimony about those opinions. Plaintiff would also seek discovery from individuals who may have assisted Mr. Ulzheimer in crafting his Report, as Plaintiff's Counsel has in the past successfully uncovered expert reports that where ghostwritten by individuals employed by the agent who marketed the expert. *See Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12-cv-97, 2016 WL 7219622, at *1 (E.D. Va. Oct. 7,

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

2016) (granting motion to exclude expert report where purported expert "simply has lent his name to a report prepared by others"). That discovery would have to be completed before any deposition of Mr. Ulzheimer, and in enough time so that the information obtained could be analyzed by Plaintiff's Counsel before the deposition.[2]

Second, once Plaintiff has deposed Mr. Ulzheimer on the substance of his opinions, fairness dictates that her expert should be permitted the opportunity to rebut Mr. Ulzheimer's opinions, just as Mr. Ulzheimer improperly did with Mr. Hendricks's timely opinions. (ECF 55-1 at 19–20, 21–22 (discussing supposed shortcomings in Mr. Hendricks's opinions).) That too will add time to the schedule should the Court grant Westlake's Motion.

With so much additional expert discovery to take place, the Court will no doubt need to enlarge the February 24, 2023 deadline by which the Parties are to submit motions in limine and *Daubert* motions. (ECF 24 at 2.) Plaintiff does not advocate for that result, as such should be Westlake's job, but simply points out the additional, necessary relief Westlake's Motion requires but Westlake has not sought, let alone shown is appropriate.

In addition, since this Motion will not be submitted until February 3, 2023, the Court would likely need to continue the March 24, 2023 Initial Pretrial Conference so that all of

---

[2] Any scheduling of such discovery should also account for the likely need for the Parties to meet and confer and possibly litigate motions to quash or to compel, adding additional time to the schedule.

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

11

this discovery could occur, attendant motions be litigated, and the Court have sufficient time to render decisions.

Finally, Westlake's Counsel admits that it knew of its mistake around October 7, the day it filed Mr. Ulzheimer's Report in support of its opposition to summary judgment, yet does not explain why it took no action then on its failure to meet the July 15 deadline to serve the Report. (ECF 73-1 at 3.) All Westlake says is that its "anticipated raising at the October 28, 2022 hearing on Plaintiff's Motion both the issue of counsel's excusable neglect in not including Mr. Ulzheimer's expert report with Westlake's expert disclosure" (*id.* at 4), but does not state the reasons it would let such a known deficiency linger for three weeks without immediately contacting Plaintiff's Counsel to discuss a motion to enlarge or seeking urgent relief from the Court. Even worse, the Parties and the Court are still wrestling with this issue in January 2023, three months after Westlake learned of the failure to meet the expert disclosure deadline.

Westlake accounts for none of this in its Motion, leaving the Court and Plaintiff to sift through the host of genuine difficulties Westlake's Motion invokes. Westlake's oversimplified "we'll just give Plaintiff a deposition of Mr. Ulzheimer, and everything will be fine" approach fails to meaningfully consider or address the multiple scheduling issues its Motion raises, or account for the respect the Scheduling Order demands. *See Mitchell*, 2017 WL 3262130, at *2 (noting that if the court were to grant relief from failure to adhere to expert disclosure deadlines "it would be most difficult for the court to insist on

compliance with deadlines set in its many other cases. Allowance of use of this expert would, in effect, render such deadlines set in Rule 16 Scheduling Orders meaningless") (quoting *Argo Sys. FZE v. Liberty Ins. PTE, Ltd.*, No. Civ.A. 04-00321-CGB, 2005 WL 1355060, at *5 (S.D. Ala. June 7, 2005)).

## III. Should the Court Consider the Merits of Westlake's Motion, It Still Fails.

### A. Westlake Has Not Shown Excusable Neglect Warrants Granting Its Motion.

To begin, it is noteworthy that Westlake does not even discuss what courts have concluded amounts to "excusable neglect" under Rule 60(b)(1). (*See generally* ECF 73-1.) It states that "inadvertence, ignorance of the rules, or mistakes construing the rules do not always constitute 'excusable' neglect," and then discusses the test for whether Rule 60(b) relief for excusable neglect is appropriate. (*Id.* at 6–8.) Just assuming excusable neglect exists here, however, is inappropriate, as "courts have consistently held that attorney oversight does not amount to excusable neglect." *Mitchell*, 2017 WL 3262130, at *1 (citing *Revere v. McHugh*, 362 F. App'x 993 (11th Cir. 2010) and *Rogers v. City of Selma*, No. 14-586-CG-M, 2016 WL 2930967 (S.D. Ala. May 9, 2016)); *see Cota v. Carrows Restaurants, LLC*, No. 20-cv-1428 TWR (RBB), 2022 WL 2119124, at *5 (S.D. Cal. June 13, 2022) ("Inadvertence, ignorance, or oversight of counsel does not constitute excusable neglect."). Oversight or inadvertence is all that can possibly be at issue here, as even Westlake admits that "its counsel's error" resulted in the missed deadline. (ECF 73-1 at 2.)

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

Even though this failure by Westlake to establish excusable neglect dooms its Motion, Plaintiff nevertheless addresses Westlake's one-page analysis of the points relating to whether Rule 60(b)(1) relief is appropriate. It is not, which is yet another justification for denying the Motion.

**1.    Westlake's proposed deposition of Mr. Ulzheimer does not alleviate the substantial prejudice Plaintiff will suffer if his opinions are admitted.**

Westlake's discussion of prejudice to Plaintiff could not be more terse. It consists of a mere three sentences, the substance of which is the "Plaintiff can depose Mr. Ulzheimer" position that pervades Westlake's brief. (ECF 73-1 at 9.) That is of course a meaningless offer, as there is significant prejudice to Plaintiff beyond the lack of a deposition of Westlake's expert.

Plaintiff is first prejudiced, obviously, by not being able to complete expert discovery during the discovery period. Because Westlake did not serve a timely report, Plaintiff built her entire case as though Westlake would not have an expert, and she approached summary judgment with that in mind. No expert discovery as to Mr. Ulzheimer occurred because none was needed. Allowing Westlake to now include expertise in its case requires Plaintiff to revamp her entire case wholesale, with no ability to take the additional discovery she needs relating to Mr. Ulzheimer's opinions.

Plaintiff is additionally prejudiced because Westlake had the ability to fashion its expert report with complete knowledge of Plaintiff's summary -judgment approach and

arguments. That Plaintiff prevailed on liability is of little moment, since Mr. Ulzheimer still had a complete preview of Plaintiff's damages and willfulness arguments in fashioning his Report. (*See* ECF 55-1 at 21–22 (discussing points of Plaintiff's supposed failure to assist Westlake in its investigation and marking of accounts as disputed in ACDV responses, both of which Plaintiff argued supported summary judgment).) Since Westlake is fighting to have these opinions omitted at trial, it believes that Plaintiff's victory on summary judgment did not obviate the need for them. To include them prejudices Plaintiff's ability to present her case because Mr. Ulzheimer possessed unfair, inappropriate knowledge in crafting his report.

Along these lines, Plaintiff is also prejudiced because Mr. Ulzheimer rebuts opinions by Mr. Hendricks, and Plaintiff is unable to in turn rebut Mr. Ulzheimer's. The Scheduling Order anticipated rebuttal reports, to be served August 12, 2022 (ECF 24 at 2), but Plaintiff had nothing to rebut because Westlake served no original report from Mr. Ulzheimer until nearly two months after the deadline for rebuttal reports. As if robbing Plaintiff of the ability to rebut Mr. Ulzheimer's opinions were not enough, Westlake doubled down by having Mr. Ulzheimer respond to many of Mr. Hendricks's opinions. These circumstances multiply the prejudice to Plaintiff.

Moreover, because the expert discovery period is long closed, Plaintiff cannot now take the fulsome discovery necessary from Mr. Ulzheimer. A deposition is not enough, as Plaintiff would need complete discovery of Mr. Ulzheimer's other opinions, reports,

declarations, and testimony relating to furnisher and 1681-2(b) issues, and information relating to the assistance he received in crafting the report. *See Estate of LaFarge ex rel. Blizzard v. Kyker*, No. 1:08-cv-185, 2011 WL 6151595, at \*6 (N.D. Miss. Dec. 12, 2011) ("Preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement.") (citing *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, at \*3 (N.D. Ill. May 18, 1999)). So that Plaintiff can fully explore Mr. Ulzheimer's other opinions and the bases and creation for those here, significant after-the-fact discovery will be required. With Westlake's proposal, Plaintiff is deprived of her ability to take the discovery and prepare her case as she sees fit without complete discovery from Mr. Ulzheimer.

Westlake addresses none of these points, assuming that a deposition of Mr. Ulzheimer alone cures all prejudice to Plaintiff. It plainly would not, as Westlake's failure to meaningfully engage any substantive aspects of prejudice confirms. The Court should have little trouble concluding that Westlake's Motion fails on the first merits point, and should end its analysis here with a denial of the Motion.

### 2. Westlake's delay will require a complete reworking of the case schedule and delay the trial of this case.

Regarding the potential delay that would result from Westlake's proposed relief, Westlake has just one argument—that adding the 55 days between July 15 and September

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

9, 2022 to the case schedule "is ample time" to complete a deposition of Mr. Ulzheimer before the March 24, 2023 Final Pretrial Conference. (ECF 73-1 at 9.) If only it were that simple.

As Plaintiff notes above, a great deal more than a deposition should occur if the Court were to grant Westlake's Motion. Plaintiff will insist on full subpoena discovery from Mr. Ulzheimer and his company, which will require time for responses and no doubt will generate meet and confer discussions and motions practice. Those events of course take time, which utilizes a portion of Westlake's proposed 55-day enlargement.

These realities, as well as the fact that the Court will not likely render a decision on Westlake's Motion until sometime after the February 3, 2023 hearing date, place both the February 24, 2023 deadline to file *Daubert* motions and motions in limine as well as the March 23, 2023 Final Pretrial Conference in jeopardy. For Plaintiff to file a *Daubert* motion, for example, she would have to obtain documentary discovery from Mr. Ulzheimer, take his deposition, have the transcript turned around, and research and brief that motion between the date of the Court's decision on Westlake's Motion (February 3 at the earliest) and February 24. That schedule is unachievable.

All told, and again unaddressed by Westlake, accommodating these delays makes it impossible to determine when a trial might occur. Such a significant impact on and disruption of the schedule of proceedings favors denying Westlake's Motion. *See Sanchez*,

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

2012 WL 1570569, at *3 (finding similar rescheduling requirements warranted denial of motion).

### 3. The oversight of Westlake's Counsel does not justify the relief Westlake seeks.

Westlake's Counsel takes the blame for the failure to meet the expert disclosure deadline, and argues that the supervising attorney's failure to more closely monitor a subordinate "more carefully was a substantial factor leading to the late disclosure of the expert's report." (ECF 73-1 at 9.) Saying that something is "a substantial factor" in a result is of course different from stating the entirety of the reasons for the delay, so there is additional, pertinent information that Westlake keeps to itself. Without complete knowledge of the circumstances the Court's analysis will be uninformed and therefore incomplete, which again should result in denial of Westlake's Motion. *See Sanchez*, 2012 WL 1570569, at *3 (characterizing counsel's description of the reason for the delay—"an 'inadvertent calendaring error'"—as "particularly weak").

Nevertheless, the Court should reject the argument that Westlake, the client, should not suffer the exclusion of Mr. Ulzheimer because of its Counsel's error. Granting this relief to Westlake instead makes *Plaintiff* suffer for the error of Westlake's Counsel. There is genuine prejudice to Plaintiff should the Court grant Westlake's Motion, and Westlake has not shown that a deposition—the only proposal it offers—alleviates that prejudice. Westlake certainly has not explained how or why it is appropriate to place its Counsel's

error at Plaintiff's feet. That outcome is simply not appropriate, as the Supreme Court explained decades ago in the Rule 60 context:

> Clients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious. Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant. Moreover, this Court's own practice is in keeping with this general principle. For example, if counsel files a petition for certiorari out of time, we attribute the delay to the petitioner and do not request an explanation from the petitioner before acting on the petition.

*Link v. Wabash R. Co.*, 370 U.S. 626, 634 n.10 (1962) (citations omitted). The *Sanchez* court echoed that same sentiment, noting that the plaintiff in that case could sue her counsel for malpractice over the same oversight by counsel that is at issue here—the failure to serve

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

19

an expert report by the established deadline. *Sanchez*, 2012 WL 1570569, at \*4 ("The Court is sympathetic to Plaintiff's injuries and her present litigation situation. As recourse, she may pursue a separate action against her counsel for malpractice."). Nothing is meaningfully different here, and Westlake has not shown it is appropriate to deviate from the ordinary principle that it is bound by the conduct of the counsel it chose. *See id.* (noting the "general rule" that a party "is bound by the actions and omissions of [its] lawyers").

### 4.    Plaintiff takes Westlake at its word regarding its good faith, but the Court should scrutinize the reason given.

As noted above, Westlake states just that Counsel's failure to supervise a subordinate was "a substantial factor" in missing the expert disclosure deadline. (ECF 73-1 at 9.) Westlake however does not reveal the additional factors that caused its Counsel to miss the deadline, so there remains a question as to whether Westlake is being entirely forthcoming about the reasons behind the error. The Court should therefore conclude that Westlake has not made the adequate showing of good faith to support a grant of its Motion.

### B.    Westlake Has Failed to Show the Extraordinary Circumstances Justifying Relief Under Rule 60(b)(6).

Though Westlake only mentions Rule 60(b)(6)'s catch-all provision in passing and does not meaningfully discuss it, that subsection does not rescue Westlake, either. The catch-all "may not be used to remedy neglect or lack of diligence and requires a showing of both injury and circumstances beyond a party's control preventing timely action." *Bell*, 2022 WL 1215498, at \*1 (citing *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir.

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT

1998)); *see also Bynoe v. Baca*, 966 F.3d 972, 979 (9th Cir. 2020) (explaining that a movant seeking relief under Rule 60(b)(6) must demonstrate "extraordinary circumstances" to justify reopening a judgment) (citations omitted). Westlake has shown neither.

Westlake does not state that it suffered any injury because of the failure to serve a timely expert report. Indeed, missing the deadline and then changing course could have been entirely strategic, with Westlake originally deciding it wanted to save the expense of an expert and only deciding it needed one after analyzing Plaintiff's Motion for Partial Summary Judgment. Whatever the case, Westlake articulates no injury from missing the disclosure deadline.

Likewise, Westlake does not address any supposed "extraordinary circumstances" or anything beyond its control that led to missing the expert disclosure deadline by nearly three months. That is because, as Westlake's briefing and evidence confirm, the circumstances that resulted in its missing the deadline were entirely within its control. Its Counsel was aware that something relating to experts was due on July 15, it just identified its expert rather than providing a complete report as the Scheduling Order required. Nothing about this is extraordinary or beyond Westlake's control, and Westlake does not argue otherwise. The Court should therefore conclude that Westlake has not established its entitlement to relief under Rule 60(b)(6).

## CONCLUSION

While the result is unfortunate, Westlake provides no basis for the Court to grant it relief from its Counsel's error. Westlake will still have its day in court, just without Mr. Ulzheimer as an expert witness. As Westlake has not shown that the Court should depart from the general principle that Westlake is bound by the actions of its Counsel, the Court should deny Westlake's Motion.

January 13, 2023.

Respectfully submitted,

**MELISSA MILLER,**

By:  */s/ Craig C. Marchiando*
Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel.: (757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com

Octavio Gomez (*pro hac vice*)
**THE CONSUMER LAWYERS**
412 E. Madison #903
Tampa, FL 33602
Phone: 813-299-8537
Mobile: 813 299 8537
Fax:     844-951-3933
Email:  Tav@TheConsumerLawyers.com

*Counsel for Plaintiff*

PLT.'S OPP. TO MTN TO PERMIT LATE EXPERT